Saadia M. Shapiro, Esq.
Shapiro & Shapiro, LLP
1300 Flatbush Avenue
Brooklyn, N.Y. 11210
(718) 434-8800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

MAYWOOD CAPITAL CORP., et al.,

                                          Debtors.
-------------------------------------------------------------x

Bankruptcy Appeal

Case No. 08 cv 00942(DC)

## ORDER TO SHOW CAUSE WITH
## STAY PENDING APPEAL

**UPON** the Appellate Brief herein, the annexed declaration of Saadia Shapiro, attorney for 125th Street Owner LLC., (the "Appellant"), dated February 13, 2008, and Appelant's Memorandum of Law in Support of Order To Show Cause and upon all other papers and proceedings heretofore had, and it appearing that (i) the December 20, 2007 Order of United States Bankruptcy Judge Robert D. Drain denied the Trustee's motion Seeking Court Approval Of The Sale Of Trustee's Right, Title And Interest Of Certain Real Property and Improvements Located At 65-67 East 125th Street, New York, New York, 77 East 125th Street, New York, New York, And 79th East 125th Street, New York, New York, Free and Clear of Liens, Claims, Interests And Encumbrances, Pursuant To 11 U.S.C. §§ 363, 506(c) And 1146(c) Of the Bankruptcy Code (the "Approval Motion") and (ii) a hearing to approve the Trustee's settlement of certain adversary proceedings is scheduled for February 14, 2008 which settlement involves,

among other matters, the release of the Trustee's claims to 65-67 East 125th Street, 77 East 125th Street, and 79 East 125th Street (the "Properties") and if approved such settlement will be consummated shortly thereby extinguishing Appellant's rights and rendering the Appeal moot;

**LET** John Pereira, As Chapter 11 Trustee Of – 65-67 East 125th Street Realty Corp., 77 East 125th Street Realty Corp., and 79 East 125th Street Realty LLC., (the "Trustee") show cause before this Court in court room # _____, located at the United States Court House New York, New York 10004 on the ___ day of February, 2008, at ___ o'clock in the ___ noon of that day, or as soon thereafter as counsel can be heard, why an Order should not be made and entered herein:

   (i)   enjoining the Trustee from releasing his claims to the three properties (the "Properties") as part of Trustee's settlement of certain adversary proceedings (which proposed settlement is scheduled for a hearing on February 14, 2008 before U.S. Bankruptcy Judge Robert D. Drain);

   (ii)  or taking any other steps to sell his claims to/interests in the three properties (the "Properties") which the Trustee contracted to sell to Appellant; and

   (iii) granting Plaintiff such other and further relief as this Court deems just and proper under the circumstances.

**ORDERED**, that pending the hearing and determination of this motion, the Trustee is stayed and enjoining from releasing his claims to the three properties (the "Properties") as part of Trustee's settlement of certain adversary proceedings (which proposed settlement is scheduled for a hearing on February 14, 2008 before U.S. Bankruptcy Judge Robert D. Drain) or taking any other steps to sell his claims to/interest in three properties (the "Properties") which the Trustee contracted to sell to Appellant; and it is

**ORDERED,** that Plaintiff shall post a bond in the amount of $_____ as security for costs and damages as may be incurred by the Trustee for wrongful issuance of this order

**ORDERED,** that service by overnight mail of this order and the papers, upon which it is based, upon counsel to the Trustee, on or before the ___ day of February, 2008, shall be deemed sufficient service.

**ORDERED,** that papers in opposition to the relief requested by the Appellant shall be filed and served upon counsel to Appellant so that they are received by no later than February _____, 2008.

