**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
900 Third Avenue, 16th floor
New York, NY 10022-4728
(212) 752-8000
(212) 752-8393 Facsimile
Laurence May, Esq. (LM-9714)
Leo V. Leyva, Esq. (LL-9061)
Attorneys for Jay Irgang, Mark Irgang, Orli Irgang
and Irgang Entities

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> MAYWOOD CAPITAL CORP., et. al., <br><br> Debtor. | Bankruptcy Appeal <br><br> Case No. 08 cv 00942 (DC) |

**BRIEF OF THE IRGANG GROUP IN OPPOSITION TO APPELLANT'S MOTION FOR A STAY PENDING APPEAL AND OPPOSITION TO APPELLANT'S APPEAL OF JUDGE DRAIN'S DECEMBER 20, 2007 ORDER**

**TABLE OF CONTENTS**

                                               **PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

PROCEDURAL HISTORY AND BACKGROUND FACTS .......................................................4

LEGAL ARGUMENTS ......................................................................................................6

    POINT I

        SHAPIRO HAS FAILED TO SATISFY THE REQUISITE
        ELEMENTS TO ENJOIN THE CLOSING OF THE
        SETTLEMENT OF THE ADVERSARY PROCEEDINGS ................................6

        A.    Shapiro Will Not Suffer Any Irreparable Harm If The
                Requested Stay Relief Is Denied. ..................................................................6

        B.    Shapiro Has Failed To Demonstrate A Likelihood Of
                Success On The Merits Of His Claims And Appeal. ....................................7

            1.    Shapiro Failed To Object To The Settlement
                    Motion. ...............................................................................................7

            2.    The Shapiro Contracts Expressly Required
                    Bankruptcy Court Approval And The Bankruptcy
                    Court Properly Denied The Approval Motion
                    Based On The Existence Of A Higher And Better
                    Offer. ..................................................................................................8

            3.    Shapiro's Claim Of Implied Covenant Of Good
                    Faith And Fair Dealing Is Baseless And
                    Unsupportable. .................................................................................12

        C.    There Are No Sufficiently Serious Questions On The
                Merits Of Shapiro's Appeal To Warrant The Issuance Of
                the Requested Injunctive Relief. .................................................................14

CONCLUSION ...............................................................................................................16

## TABLE OF AUTHORITIES

**CASES**  **PAGES**

In re Ashford Hotels, 235 B.R. 734 (S.D.N.Y. 1999)..................................................................13

Blum v. Schlegel, 18 F.3d 1005 (2d Cir. 1994)............................................................................6

In re Bonnanzio, 91 F.3d 296 (2d Cir. 1996)..............................................................................13

In re Broadmoor Place Investments, L.P., 994 F.2d 744 (10th Cir. 1993) ..................................11

In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1993) ...............................................................8, 9

Chateaugay Corporation v. Thomson-SCF, S.A., 186 B.R. 561 (S.D.N.Y. 1995).......................12

In re Gucci, 126 F.3d 380 (2d Cir. 1997)......................................................................................8

In re Integrated Resources, Inc., 147 B.R. 650 (S.D.N.Y. 1992) ..................................................9

In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983).....................................................................8, 10

Loveridge v. Pendleton Woolen Mills, Inc., 788 F.2d 914 (2nd Cir. 1986) ...................................6

Lyons Transportation Lines, Inc., et al, v. C.B. Hannay Co. (In re Lyons Transp. Lines, Inc.), 163 B.R. 474 (Bankr. W.D. Pa., 1994)...................................................................14

In re M&M Transp. Co., 13 B.R. 861 (S.D.N.Y. 1981) ...............................................................11

North American Graphics, Inc. v. North American Graphics of Us, Inc., 1997 WL 316599 at 2 (S.D.N.Y 1997) .....................................................................................6

In re Orion Pictures Corporation, 4 F.3d 1095 (2d Cir. 1992).....................................................11

