```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
In re:                                                :     Bankruptcy Appeal
                                                      :     Case No. 08 Civ. 00942(DC)
MAYWOOD CAPITAL CORP., et al.,                        :
                                                      :
              Debtors.                                :
                                                      :
                                                      :
------------------------------------------------------x
```

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
(HONORABLE ROBERT D. DRAIN, U.S.B.J.)

## BRIEF OF APPELLEE JOHN S. PEREIRA, AS TRUSTEE

Dated: March 6, 2008

                                              DREIER LLP
                                              John P. Campo (JC-5421)
                                              John S. Kinzey (JK-4951)
                                              499 Park Avenue
                                              New York, New York  10022
                                              Tel: (212) 328-6000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

QUESTION PRESENTED ................................................................................................. 1

STATEMENT OF THE FACTS ........................................................................................ 1

ARGUMENT: THE DENIAL OF THE APPROVAL MOTION SHOULD
BE AFFIRMED .................................................................................................................. 6

CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

Federal Cases

*Committee of Equity Security Holders, v. Lionel Corporation,*
   722 F.2d 1063 (2nd Circuit 1983)......................................................................................6, 7

*In re Bakalis,*
   220 B.R. 525 (Bankruptcy E.D.N.Y. 1998) ..............................................................................7

*In re Broadmoor,*
   994 F.2d 744 (10th. Cir. 1993) ..........................................................................................7, 8, 9

*In re Martin,*
   91 F.3d 389 (3rd Cir. 1996).....................................................................................................10

*In re Murphy,*
   288 B.R. 1 (D. Maine 2002) .....................................................................................................8

*In re Orion Picture Corp.,*
   4 F.3d 1095 (2nd Cir. 1993) ...................................................................................................10

*In re Psychrometric Systems, Inc.,*
   367 B.R. 670 (Bankruptcy Colo. 2007)..................................................................................10

Statutes

Section 363(b) of the Bankruptcy Code, 11 U.S.C. § 363(b)...............................................passim

Appellee John S. Pereira, (the "Trustee"), as bankruptcy trustee of Maywood Capital Corporation and its jointly administered debtors (collectively the "Maywood Debtors") submits this brief in opposition to the appeal of Appellant 125th Street Owner LLC ("Appellant") from an order of the Bankruptcy Court denying the Trustee's motion, (the "Approval Motion") pursuant to Section 363(b) of the Bankruptcy Code for the approval of the Trustee's contracts (the "Contracts") to sell certain real properties (the "Properties") to Appellant.

## QUESTION PRESENTED

Did the Bankruptcy Court err in denying the Approval Motion when, prior to the hearing on that Motion, the Trustee received an unsolicited offer from another party to purchase the Properties for $1 million more than Appellant had agreed to pay for them?

## STATEMENT OF THE FACTS

The following is a concise statement of the essential facts attendant to the appeal.

Shortly after his appointment, the Trustee commenced adversary proceeding in the Bankruptcy Court seeking to recover title to eight real properties (the "Eight Properties") which, the Trustee alleged, had been fraudulently conveyed to certain individuals and entities (the "Irgang Entities") prior to the commencement of the Maywood Debtors' bankruptcy cases. Bankruptcy Docket No. 465, Motion to Approve (the "Approval Motion), ¶5. While these adversary proceedings were pending, the Trustee was contacted by the Appellant, through Saadia Shapiro, Esq., who expressed an interest in purchasing three of the Eight Properties, specifically, the three Properties, all of which are located on East 125th Street in Harlem. Transcript of Hearing held on December 21, 2007 ("Dec. 21 Tr."), p. 14, l. 20-22. During the discussions and negotiations that followed, Mr. Shapiro (a) represented that he was willing to pay a "premium" for these Properties because he was in the process of assembling a development site contiguous

to them (b) provided information concerning "comparable" real estate sales to substantiate his position that his proposed purchase price was higher than the prevailing "market" prices for the Properties and (c) advised the Trustee that he was willing to commit to purchase the three Properties contingent upon the Trustee's successfully recovering title to the Properties from the Irgang Entities in the pending adversary proceedings. Based on Mr. Shapiro's presentation, and the advice of his own real estate appraiser (who had valued the Properties for purposes of the litigation with the Irgang Entities), the Trustee believed that the Appellant was indeed offering a "premium" price for the Properties. Dec. 21 Tr. p. 29, l.12 – p. 30, l. 3. The parties then entered into the Contracts, which provided for the sale of the Properties for an aggregate price of $7,800,000. Approval Motion, Exhibits A, B and C.