_____
U. S. District Court Judge

Saadia M. Shapiro, Esq.
Shapiro & Shapiro, LLP
1300 Flatbush Avenue
Brooklyn, N.Y. 11210
(718) 434-8800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

MAYWOOD CAPITAL CORP., et al.,

                           Debtors.
-----------------------------------------------------------x

Bankruptcy Appeal

Case No. 08 cv 00942(DC)

### **SHAPIRO DECLARATION**

     Saadia Shapiro, declaring under penalty of perjury pursuant to 28 U.S.C. § 1746 states as follows:

### **Introduction**

    1.    I am the manager of 125th Street Owner LLP (the "Appellant"), Appellant in this case. I make this declaration in support of Appellant's Order to Show Cause for stay pending appeal with personal knowledge of the facts stated. In limited instances my knowledge is supplemented by facts appearing in the court record of these proceedings.

    2.    On March 23, 2005, this Court ordered the joint administration of the Chapter 11 cases of forty eight different debtors under the above main caption and directed the appointment of a Chapter 11 Trustee for these debtors. The Chapter 11 petitions for the debtors involved in this adversary proceeding -- 65-67 East 125th Street Realty Corp., 77 East 125th Street Realty LLC and 79 East 125th Street Realty LLC (the "Debtors") -- were each filed on February 19, 2005.

1

3. By order dated March 24, 2005, this Court approved the appointment of John S. Pereira (the Trustee") as the Chapter 11 Trustee for the procedurally consolidated debtors, which included his appointment as the Chapter 11 Trustee for the estates of the Debtors.

4. On August 21, 2007, the Trustee, and Mr. Shapiro executed the Contracts and Mr. Shapiro deposited $780,000 with the Trustee.

5. Via motion dated November 12, 2007, the Trustee moved the Bankruptcy Court seeking approval of the Contracts executed with Appellant. A hearing was scheduled for December 10, 2007.

6. At the December 10, 2007 hearing, the Bankruptcy Court purportedly denied the approval motion without taking evidence as to the Trustee's exercise of sound business judgment in entering into the Contracts (which were _not_ subject to higher and better offers) with Appellant. At the December 10th hearing, and in light of a higher offer received by the Trustee that very day, the Bankruptcy Court ordered that an auction take place on December 21, 2007.

7. On December 20, 2007, Appellant, by its former attorney Isaac Nutovic, brought a motion seeking a Temporary Restraining Order to prevent the auction which was scheduled for the next day. A hearing on said motion was conducted on December 21, 2007, immediately preceding the time set for the auction.

8. At the December 21, 2007 hearing, the Bankruptcy Court denied the aforementioned motion. Essentially, the Bankruptcy Court held that in _its_ business judgment, the Contracts with Appellant did not evidence the highest and best offers available for The Properties in light of the subsequently signed contracts.

9. At the auction sale, the Irgang entities (who were involved in litigation against the Trustee which encompassed disputes extending beyond the Properties involved herein) proposed to settle the underlying litigation through their purchase of the Properties from the Trustee in exchange for releases with the Trustee for all matters at issue in the Litigation and their payment to the Trustee of $15 million in cash.

10. On January 25, 2008 the Trustee brought a motion to approve its above referenced settlement of the litigation with the Irgang entities. A hearing on said motion is scheduled to occur on February 14, 2008 at 10:00 AM before Justice Drain.

11. On December 19, 2007, Appellant instituted an adversary proceeding against the Trustee for breach of contract and the covenant of good faith and fair dealing implied in each contract pursuant to the laws of the State of New York.

12. On December 28, 2007 by filing a Notice Of Appeal, Appellant instituted the within appeal from the Bankruptcy Court's decision to deny the approval of the contracts between the Appellant and the Trustee.

13. As part of the proposed settlement which is the subject of tomorrow's hearing, the Trustee has agreed to release his claims to the Properties. If the settlement is approved, it should be consummated shortly thereafter. Once the settlement is consummated and the Trustee releases its claims to the Properties, Appellant's rights will be extinguished and the within Appeal will be rendered moot.