In re Pintlar Corp., Civ. No. 97-0263-N-BLW (D.Idaho 1998) ...................................................13

Polymer Technology Corp. v. Mimram, 37 F.3d 74 (2nd Cir. 1994)............................................6

Roberts v. Atlantic Recording Corp., 892 F. Supp. 83 (S.D.N.Y. 1995).......................................6

Western Publishing Co., Inc. v. Rose Art Industries, 910 F.2d 57 (2d Cir. 1990) .........................6

**STATUTES**

11 U.S.C. § 363, 506(c) and 1146(c) ...........................................................................................1

**PRELIMINARY STATEMENT**

Mark Irgang, Orli Irgang, Jay Irgang (collectively, the "Irgangs"), 6 East 132nd St. LLC, 27 East 131st St. LLC, 65-67 East 125th LLC, 77-79 E. 125th LLC, 148 West 124th St. LLC, 917 Eagle Ave. LLC and 2093 Madison LLC (collectively, the "Irgang Entities," and with the Irgangs collectively referred to as the "Irgang Group"), submit this Brief in opposition to the motion for a stay pending appeal by 125th Street Owner, LLC ("Shapiro"). The Irgang Group also submits this Brief in opposition to Shapiro's appeal from the December 20, 2007 Order ("December 20th Order") of United States Bankruptcy Judge Robert D. Drain denying the motion of John S. Pereira, Chapter 11 Trustee of Maywood Capital Corp. ("Trustee") to approve the sale of whatever right, title and interest the Trustee had to certain real property and improvements located at 65-67 East 125th Street, New York, 77 East 125th Street, New York and 79 East 125th Street, New York (collectively, the "125th Street Properties"), free and clear of liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363, 506(c) and 1146(c) of the Bankruptcy Code (the "Approval Motion"). As demonstrated below, the Court should deny Shapiro's stay application and dismiss the appeal.

This appeal arises out of the Trustee's motion to sell whatever right, title and interest he had to the 125th Street Properties. At the time the Approval Motions were filed, the 125th Street Properties were owned by the Irgang Group and the subject of various adversary proceedings ("the Adversary Proceedings"). The Trustee commenced the Adversary Proceedings in June 2005, claiming that the Debtors' pre-petition sale of the 125th Street Properties and five (5) other properties to the Irgang Group were for insufficient consideration and were fraudulent conveyances. The Adversary Proceedings proceeded to trial on August 28, 29 and 31, 2007, before Judge Drain and from the Irgang Group's perspective, they considered the Trustee's chances of success to be remote. Nevertheless, on November 12, 2007, <u>before</u> Judge Drain had

42232/0010-1512639v1

issued a decision in connection with the Adversary Proceedings, and contingent upon him finding for the Trustee in the Adversary Proceedings, the Trustee filed the Approval Motion to approve the sale of the 125th Street Properties to Shapiro. At the outset of the hearing, and based upon an unsolicited offer more than $1 million greater than Shapiro's offer (and the possibility of other offers from other bidders), Judge Drain denied the Approval Motion and directed the Trustee to conduct an auction. Consistent with the bankruptcy principle of minimizing the value of an estate, the Court directed the auction so that the 125th Street Properties would be sold to the highest bidder.

At the auction, the Irgang Group submitted a bid which resulted in them reaching a full settlement with the Trustee of twenty (20) separate adversary proceedings (the "Settlement"). On January 25, 2008, the Trustee filed a motion to approve the Settlement of the Adversary Proceedings (the "Settlement Motion"). On February 21, 2008, Judge Drain granted the Settlement Motion and issued an Order Approving Settlement dated February 15, 2008 ("Settlement Order"). The Settlement Order resolves all issues of ownership to the 125th Street Properties and five (5) other properties in favor of their current owners, the Irgang Group, free and clear of liens, mortgages, judgments, encumbrances and claims held by the Maywood Debtors and their creditors. The Irgang Group has agreed to pay $15 million in connection with the Settlement. The Settlement Order also requires the Irgang Group and Trustee to close the Settlement by April 15, 2008 (or as extended in accordance with the terms of the Settlement).