The Contracts were not made subject to "higher and better" bids, as were some, but not all, of the other real estate sales contracts the Trustee has used in the Maywood Debtors' bankruptcy cases. (Appellant's Record on Appeal, No. 2, Docket 08-00942, Designation Nos. 106-109, 166, 192, 377, 461 and 465). They were, however, like all the other contracts used in the Maywood Debtors' cases, subject to Bankruptcy Court approval.

The Contracts did not expressly prohibit the Trustee from "shopping" the Properties, or seeking other offers on the Properties prior to the approval of the Contracts by the Bankruptcy Court. Dec. 21 Tr. p. 18, l. 22-25. While the Trustee advised Mr. Shapiro that he did not intend to seek out competing offers because be agreed with Mr. Shapiro that there was little likelihood that anyone else would match his price, particularly with the litigation with the Irgang Entities still pending, he repeatedly reminded Mr. Shapiro (who is himself an attorney and counsel of record for Appellant on this appeal) that the Trustee, as a fiduciary, had an obligation to consider any other competing offers he received. Transcript of Hearing held on December 10, 2007

("Dec. 10 Tr.") p. 7, l. 13 - l. 23; Dec. 21 Tr. p. 30, l. 18-23. Finally, the Contracts were expressly made subject to the approval by the Bankruptcy Court under Section 363 of the Bankruptcy Code - an approval that would have been required by the provisions of the Bankruptcy Code even if the Contracts had been silent on this point.

Contrary to the unsubstantiated innuendo and speculation set forth in the Appellant's brief, the Trustee did *not* delay making his Approval Motion to allow him to seek competing offers for the Properties, and no such "shopping" occurred. Dec. 10 Tr. p. 7, l. 13-18; Dec. 21 Tr. p. 31, l. 18-20. Instead, the Trustee waited to make the Approval Motion until after Judge Drain had completed the trial and until after post-trial submissions had been completed in the Trustee's adversary proceedings against the Irgang Entities, because the Trustee felt that the Bankruptcy Court would be more likely to reject the Irgang Entities' anticipated objections to the Contracts once the Court had heard and fully analyzed the strength of the Trustee's case in the fraudulent conveyance actions. See Approval Motion ¶5. In fact, the Trustee conferred with the Appellant regarding the delay and timing issue for filing the Motion, and the Appellant concurred in the Trustee's decision to wait to file the Approval Motion until after the adversary proceedings were fully submitted.

The Approval Motion was served and filed on November 9, 2007, and the Bankruptcy Court scheduled a hearing on the Approval Motion for December 10, 2007.

After the Approval Motion was filed, but before the hearing, the Trustee's counsel was contacted by Michael Rubin, of Rudd Development Group, LLC ("Rudd"). Dec. 10 Tr. p. 6, l. 1-11; Dec. 21 Tr. p. 32, l. 13 - p. 33, l. 14. Rudd offered to purchase the three Properties for an aggregate price of $8,800,000, which was $1 million more than Appellant, on the same terms and conditions as Appellant, including accepting the contingency that the Trustee would need to

recover title to the Properties from the Irgang Entities prior to closing on the sale of the Properties. Rudd was prepared to pay a deposit immediately upon the execution of the sales contracts, but asked for a "break-up" fee of two percent of his sales price if the Properties were sold to another party who made a "higher and better" offer. The Rudd offer was substantially higher and better than the Shapiro Contracts.

Before the Trustee signed any agreement with Rudd, the Trustee, through his counsel, contacted Mr. Shapiro, and confirmed that the Trustee had a fiduciary duty to entertain Rudd's higher offer, and other potential higher and better bids for the Properties. Dec. 10 Tr. p. 7, l.19 – p. 8, l. 3; Dec. 21 Tr. p. 33 l.1 – p. 34, l. 11. Moreover, the Trustee offered Shapiro the opportunity to match Rudd's price, and receive the same "stalking house" protection of a "break-up" fee that Rudd was requesting. Shapiro declined the Trustee's offer; expressed the view that the Rudd offer was not "for real"; and acknowledged his understanding that the Trustee had a fiduciary duty to execute contracts with Rudd and to do what was in the best interest of the Debtors' estates. At no point during these conversations did Shapiro suggest that the Trustee was acting in bad faith, or in contravention of the Contracts.