14. I respectfully request that the Plaintiff's request for an injunction and temporary restraining order be granted.

Dated: February 13, 2008
                                             *s/ Saadia Shapiro*
                                                Saadia Shapiro

Saadia M. Shapiro, Esq.
Shapiro & Shapiro, LLP
1300 Flatbush Avenue
Brooklyn, N.Y. 11210
(718) 434-8800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

MAYWOOD CAPITAL CORP., et al.,

                                                  Debtors.
-------------------------------------------------------------x

Bankruptcy Appeal

Case No. 08 cv 00942(DC)

## MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL

### Preliminary Statement

Plaintiff, 125th Street Owner LLC., by its attorneys, Shapiro & Shapiro, submits this memorandum of law in support of Appellant's emergency motion for a stay pending appeal, enjoining John Pereira, as Trustee of 65-67 East 125th Street Realty Corp., 77 East 125th Street Realty Corp. and 79 East 125th Street Realty LLC., from releasing its claims to the three properties (the "Properties") as part of Trustee's settlement of certain adversary proceedings (which proposed settlement is scheduled for a hearing on February 14, 2008 before U.S. Bankruptcy Judge Robert D. Drain) or taking any other steps to release or sell its interest three properties (the "Properties") which the Trustee contracted to sell to Appellant.

Finally, the Bankruptcy Court previously denied Appellant's request for a Temporary Restraining Order to prevent the auction which was scheduled for the next

1

day (i.e. December 21, 2007) on the grounds that the Debtor did not meet the requirements for a Temporary Restraining Order. At the December 21st hearing, Appellant's previous attorney received permission from the Bankruptcy Court to report to the District Court that the within motion for a stay pending appeal would be denied on the same basis as Appellant's previous motion for a Temporary Restraining Order. Accordingly, Appellant believes it futile to request a second ruling from the Bankruptcy Court on the motion for a stay pending appeal.

### Facts

The facts underlying Plaintiff's motion are detailed in the declaration of Saadia Shapiro, the Manager of Plaintiff, which accompanies this memorandum of law. Capitalized terms are as defined in that declaration. From the Shapiro declaration it appears that during the course of the negotiations of the Contracts, counsel to the Trustee, after having received several appraisals and comparables showing sales of identically sized properties at significantly lower prices than agreed to by Plaintiff, constantly reassured Plaintiff that "the Properties are yours and we are not entertaining any other offers." Although in connection with eight prior contracts to sell properties in this case, the Trustee had inserted a contractual provision requiring that they be subject to higher or better offers, such a provision was not contained in the Trustee's Contracts with Plaintiff. Nevertheless, after filing a motion seeking court approval of the Contracts with Plaintiff, the Trustee wrongfully withdrew the motion after receiving a higher offer. The Trustee subsequently entered into a settlement agreement with the Irgang entities (who were involved in litigation against the Trustee which encompassed disputes extending beyond

2

the Properties involved herein) whereby the underlying litigation would be settled through their purchase of the Properties from the Trustee in exchange for releases with the Trustee for all matters at issue in the Litigation and their payment to the Trustee of $15 million in cash.

As set forth in the Shapiro declaration a hearing to approve this settlement is scheduled for December 14, 2008. If the settlement is approved and the Properties transferred, Appellant's rights would be extinguished.

## Argument

Appelant Meets The Standards For
Issuance Of A Preliminary Injunction
And Temporary Restraining Order

The standards for granting a temporary restraining order are the same as those which govern granting a preliminary injunction. *Alexander v. N.Y. City Taxi & Limousine Comm'n*, 07 Civ. 8175 (RMB), 2007 U.S. Dist. LEXIS 73642, (S.D.N.Y. September 28, 2007).

"A party seeking a preliminary injunction in this Circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Quint v. CMHC*, 06-2889-pr, 2007 U.S. App. LEXIS 22421, (2d Cir. September 20, 2007) (citing *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002) (*per curiam*)). The purpose of a preliminary injunction is to maintain the *status quo* until there can be a determination on the merits of the action. *Sierra Club v U.S. Army Corps of Engineers*, 732 .2d 253, 256 (2d Cir.1986)

*Irreparable Harm To Plaintiff.* Plaintiff will be irreparably harmed if an injunction is not issued and the Trustee is allowed to sell the Properties. The Properties are unique; their location abutting Plaintiff's affiliates' properties provides Plaintiff and its affiliates with a unique opportunity to place a larger building on the combined properties. If the Properties are sold, Plaintiff will have lost this opportunity. Plaintiff will be irreparably harmed if the *status quo* is not maintained. *See, Tom Doherty Associates, Inc v Saban Entertainment Inc.*, 869 F. Supp 1130, 1135 (S.D.N.Y 1994).