Shapiro failed to appeal the Settlement Order and, in fact, has consented to the entry of the Settlement Order. Shapiro never filed and/or raised any opposition to the Trustee's motion to approve the Settlement. Because the Settlement Order is final and non-appealable, this appeal, which is an indirect attack on the Settlement Order, should be dismissed. In addition, as

42232/0010-1512639v1

demonstrated below, Shapiro has failed to demonstrate the requisite elements to stay and/or enjoin the closing of the Settlement.

Shapiro has failed to demonstrate a likelihood of success on the merits of his alleged claims against the Trustee. Shapiro claims that the Trustee breached the implied covenant of good faith and fair dealing with respect to the three (3) August 24, 2007 Contracts of Sale executed by the Trustee and Shapiro (the "Shapiro Contracts") for the sale of the 125th Street Properties by entering into new contracts to sell the Properties (the "Rudd Contracts") to Rudd Development Group LLC ("Rudd"). The Shapiro Contracts expressly required Bankruptcy Court approval. There is no dispute that the Rudd Contracts provided higher and better offers regarding the sale of the 125th Street Properties. Because the Bankruptcy Court properly considered the existence of higher and better offers in denying the sale of the 125th Street Properties to Shapiro, the Court should deny Shapiro's baseless stay application.

More importantly, the controlling law supports the Bankruptcy Court's denial of the Approval Motion based on the existence of a higher and better offer. The Shapiro Contracts were unquestionably subject to Bankruptcy Court approval and Judge Drain properly denied the Approval Motion to promote a fair and equitable sale process in an effort to maximize value to the Estate. Shapiro is a disgruntled bidder that has filed a baseless appeal and stay motion in a bad faith attempt to derail the Settlement that has been approved by the Bankruptcy Court. For these reasons, and those set forth below, the Court should deny Shapiro's stay application and dismiss the appeal.

## **PROCEDURAL HISTORY AND BACKGROUND FACTS**[1]

The Chapter 11 petitions for these Debtor were all filed on February 19, 2005, and are being jointly administered under the caption of "<u>In re Maywood Corp. et al</u>.", Case No. 05-10987, before the Honorable Robert D. Drain.  On March 24, 2005, the Bankruptcy Court entered orders appointing a Chapter 11 trustee for Maywood Capital Corp. and 46 of its affiliated entities (the "Maywood Debtors").

On June 6, 2005, the Trustee filed eight (8) adversary proceeding complaints against the Irgang Group claiming that the Debtors' pre-petition sale of the 125th Street Properties and five (5) other properties (collectively, the "Irgang Properties") to the Irgang Group were for insufficient consideration and were fraudulent conveyances.  On February 22, 2007, the Trustee filed twelve (12) adversary proceeding complaints against Bodden Funding Corporation ("Bodden") and the Irgangs seeking to set aside certain mortgages against the Irgang Properties on the grounds that they were constructive fraudulent transfers.  Specifically, the Trustee sought to set aside mortgages that the Debtors granted to BRT Realty Trust and Kennedy Funding Inc., which were subsequently acquired by Bodden.

The Trustee and Irgang Group proceeded to trial on the 2005 Adversary Proceedings on August 28, 29 and 31, 2007, before Judge Drain.  On November 12, 2007, <u>before</u> Judge Drain had issued a decision in connection with the Adversary Proceedings, the Trustee filed the Approval Motion to approve the sale of the 125th Street Properties to Shapiro.  The sale of the 125th Street Properties to Shapiro or another third-party was contingent on the Court finding in favor of the Trustee in connection with the Adversary Proceedings.

---

[1] A summary of the relevant facts and procedural history is set forth in the Affidavit of Lawrence May submitted in opposition to Shapiro's motion and appeal.