The Trustee proceeded to finalize written sales contracts with Rudd. Dec. 10 Tr. p. 6, l.1-20. In addition, the Trustee was also approached by another potential purchaser, Vornado Realty Trust, which indicated that it might be prepared to offer even more than Rudd was willing to pay for the Properties. Dec. 10 Tr. p. 6, l. 12-16.

The hearing on the Trustee's Approval Motion was held as scheduled on December 10, 2007. At the hearing, the Trustee's counsel placed on the record what had transpired with Appellant, Rudd and Vornado since the Approval Motion was filed. Dec. 10 Tr. p. 5, l. 18 – p. 6, l. 20. At the conclusion of the hearing, the Court indicated it would approve the "break-up"

fee requested by Rudd, and scheduled an "auction sale" of the properties in the Bankruptcy Court for December 21, 2007  Dec. 10 Tr. pp. 15, l.1 - 17 l. 24.  Appellant, in the person of Mr. Shapiro, and one of his outside attorneys, Abe Rappaport, Esq. were present at the hearing and sat silently as the Court granted this relief, never protesting that the Contracts were not being approved, nor presenting any evidence or argument that the Contracts were binding on the Trustee or the Court, or in the best interest of the Debtors' estates notwithstanding the emergence of the substantially higher and better bids. Dec. 10 Tr. p. 5, l. 23 - 25; Dec. 10 Tr. p. 15, l. 2 - 17.

Notwithstanding the Appellant's failure to assert any position or objection at the hearing on the Approval Motion, on or about December 19, 2007, the Appellant filed an adversary proceeding against the Trustee, coupled with a request for a temporary restraining order and preliminary injunction to enjoin the auction sale of the Properties scheduled at the hearing on the Approval Motion.  The Bankruptcy Court dealt with the Appellants' request for interim relief immediately prior to the auction sale, and essentially treated the Appellant's pleadings as a request for reconsideration. Dec. 21 Tr. p. 14, l. 8 - 14.  Judge Drain pointed out that the Trustee and his counsel were ethically obligated to inform the Court at the hearing on the Approval Motion that they had received a higher and better offer on the Properties, Dec. 21 Tr. p. 38, l. 5 – 8, and based on that information, the Court had exercised its own independent judgment to deny the Approval Motion. Dec. 21 Tr. p. 35, l. 22 – p. 36, l. 1; Dec. 21 Tr. p. 36, l. 19 – p. 42, l. 17.

Although the Bankruptcy Court allowed the auction sale of the Properties to proceed, no sale occurred because, at the auction, the Trustee and the Irgang Entities reached a settlement of the Trustee's fraudulent conveyance actions, pursuant to which the Irgang Entities agreed, inter alia, to pay the Trustee $15 million in return for retaining title to all Eight Properties involved in the litigation, including the three Properties which are the subject of this appeal, plus waive liens

and claims of approximately $10 million. The Trustee's settlement with the Irgang Entities was approved, without objection by the Appellant, by order entered by the Bankruptcy Court on February 22, 2008 (the "Settlement Approval Order").

Appellant now appeals from so much of the order entered by the Bankruptcy Court on December 20, 2008 (the "Order") that denied the Approval Motion.

### ARGUMENT: THE DENIAL OF THE APPROVAL MOTION SHOULD BE AFFIRMED

The three arguments the Appellant advances on appeal are all premised on an erroneous, overly constrained, view of the role of the Bankruptcy Court in approving a sale of estate property under Section 363(b) of the Bankruptcy Code. As will be demonstrated below, the Bankruptcy Court does not simply "rubberstamp" a proposed sale under Section 363(b). Nor is the Court's role limited to reviewing the Trustee's exercise of his business judgment at the time a proposed sales contract is negotiated and executed. Rather, the Bankruptcy Court must make its own determination of whether the proposed sale is in the best interest of the bankrupt debtor's estate. In this case, once the Trustee had advised the Bankruptcy Court -- as he was legally and ethically required to do -- that the Trustee had received a substantially higher and better offer for the Properties, the Bankruptcy Court properly determined that Appellant's Contracts were no longer in the best interest of the estates, and denied the Approval Motion.