*Likelihood Of Success On The Merits.* The Court is respectfully referred to the Appellant's Appellate Brief (which is being filed simultaneously herewith) for a full and detailed discussion of the merits and likelihood of success of this Appeal. An outline of the Appellant's likelihood of success on the merits is as follows:

(A) The Bankruptcy Court erred, as a matter of law, in denying the chapter 11 Trustee's motion ("Approval Motion") to approve certain contracts ("Contracts"), to sell certain properties ("Properties") to Appellant (which were not subject to higher offers), because the Bankruptcy Court heard no testimony and received no evidence as to the Trustee's business reasons/judgment for entering into the Contracts, where had the Court appropriately considered the approval motion it would have found that:

(i) The Appellant assumed a special risk (which no other bidder was willing to assume at that time) by paying over a down payment on the Contracts even though The Properties were not yet titled in the Trustee's name and were still the subject of litigation by the Trustee to recover title;

(ii) Appellant was the only prospective purchaser who was willing to enter into a binding contract and leave a 10% deposit while awaiting the results of the litigation;

4

(iii) By entering into the Contract while litigation was pending the Trustee was hoping to speed the Bankruptcy Court's resolution of the litigation and consummate final payment for the Properties earlier;

(iv) The prices of comparable properties and sales of similar lots on the same block demonstrated that the Trustee was receiving a premium over the prices of very recent sales;

(iv) Appellant had worked with the Trustee for two years to extract the unique value of three lots sold together and had provided the information necessary for the Trustee to package the deal; and

(v) The Trustee acknowledged that he exercised sound business judgment at the time he entered into the Contracts.

Furthermore, the Bankruptcy Court's decision effectively eliminates any possibility of a Trustee signing contracts which are not subject to higher and better offers. If affirmed, this rule of law would hamstring a trustee's ability to take advantage of unique situations, which are in the estate's best interests at the time the opportunity presents itself, as occurred in the case at bar.

(B) The Bankruptcy Court erred, as a matter of law, in deciding that the Trustee's duty to maximize the value of the assets of the estate allows the Trustee to violate the covenant of good faith and fair dealing implied in the Contracts where the Contracts were entered into after the Trustee's exercise of sound business judgment and The Contracts were not subject to higher and better offers.

Absent a statute expressly exempting trustees from the duties and obligations of ordinary contract law, there should be, at the very least, a sound policy rationale given by

the Court's for allowing trustees the freedom to operate outside of the confines of the law as it is applied to everyone else. It is respectfully submitted that a review of the case law in this area shows that the issues presented by this appeal are genuine and relevant.

Although courts have come down differently on these issues, the courts which have found a trustee to be bound pending court approval are better reasoned. If a trustee is not bound by his agreements pending court approval, then the agreements are illusory, see, e.g., *Irving Trust Co. v Nationwide Leisure Corp.*, 562 F. Supp 960, 968 (S.D.N.Y. 1982) and the other parties to the agreement are similarly not bound. This would mean that a trustee in bankruptcy would never be able to sign any contract to sell assets, because the other parties would have the right to back out too. There is also no sound rationale for giving special consideration to a bankruptcy trustee because of his fiduciary duties to maximize assets. There are many other fiduciaries in other contexts, similarly charged with an obligation to maximize the value of assets under their control, who are not exempted from ordinary contract rules. In addition, how far can a trustee go to maximize assets? Is he allowed to make misrepresentations? Clearly, not. The better view of the cases is that once the Contracts were signed, the Trustee was bound by a covenant of good faith and fair dealing, was obligated to present the Contracts for approval by this Court and should not have attempted to deprive Plaintiff of the benefit of the Contracts by negotiating a new deal with a different bidder.