At the outset of the December 10, 2007 hearing, the Trustee advised the Bankruptcy Court that he had received an unsolicited offer that was more than $1 million greater than Shapiro's offer. Based on the existence of higher and better offers, Judge Drain denied the Approval Motion and directed the Trustee to conduct an auction.

At the auction, the Irgang Group submitted a bid which resulted in them reaching a full settlement with the Trustee of twenty (20) separate adversary proceedings. On January 25, 2008, the Trustee filed a motion to approve the Settlement of the Adversary Proceedings. On February 14, 2007, Judge Drain granted the Settlement Motion and issued the Settlement Order approving the Settlement. The Settlement Order resolved all issues of ownership to the Irgang Properties in favor of the Irgang Group, which will own the Properties free and clear of liens, mortgages, judgments, encumbrances and claims held by the Maywood Debtors and their creditors. The Irgang Group has agreed to pay $15 million in connection with the Settlement. The Settlement Order requires the Irgang Group and Trustee to close the Settlement by April 15, 2008 (or as extended in accordance with the terms of the Settlement).

Shapiro failed to appeal the Settlement Order. In fact, Shapiro consented to the entry of the Settlement Order. Shapiro never filed and/or raised any opposition to the Trustee's motion to approve the Settlement. Accordingly, the Court should deny Shapiro's stay application and dismiss the appeal.

## LEGAL ARGUMENTS

### POINT I

### SHAPIRO HAS FAILED TO SATISFY THE REQUISITE ELEMENTS TO ENJOIN THE CLOSING OF THE SETTLEMENT OF THE ADVERSARY PROCEEDINGS

None of the requisite factors for granting an application for injunctive relief are present. In granting a party's request for injunctive relief, a court generally considers two main factors: (1) a likelihood of irreparably injury; and (2) either: (a) a likelihood of success on the merits, or (b) a sufficiently serious questions on the merits and a balance of the hardships tipping decidedly in the plaintiff's favor.  See Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994); see also Western Publishing Co., Inc. v. Rose Art Industries, 910 F.2d 57, 59 (2d Cir. 1990); North American Graphics, Inc. v. North American Graphics of Us, Inc., 1997 WL 316599 at *2 (S.D.N.Y 1997); Roberts v. Atlantic Recording Corp., 892 F.Supp. 83, 86 (S.D.N.Y. 1995). Application of these factors here confirms that the Court should deny the requested injunctive relief.

### A.     Shapiro Will Not Suffer Any Irreparable Harm If The Requested Stay Relief Is Denied.

Shapiro has failed to articulate any specific irreparable injury that he will suffer if the Bankruptcy Court's Order deny the Approval Motion is not stayed.  Shapiro claims that the 125th Street Properties are "unique" and that he has lost the "opportunity" to develop those properties. This purported irreparable injury is speculative and in any event capable of being addressed by money .  See Polymer Technology Corp. v. Mimram, 37 F.3d 74, 82 (2nd Cir. 1994) (holding that where plaintiff could be adequately compensated with money damages if it were to prevail at trial, there is no irreparable injury); Loveridge v. Pendleton Woolen Mills, Inc., 788 F.2d 914, 918 (2nd Cir. 1986) ("It is well established that "irreparable injury means injury for which a monetary award cannot be adequate compensation").  Because Shapiro has failed to demonstrate

any immediate and irreparable ham resulting from the denial of the requested injunctive relief, the Court must deny Shapiro's stay application.

### B. Shapiro Has Failed To Demonstrate A Likelihood Of Success On The Merits Of His Claims And Appeal.

Shapiro has also failed to demonstrate that he will be successful on the merits of his appeal. To be successful, Shapiro would have to not only have Judge Drain's Order vacated, he would need an Order directing the Trustee to specifically perform his agreement with Shapiro. However, that is not possible because pursuant to the Settlement Order, the Trustee transferred all of his interests to the 125th Street Properties to the Irgang Group. Not only has Shapiro not timely appealed from that Order, he consented to the entry of the Settlement Order. As a consequence, this appeal is now moot. The evidence is also clear that the Shapiro Contracts were subject to Bankruptcy Court approval. The Bankruptcy Court properly denied the Approval Motion based on the existence of a higher and better offer for the 125th Street Properties. In fact, Shapiro declined to become the stalking horse bidder for the 125th Street Properties, despite the opportunity to do so. Because Shapiro has failed to satisfy any of the requisite elements for a preliminary injunction, the Court must deny Shapiro's stay application.