In the seminal case of <u>Committee of Equity Security Holders, v. Lionel Corporation</u>, 722 F.2d 1063, 1071 (2nd Circuit 1983), the Second Circuit held that while the Bankruptcy Court had great discretion in approving a proposed sale under Section 363(b), "the rule we adopt requires that a judge determining a §363(b) application expressly find from evidence presented before him at the hearing a good business reason to grant such an application". As the Second Circuit elaborated:

In fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather he should consider all salient factors pertaining to the proceeding and accordingly, act to further the diverse interest of the debtor, creditors and equity holder, alike."

While the Trustee's business judgment in proposing a sale under Section 363 enjoys "great judicial deference," a "duty is imposed on the trustee to maximize the value obtained from a sale, particularly in liquidation cases." In re Bakalis, 220 B.R. 525, 532 (Bankruptcy E.D.N.Y. 1998). "To insure compliance with these duties, a bankruptcy court is generally afforded wide latitude in deciding whether to grant or deny approval of estate asset sales." Id. at 532, and "in appropriate circumstances it is proper for a court to interfere with the Trustee's judgment 'for the purposes of safeguarding the interest of parties concerned such a creditors and bidders.'" Id. (citation omitted).[1]

In particular, as the Tenth Circuit has held, "a bankruptcy court . . . does have the power to disapprove a proposed sale recommendation by a trustee . . . if it has an awareness there is another proposal in hand which, from the estates point of view, is better or more acceptable." In re Broadmoor, 994 F.2d 744, 746 (10th. Cir. 1993). In the present case, the Trustee advised the Court that, after the Approval Motion was filed, the Trustee had received a firm offer from Rudd to buy the properties for $1 million more than Appellant, on essentially identical terms. Thus, the Bankruptcy Court had ample discretion to deny the Approval Motion no matter how sound the Trustee's business judgment was when he originally executed the Contracts.

Based on the foregoing, the three arguments raised by the Appellant's brief can be summarily refuted. First, the Appellant argues that the Bankruptcy Court allegedly erred because it "considered no argument and received no evidence as to the Trustee's business reasons judgment for entering into the Contracts." There are numerous errors in this argument.

---

[1] Interestingly, Bankruptcy Judge Feller, the author of the Bakalis opinion, had represented the Securities and Exchange commission before the Second Circuit at the argument of the Lionel case.

First and foremost, the Appellant's principal and attorney did not avail themselves of the opportunity presented by the hearing on the Approval Motion to offer any evidence or argument as to why the Contracts should be approved. Second, the Trustee's reasons for entering into the Contracts were adequately set forth on the record by Trustee's counsel. See In re Murphy, 288 B.R. 1 (D. Maine 2002) (holding that the Bankruptcy Court did not err in denying a disappointed bidder an evidentiary hearing as to the Trustee's business judgment in accepting a competing bid). Third, the Bankruptcy Court did not need to consider the soundness of the Trustee's business judgment in originally entering the Contracts, since the Court denied the approval based on the unexpected emergence of a substantially higher and better bid. Denying the Approval Motion was an appropriate exercise of the Bankruptcy Court's judicial discretion, regardless of how sound the Trustee's original business judgment may have been when the contracts were executed. See Broadmoor above.

There are also numerous problems with Appellant's second argument, that "the Bankruptcy Court erred in deciding that the Trustee's duty to maximize the value of assets of the estate allows the Trustee to violate the covenant of good faith and fair dealing implied in the Contracts". First of all, the Bankruptcy Court had no need to consider whether the Trustee had or had not dealt fairly or in good faith with Appellant, because the Court reached its conclusion to deny the Approval Motion based on the availability of a better offer. Assuming, arguendo, that the Trustee had done anything improper in his dealing with Appellant (and he did not), the remedy would not have been to approve Contracts that were not in the best interest of the Maywood Debtors' estates or creditors. There is, however, no basis for the Appellant's assertion

that the Trustee breached any duty of good faith and fair dealing, even assuming such a duty existed prior to the Bankruptcy Court approval of the Contracts pursuant to Section 363.[2]