(c) The Bankruptcy Court erred, as a matter of law, in denying the Approval Motion when it substituted <u>its</u> business judgment based on events occurring on December 10, 2007 for the <u>trustee's</u> business judgment based on the facts before him as of August 21, 2007.

At the December 21st hearing, in missaplying In re: Orion Pictures Corporation, 4 F.3d 1095 (2nd Circuit 1993) Justice Drain held that the standard of review on approval motions is whether the Court, in its business judgment feels that the proposed transaction is in the best interests of the estate at the time of judicial review. Taken to its logical end, this decision essentially eliminates the judgment of the trustee all together, as the only thing that matters is the Courts' opinion using its 20-20 hindsight on the day of a hearing. This opinion wholly fails to recognize, acknowledge or even consider the delicate balance that must be reached between maximizing the value of assets on the one hand and honoring viable contracts on the other.

Furthermore, this opinion is not supported by any articulated public policy concerns: what is the policy rationale for allowing a Bankruptcy Court to use 20-20 hindsight in considering subsequent offers where an experienced Trustee represented by experienced counsel admittedly made a good business judgment by entering into Contracts which were not subject to higher and better offers? Why should the rule of law allow a trustee to disregard his or her agreements with impunity? If Justice Drain's decision is left undisturbed, then the rule of law in this jurisdiction will be that where a trustee exercises good business judgment at the time he or she enters into a contract which is not subject to higher and better offers, and that trustee thereafter delays in filing an approval motion while entertaining other offers (in direct violation of the signed contract), and the trustee misleads the contract vendee into believing that there are no higher and better offers and none would be negotiated, the trustee will, nonetheless, still be authorized to disregard the contract in the event that a better offer subsequently materializes. It is respectfully submitted that there is no logical policy rationale for adopting a rule of law such as this.

7

A reasonable reading of the aforementioned opinions leads to the conclusion that a Bankruptcy Court's role is to <u>review the business judgment of the trustee</u> rather than substitute its own business judgment for that of the trustee. It is respectfully submitted that this interpretation of the Court's role is also logically consistent with the legislative intent in drafting the revisions to the Bankruptcy Code which reduced the Courts' role in the management of bankruptcy estates.

*Sufficiently Serious Questions On The Merits/ Balance of Hardship.* Even if the Court finds that Plaintiff has not demonstrated it will likely succeed on the merits of the case, there can be no doubt that Plaintiff has raised fair grounds for litigation. There is no definitive law in this Circuit which exculpates bankruptcy trustees from the covenant of good faith and fair dealing applicable to all parties who sign a contract. Cases outside of this Circuit have ruled on both sides of the issue, but Plaintiff submits that there are good policy reasons which would compel courts in this Circuit to hold bankruptcy trustees to the same standards in the market place as other fiduciaries are held.

A balancing of the hardships clearly favors the Appellant as once the Trustee releases his claims to the Properties the underlying Appeal becomes moot and Appellant's interest in the unique Properties will be forever extinguished. On the other hand, there will be no undue hardship to the Trustee if he is required to postpone the transfer of the Properties pending this appeal.

### Conclusion

The Trustee should be enjoined from releasing his claims to the three properties (the "Properties") as part of Trustee's settlement of certain adversary proceedings (which proposed settlement is scheduled for a hearing on February 14, 2008 before U.S.

Bankruptcy Judge Robert D. Drain) or taking any other steps to transfer his claims to the three properties (the "Properties") which the Trustee contracted to sell to Appellant. Plaintiff has demonstrated irreparable harm. Plaintiff has also demonstrated a likelihood of success; alternatively, Plaintiff has demonstrated fair grounds for litigation and a tipping of hardships dividedly in Plaintiff's favor.

Dated: Brooklyn, New York  
       February 13, 2008

Shapiro & Shapiro, L.L.P.  
Attorneys for 125th Street Owner LLC.

_s/ Saadia Shapiro_  
Saadia Shapiro  
1300 Flatbush Avenue  
Brooklyn, N.Y. 11210  
(718) 434-8800