#### 1. Shapiro Failed To Object To The Settlement Motion.

While Shapiro has filed an appeal of the December 20th Order, Shapiro failed to raise any objections to the Trustee's Settlement Motion and the Bankruptcy Court's entry of the Settlement Order. The Settlement Order is final and non-appealable. If Shapiro had any claims and/or arguments against the approval of the Settlement of the Adversary Proceedings, they should have been raised in opposition to the Settlement Motion. Shapiro, therefore, should be barred from seeking any relief with respect to the closing of the Settlement between the Trustee and Irgang Group.

In addition, the specific relief Shapiro seeks in the proposed Order to Show Cause is unclear and confusing.  Specifically, Shapiro seeks to enjoin the Trustee from releasing his claims to the 125th Street Properties as part of Trustee's settlement of the Adversary Proceedings, or taking any steps to sell his claims to/interest in the 125th Street Properties.  It is important to note that the Trustee is *not* selling his claims and/or interest in the 125th Street Properties in connection with the Settlement.  The Trustee never held title to the 125th Street Properties.  Rather, the Trustee sued the Irgang Group to recover title to the 125th Street Properties under alleged fraudulent transfer claims.

In addition, Shapiro has no standing to seek an injunction prohibiting the Trustee from releasing his claims against the Irgang Group and/or the 125th Street Properties.  Shapiro failed to raise any objection to the Trustee's motion to approve the Settlement.  In fact, at the February 14, 2008 hearing to address the Settlement Motion, Shapiro's counsel was present but remained silent as to the Court's approval of the Settlement.  As a result, the Court should deny Shapiro's stay application in its entirety.

**2. The Shapiro Contracts Expressly Required Bankruptcy Court Approval And The Bankruptcy Court Properly Denied The Approval Motion Based On The Existence Of A Higher And Better Offer.**

It is well established in this Circuit and other Circuits that asset sales outside the ordinary course of business are appropriate when they are based upon the sound business judgment of the debtor or trustee.  See In re Gucci, 126 F.3d 380, 387 (2d Cir. 1997) (holding a sale of substantial part of a chapter 11 estate may be conducted if a good business reason exists to support the sale); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) (holding the standard of bankruptcy court approval of a sale of assets under section 363 of the Bankruptcy Code is whether there is a good business reason for the sale); In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1993) (recognizing

8

that the sale of the debtor's assets pursuant to section 363 was appropriate where the debtors advanced good business reasons for the sale and it was a reasonable exercise of the debtor's business judgment to consummate the sale).

Courts recognize that the debtor's exercise of sound business judgment requires the consideration of higher and better offers for sale of the debtor's assets. See In re Chateaugay Corp., 973 F.2d at 143 (holding the debtor exercised sound business judgment in proceeding with sale to the highest and best offer and maximized the value to the estate). The goal of any proposed sale of property of the estate is to maximize the proceeds received by the estate. See In re Integrated Resources, Inc., 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (recognizing the well-established principle of bankruptcy law that the debtor's duty with respect to such sales is to obtain the highest price or greatest overall benefit to the estate).

Here, the Shapiro Contracts expressly required Bankruptcy Court approval. Section 3(i) of the Shapiro Contracts provided, in pertinent part, as follows:

> The obligations of Trustee and Purchaser under this Agreement are expressly conditioned upon entry of an order (and its becoming final and unappealable or, in the event of an appeal, no stay pending appeal being granted) by the Bankruptcy Court approving of authorizing this Agreement or approving or authorizing the Trustee to execute, deliver and perform this Agreement and containing the terms described below (the "Order").