Appellant's argument is essentially that the Trustee improperly sought out and solicited other bidders for the Properties after his Contracts with Appellant were executed. As a factual matter, this simply did not happen. Before he entered into the Contracts, the Trustee had satisfied himself that given Mr. Shapiro's unique interest in assembling a development site including the Properties, there was little likelihood that he could find another potential buyer who would "outbid" Mr. Shapiro, particularly given the Trustee's inability to deliver title to the properties until the end of the litigation with the Irgang Entities. While the Trustee advised Mr. Shapiro that he had no intention of "shopping" the Properties further, there is no provision in the Contracts that prohibited him from doing so if he had thought it advisable. Finally, when the Trustee received the <u>unsolicited</u> offer from Rudd <u>after</u> the Approval Motion was filed, the Trustee, in fairness to Mr. Shapiro, advised him of the Rudd offer and gave him the opportunity to match it, so that Appellant, rather than Rudd, would receive the "stalking house" protection of a "break-up" fee.

In short, while the Trustee did not make the Contracts subject to higher and better bids, the Trustee could not - and did not - contract away his fiduciary duty to consider higher competing offers that were presented to him, or his ethical obligation to advise the Bankruptcy Court of those other offers, even though it might lead the Court to deny the Approval Motion. Mr. Shapiro, an experienced attorney, fully understood these were the ground rules of the arena in which he was acting. Indeed, in analogous circumstances the Third Circuit has held that if "a trustee is prohibited from informing the [bankruptcy] court of changed circumstances, or from

---

[2] As Appellant concedes, there is a split of authority as to whether a trustee is bound by a contract to sell property until it is approved by the bankruptcy court. See <u>In re Broadmore, supra</u>, characterizing such "contracts" as nothing more than "binding bids" until approved by the Bankruptcy Court.

advocating on behalf of creditors in light of changed circumstances, a bankruptcy court could proceed without full information, and the creditor body could suffer"; that reporting those changed circumstances during the pendency of an approval motion "would not constitute a breach of contract"; and, indeed a trustee's failure to do so might present a "serious question of breach of a fiduciary responsibility to all creditors." In re Martin, 91 F.3d 389, 395 (3rd Cir. 1996). See also, In re Psychrometric Systems, Inc., 367 B.R. 670 (Bankruptcy Colo. 2007) (trustee, not wanting to violate contractual duty of good faith or fiduciary duty to her estate, properly disclosed a competing offer and left it in the hands of the Court to decide whether to approve first agreement).

Finally, the Appellant's third argument, that the Bankruptcy Court erred "when it substituted its business judgment based on events occurring on December 10, 2007, for the Trustee's business judgment based on the facts before him as of August 21, 2007", is unavailing for reasons already discussed. While the Court ordinarily gives deference to a Trustee's business judgment, the cases cited above make it abundantly clear than when circumstances change, and particularly when a higher bid appears, it is clearly within the Bankruptcy Court's power and discretion to protect the interest of the estates by denying an Approval Motion.[3]

In the Order denying the Approval Order, the Bankruptcy Court did not intrude on the Trustee's prerogative to choose among competing bidders. Instead, at the Trustee's request, the Court merely scheduled an auction in the Bankruptcy Court at which all potential bidders, including Appellant, would have an opportunity to participate. At that auction, the Trustee then exercised his business judgment not to sell the Properties at all, and instead entered into a settlement agreement with the Irgang Entities pursuant to which the Irgang Entities were allowed

---

[3] At the hearing on December 21, 2007, the Bankruptcy Court also cited In re Orion Picture Corp., 4 F.3d 1095 (2nd Cir. 1993) for this proposition. Although Appellant correctly points out that this case dealt with the assumption of an executory contract, the cases decided under Section 363 reach the same result.

to retain all Eight Properties in return for a payment of $15 million plus a waiver of their various liens and claims. The Bankruptcy Court approved this settlement, without objection by Appellant, on February 22, 2008. There was nothing in the Trustee's Contracts with Appellant that restricted the Trustee's ability to settle with the Irgang Entities at any time, and the Contracts, even if they had been approved by the Bankruptcy Court, would have been terminated by virtue of the Trustee's inability to deliver title as the result of the Trustee's settlement agreement with the Irgang Entities.

## CONCLUSION

For all of the foregoing reasons, the order of the Bankruptcy Court should be affirmed.

Dated: New York, New York  
       March 6, 2008

DREIER LLP

By: _s/John S. Kinzey_  
    John P. Campo (JC-5421)  
    John S. Kinzey (JK-4951)  
    499 Park Avenue  
    New York, New York 10022  
    Tel: (212) 328-6000