(See Shapiro Contracts, Exhibits B, C and D to Shapiro's Brief.)

Shapiro, therefore, knew or should have known that the Bankruptcy Court could reject the proposed contacts based on the existence of higher and better offers or for any other appropriate reason. Because the Trustee exercised his business judgment in accepting a stalking horse bidder (Rudd) that presented a higher and better offer than Shapiro, the Court properly denied the motion to approve the sale of the 125th Street Properties to Shapiro. The Bankruptcy Court held, in pertinent part, as follows:

9

> At the hearing, the Trustee's counsel reported, as I believe he was under an obligation to me to do so, that there were two other bids for the property that were considerably higher than the bid covered by the [Approval Motion.] Indeed, one was a million dollars higher than the bid covered by the [Approval Motion.] Exercising my business judgment, I directed the Trustee to consider those proposals and to explore their bona fides, including ability to close and ability to post their deposit, which the Trustee did, and then confirm to me, as part of the record of the hearing that indeed, one of the bidders had the financial wherewithal to proceed, was prepared to put up a deposit, and was prepared to follow the contract previously agreed to by [Shapiro], with one exception. This bidder wanted a modest breakup fee recognizing, as frankly any bidder in a bankruptcy sale should know, given the nature of section 363(b), that there would be a possibility of being overbid. I approved the Trustee's entry into that stalking horse contract, including the breakup fee, and at the same time, determined as a corollary matter, that the Trustee's continued performance under the [Shapiro Contracts], would not be approved, because it would not be a proper exercise of business judgment.

(See Dec. 21, 2007 Tr. p. 38, lines 5-25; p. 39, lines 1-2.) The record clearly demonstrates that the Bankruptcy Court considered the Trustee's business judgment in accepting the higher and better bidder as the stalking horse bidder and, therefore, denied the sale of the 125th Street Properties to Shapiro.

In a desperate attempt to reverse the Bankruptcy Court's December 20th Order, Shapiro incredulously claims that the Bankruptcy Court improperly "substituted" its own business judgment for the Trustee's business judgment in denying the Approval Motion. Shapiro's position on this issue is frivolous and intellectually dishonest. The Bankruptcy Court made no such "substitution" of business judgment. The Bankruptcy Court concluded, in pertinent part, as follows:

> The standard for approving such a sale was first articulated by the Second Circuit in Lionel Industries (722 F.2d 1063, 2d Cir. 1983), in which the Court said that the Court – Bankruptcy Court has to find that the debtor in possession or the trustee, in this instance, has exercised good business judgment in connection with the decision to proceed with the sale, and that the trustee has not been coerced

10

> or blindly followed one particular constituency. It's important to note that is the Court that makes the determination of whether the Trustee has exercised good business judgment. And that, or course, is implicit in the whole structure of Section 363(b) which requires notice and approval. The role of the Court in connection with an action out of the ordinary course was reiterated by the Second Circuit in In re Orion Pictures Corporation (4 F.3d 1095, 2d Cir. 1993), which the Court went to great length in explaining the nature of the Bankruptcy Court's decision in respect of business judgment, and said that it is just that, a decision on a business basis, where the Court would not be ruling on whether the decision was right or wrong, ultimately as a matter of law, but making a reasoned decision in the exercise of its business judgment.

(See Dec. 21, 2007 Tr. p. 39, lines 8-25; p. 40, lines 1-4.)

In Orion Pictures Corporation, the Second Circuit held the "bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property in being managed by the trustee". Orion, 4 F.2d 1095, 1099 (2d Cir. 1992). In regard to whether to approve a sale of a debtor's assets other than in the ordinary course of business, it is well settled that a bankruptcy court has broad discretion. See In re M&M Transp. Co., 13 B.R. 861 (S.D.N.Y. 1981) (a decision to set aside judicial sale lies within the sound discretion of a bankruptcy judge); see also In re Broadmoor Place Investments, L.P. 994 F.2d 744 (10th Cir. 1993) (bankruptcy court can disapprove proposed sale recommended by trustee if it is aware that there is another proposal in hand which, from the estate's perspective, is better or more acceptable).

There is no question that the Bankruptcy Court applied the proper standard in denying the sale of the 125th Street Properties to Shapiro. The Bankruptcy Court properly considered the existence of a higher and better offer in connection with its decision to deny the Approval Motion. Shapiro has failed to demonstrate that the Bankruptcy Court committed any reversible error with respect to the denial of the Approval Motion. The Court, therefore, should deny Shapiro's stay application and dismiss the baseless appeal.

11

### 3. Shapiro's Claim Of Implied Covenant Of Good Faith And Fair Dealing Is Baseless And Unsupportable.

Shapiro has failed to state a viable claim for breach of the implied covenant of good faith and fair dealing against the Trustee. The covenant of good faith and fair dealing, which is implicit in commercial contracts, requires that neither party will do anything that will injure the right of the other party to receive the benefits of the agreement. See Chateaugay Corporation v. Thomson-SCF, S.A., 186 B.R. 561, 594 (S.D.N.Y. 1995).

Shapiro simply cannot demonstrate that the Trustee violated the covenant of good faith and fair dealing. Shapiro has failed to demonstrate that the Trustee engaged in any wrongful conduct that deprived Shapiro of the benefits of the agreement. The documentary evidence confirms that the Shapiro Contracts were subject to Bankruptcy Court approval. The Bankruptcy Court denied the motion to approve the Shapiro Contracts based on the existence of a higher and better transaction.

In addition, there is no evidence in the record to support Shapiro's claim that the Trustee "shopped" the properties after entering into the proposed contracts with Shapiro. Rather, the evidence confirms that Rudd and other parties contacted the Trustee and presented higher and better offers. Even after the Trustee learned of the possibility of higher and better offers, the Trustee filed the motion to approve the Shapiro Contracts, which were subject to Bankruptcy Court approval pursuant to the terms of the agreements. During the December 10, 2007 hearing before the Bankruptcy Court, the Trustee's counsel stated as follows:

> Now, [the Trustee] did not shop the properties, Your Honor. It was our agreement with Mr. Shapiro, given the fact that he entered into these contracts back in August before Your Honor tried this case with respect to the Irgangs and the fraudulent transfer claims, that we would not shop. We didn't shop it, but the bidders have sought us out, Your Honor. Mr. Pereira, as a fiduciary, obviously advised Mr. Shapiro of his fiduciary duty. He advised Mr. Shapiro

12

>that he could not turn his head to an extra million dollars, just for these properties also and that he would have to entertain that offer if it turned out to be real. Mr. Shapiro was given the opportunity to become the stalking horse, if he so chose. He declined.

(See Dec. 10, 2007 Tr. p. 7, lines 13 to 25.)

Shapiro has no evidence to support his claim that the Trustee breached the implied covenant. More importantly, there is no evidence of such in its record. The Trustee advised the Bankruptcy Court of the higher and better offers and the Bankruptcy Court carefully considered them in connection with its decision to deny the motion to approve the sale of the 125th Street Property to Shapiro. The Trustee's representations by, its counsel, that he did not "shop the transaction" was not refuted and the Bankruptcy Court's findings on this issue can only be disturbed if they are clearly erroneous. A Bankruptcy Court's findings of fact are reviewed under "a clearly erroneous standard." See In re Ashford Hotels, 235 B.R. 734, 739 (S.D.N.Y. 1999), citing In re Bonnanzio, 91 F.3d 296, 300 (2d Cir. 1996). The Trustee also exercised sound business judgment in accepting a stalking horse bidder that provided a higher and better offer than Shapiro. Moreover, there is no dispute that Shapiro declined to be the stalking horse bidder despite the opportunity to do so. The Court should not condone a disgruntled bidder's attempts to sabotage the Bankruptcy Court's approval of the Settlement of the Adversary Proceedings, which will generate $15 million of cash to the Debtors' estates. Accordingly, the Court should deny Shapiro's stay application and dismiss the appeal.

In a desperate attempt to support his baseless implied covenant claim, Shapiro cites to an unreported Idaho decision, In re Pintlar Corp., Civ. No. 97-0263-N-BLW (D. Idaho 1998). In Pintlar, unlike here, the trustee actively negotiated a new bid and formed a litigation alliance against the original contracting party in an effort to approve the new bid. Here, the Trustee did not solicit higher and better bids as part of this sale process. The evidence demonstrates that the

13

Trustee "did not shop the properties…but the bidders have sought [him] out." (See Dec. 10, 2007 Tr. p. 7, lines. 13, 17-18.).

Shapiro also relies on <u>Lyons Transportation Lines, Inc., et al, v. C.B. Hannay Co. (In re Lyons Transp. Lines, Inc.</u>), 163 B.R. 474 (Bankr. W.D. Pa., 1994), for the proposition that the Shapiro Contracts should have been approved because they were "appropriate at the time" they were negotiated. In <u>Lyons</u>, a settlement between the Trustee and defendant was approved by the Court. The <u>Lyons</u> Court concluded that the settlement was appropriate considering the range of probabilities, degree of uncertainty and the substantial costs of continued litigation. The <u>Lyons</u> case does not support Shapiro's alleged claim of breach of the implied covenant of good faith and fair dealing. Rather, it supports the Bankruptcy Court's approval of the Settlement and entry of the Settlement Order.

The controlling law and facts demonstrate that the Trustee did <u>not</u> violate the covenant of good faith and fair dealing. Accordingly, the Court should deny Shapiro's motion and dismiss the appeal.

**C.    There Are No Sufficiently Serious Questions On The Merits Of Shapiro's Appeal To Warrant The Issuance Of the Requested Injunctive Relief.**

Shapiro has failed to demonstrate a likelihood of success on the merits of his claims and/or appeal. Similarly, Shapiro has failed to demonstrate that there are sufficiently serious questions on the merits of his appeal to warrant the issuance of any injunction enjoining the Trustee and Irgang Group from closing the Settlement of the Adversary Proceedings. The facts and circumstances of this appeal are very simple. The Bankruptcy Court properly denied the Trustee's motion to approve the sale of the 125th Street Properties to Shapiro based on the existence of a higher and better transaction. The Trustee did not do anything to deprive Shapiro of the benefits of the Shapiro Contracts, which were subject to Bankruptcy Court approval.

The Trustee also exercised sound business judgment in considering higher and better offers and advising the Bankruptcy Court of such offers.

Shapiro filed this baseless appeal and stay application in a bad faith attempt to derail the closing of the Settlement that has been approved by the Bankruptcy Court.  Because there are no sufficiently serious questions on the merits of Shapiro's appeal and/or claims against the Trustee, the Court should deny the stay application.

**CONCLUSION**

The Bankruptcy Court properly denied the Approval Motion. Shapiro has failed to demonstrate the requisite elements to stay and/or enjoin the closing of the Settlement, which was approved by the Bankruptcy Court. In addition, Shapiro failed to appeal the Settlement Order and, therefore, his appeal is moot. For all of the foregoing reasons, the Irgang Group respectfully requests that the Court deny Shapiro's stay application and dismiss the appeal of the December 20th Order.

DATED:   New York, New York
         March 6, 2008

        COLE, SCHOTZ, MEISEL,
        FORMAN & LEONARD, P.A.
        A Professional Corporation
        Attorneys for the Irgang Group


        By: /s/ Laurence May
            Laurence May, Esq. (LM-9714)
            900 Third Avenue, 16th floor
            New York, NY 10022-4728
            (212) 752-8000

42232/0010-1512639v1