**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
900 Third Avenue, 16th floor
New York, NY 10022-4728
(212) 752-8000
(212) 752-8393 Facsimile
Laurence May, Esq. (LM-9714)
Leo V. Leyva, Esq. (LL-9061)
Attorneys for Jay Irgang, Mark Irgang, Orli Irgang
and Irgang Entities

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MAYWOOD CAPITAL CORP., et. al.,<br><br>    Debtor. | Bankruptcy Appeal<br><br>Case No. 08 cv 00942 (DC) |

**AFFIDAVIT OF LAURENCE MAY IN OPPOSITION TO APPELLANT'S MOTION**
**FOR A STAY PENDING APPEAL**

STATE OF NEW YORK  )
         ) SS.:
COUNTY OF NEW YORK )

   LAURENCE MAY, ESQ., of full age, being duly sworn according to law, upon his oath

deposes and says:

   1.  I am an attorney-at-law of the State of New York and a member of Cole, Schotz,

Meisel, Forman & Leonard, P.A., counsel for Mark Irgang, Jay Irgang, Orli Irgang and the

Irgang entities (collectively, the "Irgang Group").  I am authorized to submit this Affidavit in

opposition to the motion for a stay pending appeal by 125th Street Owner, LLC ("Shapiro") and

in opposition to the appeal of Judge Drain's December 20, 2007 Order.

   2.  The Chapter 11 petitions for these Debtor were all filed on February 19, 2005, and

are being jointly administered under the caption of "<u>In re Maywood Corp. et al</u>.," Case No. 05-

42232/0010-1513291v1

10987, before the United States Bankruptcy Court for the Southern District of New York, the Honorable Robert D. Drain.  On March 24, 2005, the Bankruptcy Court entered orders appointing a Chapter 11 trustee ("Trustee") for Maywood Capital Corp. and 46 of its affiliated entities (the "Maywood Debtors").

3.     On June 6, 2005, the Trustee filed eight (8) adversary proceeding complaints against the Irgang Group claiming that the Debtors' pre-petition sale of eight (8) properties (collectively, the "Irgang Properties") to the Irgang Group were for insufficient consideration and were fraudulent conveyances.  The eight (8) Irgang Properties are commonly known as 148 West 124th Street, New York; 27 West 131st Street, New York; 6 East 132nd Street, New York; 917 Eagle Avenue, New York; 2093 Madison Avenue, New York; 65-67 East 125th Street, New York; 77 East 125th Street, New York; and 79 East 125th Street, New York (the 65-67 East 125th Street, 77 East 125th Street and 79 East 125th Street Properties are referred to as the "125th Street Properties").

4     On February 22, 2007, the Trustee filed twelve (12) adversary proceeding complaint against Bodden Funding Corporation ("Bodden") and the Irgangs seeking to set aside certain mortgages against the Irgang Properties on the grounds that they were constructive fraudulent transfers.  Specifically, the Trustee sought to set aside mortgages that the Debtors granted to BRT Realty Trust and Kennedy Funding Inc., which were subsequently acquired by Bodden.

5.     The Trustee and Irgang Group proceeded to trial on the 2005 Adversary Proceedings on August 28, 29 and 31, 2007, before Judge Drain.  On November 12, 2007, before Judge Drain had issued a decision in connection with the Adversary Proceedings, the Trustee filed the Approval Motion to approve the sale of the three (3) 125th Street Properties to Shapiro.

The sale of the 125th Street Properties to Shapiro or another third-party was contingent on the Court finding in favor of the Trustee in connection with the Adversary Proceedings.

6.    At the outset of the December 10, 2007 hearing, the Trustee advised the Bankruptcy Court that he had received an unsolicited offer that was more than $1 million greater than Shapiro's offer.  Based on the existence of higher and better offers, Judge Drain denied the Approval Motion and directed the Trustee to conduct an auction of the three (3) 125th Street Properties.

7.    At the auction, the Irgang Group submitted a bid which resulted in them reaching a full settlement with the Trustee of twenty (20) separate adversary proceedings.  On January 25, 2008, the Trustee filed a motion to approve the Settlement of the Adversary Proceedings.  On February 14, 2007, Judge Drain granted the Settlement Motion and issued the Settlement Order approving the Settlement.  (True copies of the Settlement Order and transcript of the February 14th hearing are attached as Exhibits A and B, respectively.)

8.    The Settlement Order resolved all issues of ownership to the Irgang Properties in favor of the Irgang Group, which will own the Properties free and clear of liens, mortgages, judgments, encumbrances and claims held by the Maywood Debtors and their creditors.  The Irgang Group has agreed to pay $15 million in connection with the Settlement.  The Settlement Order requires the Irgang Group and Trustee to close the Settlement by April 15, 2008 (or as extended in accordance with the terms of the Settlement).

9.    Shapiro failed to appeal the Settlement Order.  In fact, Shapiro consented to the entry of the Settlement Order.  Shapiro never filed and/or raised any opposition to the Trustee's motion to approve the Settlement.

10.     The Irgang Group respectfully request that the Court deny Shapiro's stay motion and dismiss the appeal.

                                        _/s/ Laurence May_____
                                        LAURENCE MAY

Sworn and subscribed to
before me this 6th day
of March, 2008.

/s/_____
Notary Public

42232/0010-1513291v1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MAYWOOD CAPITAL CORP., et al.,<br><br>          Debtors. | Case No. 05-10987 (RDD)<br>Chapter 11<br><br>(Jointly Administered)<br>Case Nos. 04-17047, 05-10944 to<br>05-10987, 05-11521 and 05-11523<br>(RDD) |
| JOHN S. PEREIRA, as Chapter 11 Trustee of<br>2093 MADISON AVE. REALTY CORP.,<br><br>          Plaintiff,<br><br>    v.<br><br>2093 MADISON LLC, JAY IRGANG, MARK<br>IRGANG AND ORLI IRGANG,<br><br>          Defendants. | Adv. Pro. No. 05-02095 (RDD) |
| JOHN S. PEREIRA, as Chapter 11 Trustee of<br>148 WEST 124TH STREET REALTY CORP.,<br><br>          Plaintiff,<br><br>    v.<br><br>148 WEST 124TH ST. LLC, JAY IRGANG,<br>MARK IRGANG AND ORLI IRGANG,<br><br>          Defendants. | Adv. Pro. No. 05-02090(RDD) |
| JOHN S. PEREIRA, as Chapter 11 Trustee of 27<br>EAST 131ST STREET REALTY CORP.,<br><br>          Plaintiff,<br><br>    v.<br><br>27 EAST 131ST ST. LLC, JAY IRGANG,<br>MARK IRGANG AND ORLI IRGANG,<br><br>          Defendants. | Adv. Pro. No. 05-02093 (RDD) |

{00330524.DOC;}

JOHN S. PEREIRA, as Chapter 11 Trustee of 6
EAST 132ND STREET APARTMENT CORP.,

                     Plaintiff,

            v.

6 EAST 132ND STREET LLC, JAY IRGANG,
MARK IRGANG AND ORLI IRGANG,

                  Defendants.

Adv. Pro. No. 05-02091 (RDD)

JOHN S. PEREIRA, as Chapter 11 Trustee of
65-67 EAST 125TH STREET REALTY CORP.,

                     Plaintiff,

            v.

65-67 EAST 125TH STREET LLC, JAY
IRGANG, MARK IRGANG AND ORLI
IRGANG,

                  Defendants.

Adv. Pro. No. 05-02096 (RDD)

JOHN S. PEREIRA, as Chapter 11 Trustee of 77
EAST 125TH STREET REALTY LLC,

                     Plaintiff,

            v.

77-79 E. 125TH STREET LLC, JAY IRGANG,
MARK IRGANG AND ORLI IRGANG,

                  Defendants.

Adv. Pro. No. 05-02092 (RDD)

JOHN S. PEREIRA, as Chapter 11 Trustee of 79
EAST 125TH STREET REALTY LLC,

                     Plaintiff,

            v.

77-79 E. 125TH STREET LLC, JAY IRGANG,
MARK IRGANG AND ORLI IRGANG,

                  Defendants.

Adv. Pro. No. 05-02089 (RDD)

JOHN S. PEREIRA, as Chapter 11 Trustee of
917 EAGLE AVENUE REALY CORP.,

            Plaintiff,

    v.

917 EAGLE AVENUE LLC, JAY IRGANG,
MARK IRGANG AND ORLI IRGANG,

          Defendants.

Adv. Pro. No. 05-02094(RDD)

## ORDER APPROVING SETTLEMENT AGREEMENT

Upon the motion dated January 25, 2008 (the "Motion") of John S. Pereira, Chapter 11

Trustee of Maywood Capital Corp. ("Maywood Capital"), 2093 Madison Avenue Realty Corp.

("2093 Corp."), 6 East 132nd Street Realty Corp. ("6 East Corp."), 27 East 131st Street Realty

Corp. ("27 East Corp."), 148 W. 124th Street Realty Corp. ("148 West Corp."), 917 Eagle

Avenue Realty Corp. ("917 Eagle Corp."), 65-67 East 125th Street Realty Corp. ("65-67 Street

Realty"), 77 East 125th Street Realty LLC ("77 Street Realty") and 79 East 125th Street LLC ("79

Street Realty" and, collectively with 2093 Corp., 6 East Corp., 27 East Corp., 148 West Corp.,

917 Eagle Corp. 65-67 Street Realty and 77 Street Realty, the "Eight Debtors") and their related

debtors whose estates are being jointly administered with Maywood Capital and the Eight

Debtors (collectively, the "Maywood Debtors") and Mark Irgang, Jay Irgang and Orli Irgang

(collectively, the "Irgangs"), 2093 Madison LLC, 148 West 124th Street LLC, 27 East 131st

Street LLC, 6 East 132nd Street LLC, 65-67 East 125th Street LLC, 77-79 East 125th Street LLC

and 917 Eagle Avenue LLC, (collectively, the "Irgang LLCs") and Bodden Funding Corp.

("Bodden", and together with the Irgangs and the Irgang LLCs, the "Irgang Entities"); and the

Trustee and the Irgang Entities having agreed to settle all of their claims, disputes, controversies

and issues in accordance with the terms and conditions set forth in the Settlement Agreement, a

copy of which is attached hereto as Exhibit A[1]; and it appearing that the requested relief is reasonable and proper, and sufficient cause appearing to me therefor, it is

FOUND, DETERMINED, ORDERED, ADJUDGED AND DECREED as follows:

1.    This Court has jurisdiction to hear and determine the Motion pursuant to Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 9019 and to grant the relief requested therein and to approve the Settlement Agreement pursuant to inter alia 11 U.S.C. § 105 (the "Bankruptcy Code").

2.    This matter is a core proceeding within the definition and meaning of 28 U.S.C. § 157(b)(2)(A)(B).

3.    Proper, timely and adequate notice of the Motion, the relief requested therein and of the Settlement Agreement have been provided in accordance with Section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

4.    All interested parties, including all known creditors of the Maywood Debtors, and all parties that have filed notices of appearances and/or proofs of claims in any of the Maywood Debtors' bankruptcy proceedings have received notice of the Motion, as reflected in the Affidavit of Service filed with the Court, and have had a reasonable opportunity to object or otherwise be heard with respect to the Motion, the relief requested therein and the Settlement Agreement.

5.    The Trustee has demonstrated that the approval of the Settlement Agreement reflects a reasonable exercise of his business judgment on behalf of the Maywood Debtors and

---

[1]    Capitalized terms not defined herein are defined in the Settlement Agreement or the Motion.

their estates, is in the best interests of the Maywood Debtors, their estates and their creditors, and avoids the risks, uncertainties and expenses of protracted litigation with respect to the Actions.

6.      The terms and conditions of the Settlement Agreement are fair and reasonable and are hereby approved in all respects. The Trustee is hereby directed and authorized to take all actions as are necessary and appropriate to consummate and implement the Settlement Agreement without further order of this Court.

7.      Pursuant to the terms and conditions of the Settlement Agreement, upon the Closing of the Settlement Agreement, the Irgang Entities shall own the eight (8) properties located at: (i) 6 East 132nd Street, New York, New York; (ii) 27 East 131st Street, New York, New York; (iii) 148 West 124th Street, New York, New York; (iv) 917 Eagle Avenue, New York, New York; (v) 65-67 East 125th Street, New York, New York; (vi) 77 East 125th Street, New York, New York; (vii) 79 East 125th Street, New York, New York; and (viii) 2093 Madison Avenue, New York, New York (collectively, the "Eight Properties"), free and clear of all claims, causes of action, rights, liens, mortgages and judgments held by: (i) any of the Maywood Debtors; (ii) any individual or entity that invested in the Maywood Debtors either through an equity investment or participation in any investor mortgage allegedly executed by a Maywood Debtor (a "Maywood Debtor Investor"); (iii) any entity, as defined by Section 101(15) of the Bankruptcy Code, asserting any claim on behalf of any Maywood Debtor Investor; and (iv) any of the holders of the 125th Street Commercial Mortgages to the extent set forth in the Settlement Agreement.

8.      Without limiting the generality of the foregoing paragraph, upon the Closing of the Settlement Agreement, the Irgang Entities' title to the Eight Properties shall be free and clear

of the following known claims, causes of action, rights, liens, mortgages, lis pendens and
judgments:

      (i)      The unpaid principal amount of the Mortgage recorded on February 24,
2003 in CRFN 2003000025594 in the New York County Clerk's Office originally in favor of
Commercial Mortgage Corporation (the "Commercial Mortgage");

      (ii)      The unpaid principal amount of the Mortgages recorded on October 15,
2001 in Reel 3373, page 2282 and January 16, 2002 in Reel 3430, page 1074 in the New York
County Clerk's Office originally in favor of Community Capital Bank and assigned to Parade
Place, LLC by assignments of mortgage recorded on September 13, 2005 in CRFN
2005000510178 and CRFN 2005000510179 (the "Community Capital Mortgage");

      (iii)      The unpaid principal amount of the Mortgage recorded on December 3,
2001 in the New York County Clerk's Office in Reel 3401 page 327 in favor of Astoria Federal
Savings & Loan Association (the "Astoria Mortgage" and, collectively with the Commercial
Mortgage and the Community Capital Mortgage, the "125th Street Commercial Mortgages"); and

      (iv)      The assignment of leases and rents made by 65-67 East 125th St. Realty
Corp. to Community Capital Bank dated August 22, 2001 and recorded on January 16, 2002 in
Reel 3430 at page 1106;

      (v)      A building loan agreement in the amount of $140,000 made by 65-67 East
125th St. Realty Corp. to Community Capital Bank dated January 14, 2002;

      (vi)      All rights under a deed executed by Executive Abstract Corp. as grantor,
to John S. Pereira, Trustee, dated July 19, 2005 and recorded on August 15, 2005 in CRFN 2005
000452286;

(vii)    Any rights, obligations or restrictions with respect to a notice of a bankruptcy court order dated May 2, 2005 and recorded on May 24, 2005 in CRFN 2005 000303588;

(viii)    Lis pendens filed by Community Capital Bank, Index No. 110688/04 and docketed on July 22, 2004 with respect to Block 01750, Lot 00027;

(ix)    Lis pendens filed by 65-67 East 125th Street Realty Corp., Index No. 113564/04 and docketed on September 22, 2004 with respect to Block 01750, Lot 00027;

(x)    Lis Pendens filed by John S. Pereira, Trustee, Index No. 10987/05 and docketed on June 7, 2005 with respect to Block 01750, Lot 0027;

(xi)    Uniform Commercial Code Filing by Tumbler's Inc., File No. 00PN49 169 filed on October 4, 2000;

(xii)    Assignment of leases and rents made by 2093 Madison Ave. Realty Corp. to Retirement Accounts Inc. f/b/o Jerome C. Rosenthal IRA et al. dated April 1, 2001 and recorded March 12, 2002 in Reel 3468 at page 466;

(xiii)    Assignment of leases and rents made by 2093 Madison Ave. Realty Corp. to Alpha Mortgage Investors et al. dated November 10, 1999 and recorded on February 1, 2000 in Reel 3040 at page 2202.

(xiv)    Lis pendens filed by John S. Pereira, Trustee, Index No. 10987/05 and docketed on June 7, 2005 as against Block No. 01756, Lot 00050;

(xv)    Mortgage from 2093 Madison Ave. Realty Corp. to Alpha Mortgage Investors et al. in the amount of $495,000 dated November 10, 1999 and recorded on February 1, 2000 in Reel 3040, Page 2192;

(xvi)    Assignment of Mortgage by Northern Trust Bank of FL. as Trustee of the

Judith Kulman IRA RO Trust to Beta Mortgage Investors dated June 22, 2000 and recorded on

December 6, 2000 in Reel 3202, Page 1662;

(xvii)   Assignment of Mortgage by West Coast Guaranty Bank a/c/f Allen S.

Lewis IRA to The Provident Bank a/c/f Allen S. Lewis IRA dated April 26, 2002 and recorded

on June 3, 2002 in Reel 3529 page 2229;

(xviii)  Assignment of mortgage by West Coast Guarantee Bank a/c/f Edwin V.

Cooksey, IRA, to the Provident Bank a/c/f Edwin V. Cooksey IRA, dated April 26, 2002 and

recorded on June 3, 2002 in Reel 3529 at page 2234;

(xix)    Mortgage from 2093 Madison Ave. Realty Corp. to Retirement Accounts,

Inc. f/b/o Jerome C. Rosenthal IRA et al. in the amount of $305,000 dated April 1, 2001 and

recorded on March 12, 2002 in Reel 3468 at Page 456;

(xx)     Assignment of leases and rents made by 148 West 124th Street Realty

Corp. to Richard B. and Cynthia S. Malkin et al. dated November 1, 1999 and recorded on April

19, 1999 in Reel 2858 at page 692;

(xxi)    Assignment of leases and rents made by 148 West 124th Street Realty

Corp. to Marilyn Van Harken dated January 11, 1999 and recorded on March 18, 1999 in Reel

2838 at page 2393;

(xxii)   All rights under deeds recorded on May 10, 2004 in CRFN 2004

000292069 and August 10, 2004 in CRFN 2004 000490589 and executed by Executive Abstract

Corp. as grantor to John S. Pereira, Trustee, as grantee;

(xxiii)  Lis pendens filed by Richard B. Malkin, Index No. 116724/04 docketed on

November 24, 2004 with respect to Block 01908, Lot 0054;

(xxiv)  Lis pendens filed by John S. Pereira, Trustee, Index No. 10987/05 and docketed on June 7, 2005 with respect to Block 01908, Lot 00054;

(xxv)   Uniform Commercial Code Financing Statement filed by Cynthia S. Malkin and Richard B. Malkin, Filing No. 99PN05343 and dated February 2, 1999;

(xxvi)  Mortgage of 148 West 124th St. Realty Corp. to Richard B. and Cynthia S. Malkin et al. in the amount of $489,000 dated January 11, 1999 and recorded on April 19, 1999 in Reel 2858, Page 682;

(xxvii) Assignment of Mortgage from Alpha Mortgage Investors to Jerome Rosenthal Trust, et al. dated February 2, 2001 and recorded on June 7, 2001 in Reel 3301, Page 1166;

(xxviii)Assignment of Mortgage from Beta Mortgage Investors to West Coast Bank a/c/f Edwin V. Cooksey dated December 29, 2000 and recorded on July 23, 2001 in Reel 3326, Page 949;

(xxix)  Assignment of Mortgage from Alpha Mortgage Investors to Tumblers, Inc. dated July 18, 2001 and recorded on September 20, 2001 in Reel 3357, page 2087;

(xxx)   Assignment of Mortgage from Jack Winston, Trustee to Beta Mortgage Investors dated October 26, 2001 and recorded on April 8, 2002 in Reel 3485 at Page 1916;

(xxxi)  Assignment of Mortgage from Robert Levin Trust dated 2/37/86 to Beta Mortgage Investors recorded on April 8, 2002 in Reel 3585, Page 1920;

(xxxii) Mortgage from 148 West 124th St. Realty Corp. to Marilyn Van Harken in the amount of $40,000 dated January 11, 1999 and recorded on March 18, 1999 in Reel 2838, Page 2383;

(xxxiii)  All rights under a deed executed by Executive Abstract Corp., as grantor, to John S. Pereira, Trustee and recorded on August 15, 2005 in CRFN 2005000456475;

(xxxiv)  Lis pendens filed by John S. Pereira, Index No. 10987/05 and docketed on June 7, 2005 with respect to Block 01756, Lot 00067;

(xxxv)  All rights under a deed executed by Executive Abstract Corp., as grantor, to John S. Pereira, Trustee dated July 19, 2005 and recorded on August 15, 2005 in CRFN 2005000456823;

(xxxvi)  Lis pendens filed by 917 Eagle Ave. Realty Corp., Index No. 22792/04 docketed on September 22, 2004 with respect to Block 02620, Lot 00034;

(xxxvii)   The assignment of leases and rents made by 79 East 125th St. Realty LLC to Astoria Federal Savings and Loan Association dated September 25, 2001 and recorded on December 3, 2001 in Reel 3401, Page 365;

(xxxviii)  All rights under deed dated July 19, 2005 and recorded on August 11, 2005 in CRFN 2005000452288 from Executive Abstract Corp., as grantor, to John S. Pereira, Trustee, as grantee;

(xxxix)  Lis pendens filed by Commercial Mortgage Company, Index No. 113294/03 and docketed on July 22, 2003 as against Block No. 01750, Lot 00031;

(xl)   Lis pendens filed by John S. Pereira, Trustee, Index No. 10987/05 and docketed on June 7, 2005 with respect to Block 01750, Lot 00031;

(xli)   Uniform Commercial Code Financing Statement filed by Commercial Mortgage Corporation on December 26, 2002, Filing No. 02PN34697;

(xlii)    All rights under deed dated July 19, 2005 and recorded on August 15, 2005 in CRFN 2005000456593 from Executive Abstract Corp. as grantor to John S. Pereira, Trustee, as grantee;

(xliii)    Lis pendens filed by Alpha Mortgage Investors Corp., Index No. 603 922/03 and docketed on December 16, 2003 with respect to Block 1750, Lot 0032;

(xliv)    Lis pendens filed by 79 East 125th Street Realty Corp., Index No. 113560/04 docketed on September 22, 2004 with respect to Block 1750, Lot 0032;

(xlv)    Lis pendens by John S. Pereira, Index No. 10987/05, docketed on June 7, 2005 with respect to Block 1750, Lot 0032;

(xlvi)    Mortgage from 77 East 125th Street Realty LLC to Commercial Mortgage Corporation dated November 25, 2002 and recorded on February 24, 2003 in CRFN 2003000025594;

(xlvii)    Assignment of Mortgage from Commercial Mortgage Corporation to Commercial Mortgage Company LLC dated February 13, 2003 and recorded on January 8, 2004 in CRFN 2004000010407;

(xlviii)    Any recorded claim against the Eight Properties, by way of judgment, mortgage or otherwise, of the following individuals or entities:

      A.    Alpha Mortgage Investors;

      B.    Beta Mortgage Investors;

      C.    Deborah Winston-Levin;

      D.    Robert Levin;

      E.    The Harold Kulman Individual Retirement Account Trust and Harold Kulman, individually;

F.    Northern Trust Bank as the Trustee of the Judith Kulman Individual Retirement Account Trust and Judith Kulman, individually;

G.    Edwin V. Cooksey Individual Retirement Account Trust, and individually;

H.    Allen S. Lewis Individual Retirement Account Trust and individually;

I.    Jerome Rosenthal Individual Retirement Account and individually;

J.    Richard Malkin;

K.    Cynthia Malkin;

L.    Selma Winston;

M.    Osvaldo Cruz;

N.    Jack Winston;

O.    R. Harry Scott;

P.    Kenia Cruz;

Q.    Thomas Bohnert;

R.    Watson Freeman; and

S.    Marilyn Van Harken.

9.    The claims, causes of action, rights, liens, mortgages and judgments from which the Irgang Entities' title to the Eight Properties shall be free and clear as set forth in Paragraphs 7 and 8 above (collectively, the "Claims") shall attach to the Settlement Amount, subject to further order of the Court.

10.    As of the Closing of the Settlement Agreement, this Order is and shall be effective as a determination that the Irgang Entities shall own and be possessed of legal and equitable title to each of the Eight Properties, free and clear of the Claims, and the Order shall be binding upon and govern the acts of all entities which may be required, by operation of law or

otherwise, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in and to the Eight Properties, including, without limitation, all filing agents, recorders of deeds and mortgages, administrative agencies, and federal, state and local officials.

11.     The Irgang Entities shall not be liable for any of the Claims based on successor liability or any similar theory of liability.

12.     Upon the Closing of the Settlement Agreement, for purposes of the Mortgage Fraudulent Conveyance Actions and the Maywood Debtors' bankruptcy cases only, any and all mortgages and liens held by the Irgang Entities against the properties of any of the Maywood Debtors shall be deemed avoided and preserved for the benefit of the estate of the Maywood Debtor which owns or owned the properties to which the mortgage or lien attached, provided however, that the avoidance and preservation of the Irgang Entities' mortgages and liens is without prejudice to the rights, claims and defenses of BRT Realty Trust, Kennedy Funding, Inc., Gerold Migdol, Migdol Realty Management, LLC, 18 W. 129St., LLC, and 243 E. 118th St. LLC in the Mortgage Fraudulent Conveyance Actions.

13.     Upon the Closing, the Parties will execute stipulations of dismissal of the Actions, as between the Parties only, pursuant to which the Actions shall be dismissed with prejudice and without costs.

14.     Upon the Closing of the Settlement Agreement, the Trustee is authorized to pay, and shall promptly thereafter pay, to Rudd Development Group LLC ("Rudd") a Break-Up fee of $176,000 from the Settlement Amount, and shall promptly thereafter release and deliver to Rudd the full amount of the cash deposit previously furnished by Rudd to the Trustee with respect to Rudd's offer and proposed contracts to purchase the three properties located at 65-67 East 125th

Street, New York, New York, 77 East 125th Street, New York, New York, and 79 East 125th

Street, New York, New York, together with accrued interest.  Upon the Closing of the Settlement

Agreement, Rudd's offer and proposed contracts for the purchase those three properties shall be

deemed to have been withdrawn, and Rudd shall have no further responsibilities or obligations, if

any, relating to such offer and proposed contracts or its commitment to remain a "standby

purchaser" with respect to those three properties.  If the Closing of the Settlement Agreement

does not occur on or before April 15, 2008, the Court will convene a hearing on April 28, 2008,

at 10:00 a.m., to consider approval of the sale of those three properties from the Trustee to Rudd

pursuant to Rudd's offer and proposed contracts.

15.     Upon the Closing of the Settlement Agreement, the Trustee shall file a notice with

the Clerk of the Court which shall state the date on which the Closing occurred.

16.     This Court retains jurisdiction to enforce the Settlement Agreement and to hear

and determine any dispute or controversy arising out of or relating thereto.

DATED:     New York, New York
           February 21, 2008

                                        /s/Robert D. Drain
                                        HON. ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## SETTLEMENT AGREEMENT

This agreement of compromise and settlement (the "Settlement Agreement" or "Agreement") made, effective as of the 15th day of January, 2008, between and among John S. Pereira (the "Trustee") in his capacity as the Chapter 11 Trustee of Maywood Capital Corp. ("Maywood Capital"), 2093 Madison Avenue Realty Corp. ("2093 Corp."), 6 East 132nd St. Apt. Corp. ("6 East Corp."), 27 East 131st Street Realty Corp. ("27 East Corp."), 148 W. 124th St. Realty Corp. ("148 West Corp."), 917 Eagle Avenue Realty Corp. ("917 Eagle Corp."), 65-67 East 125th Street Realty Corp. ("65-67 Street Realty"), 77 East 125th Street Realty LLC ("77 Street Realty") and 79 East 125th Street Realty LLC ("79 Street Realty", and collectively with 2093 Corp., 6 East Corp., 27 East Corp., 148 West Corp., 917 Eagle Corp. 65-67 Street Realty and 77 Street Realty, the "Eight Debtors") and their related debtors whose estates are being jointly administered with Maywood and the Eight Debtors (collectively, the "Maywood Debtors") and Mark Irgang, Jay Irgang and Orli Irgang (collectively, the "Irgangs"), 2093 Madison LLC, 148 West 124th Street LLC, 27 East 131st Street LLC, 6 East 132nd Street LLC, 65-67 East 125th Street LLC, 77-79 East 125th Street LLC and 917 Eagle Avenue LLC, (collectively, the "Irgang LLCs") and Bodden Funding Corp. ("Bodden", and together with the Irgangs and the Irgang LLCs, the "Irgang Entities") (the Trustee, the Irgangs, the Irgang LLCs and Bodden are hereinafter individually a "Party" and collectively, the "Parties").

## RECITALS:

WHEREAS, on February 19, 2005, the Maywood Debtors filed voluntary Chapter 11 petitions for relief under Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court (the "Court") for the Southern District of New York (the "Maywood Bankruptcy Proceedings"); and

WHEREAS, by Order dated March 24, 2005, the Court approved, pursuant to 11 U.S.C. § 1104(d), the appointment of John S. Pereira as the Chapter 11 Trustee for each of the Maywood Debtors; and

WHEREAS, the Trustee has commenced the following lawsuits (each a "Real Property Fraudulent Conveyance Action" and, collectively, the "Real Property Fraudulent Conveyance Actions") against the Irgangs and the Irgang LLCs.

|  | PLAINTIFF | DEFENDANTS | ADV. PRO. NO. |
|---|---|---|---|
| 1. | John S. Pereira, as Chapter 11 Trustee of 2093 Madison Ave. Realty Corp. | 2093 Madison LLC, Jay Irgang, Mark Irgang and Orli Irgang | 05-02095 (RDD) |
| 2. | John S. Pereira, as Chapter 11 Trustee of 148 West 124th Street Realty Corp. | 148 West 124th St. LLC, Jay Irgang, Mark Irgang and Orli Irgang | 05-02090 (RDD) |
| 3. | John S. Pereira, as Chapter 11 Trustee of 27 East 131st Street Realty Corp. | 27 East 131st St. LLC, Jay Irgang, Mark Irgang and Orli Irgang | 05-02093 (RDD) |
| 4. | John S. Pereira, as Chapter 11 Trustee of 6 East 132nd Street Apartments Corp. | 6 East 132nd Street LLC, Jay Irgang, Mark Irgang and Orli Irgang | 05-02091 (RDD) |
| 5. | John S. Pereira, as Chapter 11 Trustee of 65-67 East 125th Street Realty Corp. | 65-67 East 125th LLC, Jay Irgang, Mark Irgang and Orli Irgang | 05-02096 (RDD) |
| 6. | John S. Pereira, as Chapter 11 Trustee of 77 East 125th Street Realty LLC | 77-79 East 125th Street LLC, Jay Irgang, Mark Irgang and Orli Irgang | 05-02092 (RDD) |
| 7. | John S. Pereira, as Chapter 11 Trustee of 79 East 125th Street Realty LLC | 77-79 East 125th Street LLC, Jay Irgang, Mark Irgang and Orli Irgang | 05-02089 (RDD) |
| 8. | John S. Pereira, as Chapter 11 Trustee of 917 Eagle Avenue Realty Corp. | 917 Eagle Avenue LLC, Jay Irgang, Mark Irgang and Orli Irgang | 05-02094 (RDD) |

WHEREAS, the Trustee has also commenced the following lawsuits (each a "Mortgage Fraudulent Conveyance Action" and, collectively, the "Mortgage Fraudulent Conveyance Actions") against, *inter alia*, the Irgangs and/or Bodden. (The Real Property Fraudulent Conveyance Actions and the Mortgage Fraudulent Conveyance Actions are collectively the "Actions").

|     | PLAINTIFF | DEFENDANTS | ADV. PRO. NO. |
| --- | --- | --- | --- |
| 1. | John S. Pereira, as Chapter 11 Trustee of 18 West 129th St. Realty Corp. | 18 West 129th Street, LLC, Kennedy Funding, Inc., Bodden Funding Corp. and Migdol Realty Management LLC | 07-01541 (RDD) |
| 2. | John S. Pereira, as Chapter 11 Trustee of 121 West 122nd Street Corp. | Barry Levites, David Cantor, Baron Associates, Kennedy Funding, Inc. and Bodden Funding, Inc. | 07-01516 (RDD) |
| 3. | John S. Pereira, as Chapter 11 Trustee of 148 West 124th Street Realty Corp. | BRT Realty Trust, Kennedy Funding, Inc., Bodden Funding Corp., Jay Irgang, Mark Irgang and Orli Irgang | 07-01523 (RDD) |
| 4. | John S. Pereira, as Chapter 11 Trustee of 2278 Eighth Avenue Realty Corp. | Jack Winston Trustee, The Levites Family L.P. Uad 4/20/90, Stella Deporis BRT Realty Corp., Bodden Funding Corp., David Cantor, Baron Assoc., Zahava Schillinger Trustee Revocable Trustee Revocable Trust 5/4/99, Lois Rosenthal Retirement Accts, Inc., and West End Equities LLC as Intervenor | 05-01532 (RDD) |

|     | PLAINTIFF | DEFENDANTS | ADV. PRO. NO. |
|-----|-----------|------------|---------------|
| 5.  | John S. Pereira, as Chapter 11 Trustee of 243 East 118th St. Realty Corp. | 243 E. 118th St., LLC, Gerald Migdol, Kennedy Funding, Inc., Bodden Funding Corp. and Wells Fargo Home Mortgage, Inc. | 07-01514 (RDD) |
| 6.  | John S. Pereira, as Chapter 11 Trustee of  27 East 131st Realty Corp. | BRT Realty Trust, Kennedy Funding, Inc., Bodden Funding Corp., Jay Irgang, Mark Irgang and Orli Irgang | 07-01524 (RDD) |
| 7.  | John S. Pereira, as Chapter 11 Trustee of 65-67 East 125th Street Realty Corp. | BRT Realty Trust, Kennedy Funding, Inc., Bodden Funding Corp., Jay Irgang, Mark Irgang and Orli Irgang | 07-01520 (RDD) |
| 8.  | John S. Pereira, as Chapter 11 Trustee of 6 East 132nd Street Apartments Street Corp. | BRT Realty Trust, Kennedy Funding, Inc., Bodden Funding Corp., Jay Irgang, Mark Irgang and Orli Irgang | 07-01513 (RDD) |
| 9.  | John S. Pereira, as Chapter 11 Trustee of 79 East 125th Street Realty LLC | BRT Realty Trust, Kennedy Funding, Inc., Bodden Funding Corp., Jay Irgang, Mark Irgang and Orli Irgang | 07-01528 (RDD) |
| 10. | John S. Pereira, as Chapter 11 Trustee of 77 East 125th Street Realty LLC | BRT Realty Trust, Kennedy Funding, Inc., Bodden Funding Corp., Jay Irgang, Mark Irgang and Orli Irgang | 07-01521 (RDD) |
| 11. | John S. Pereira, as Chapter 11 Trustee of 917 Eagle Avenue Realty Corp. | Jay Irgang, Mark Irgang and Orli Irgang | 07-01548 (RDD) |

| | PLAINTIFF | DEFENDANTS | ADV. PRO. NO. |
|---|---|---|---|
| 12. | John S. Pereira as Chapter 11 Trustee of Maywood Consolidated Properties | BRT Realty Trust, Bodden Funding Corp., Osvoldo Cruz, Kenia Cruz, Irma Kaufman Living Trust and Zahava Schillinger Trustee Revocable Trust | 07-01526 (RDD) |

WHEREAS, the Parties have agreed, subject to the entry of the Approval Order (as hereinafter defined) by the Court authorizing the Trustee to enter into this Agreement, to settle and compromise any and all claims, counterclaims, causes of actions, rights and obligations that any of the Parties may have against any other Party, including but not limited to those claims which have been or could have been asserted in the Actions (collectively, the "Claims"); and

WHEREAS, the Trustee has determined, in the exercise of his business judgment, that entering into this Agreement to settle and compromise the Claims is in the best interests of the Maywood Debtors, their estates and their creditors, and will eliminate the need for continued time-consuming, costly, and protracted litigation.

## AGREEMENT

NOW, THEREFORE, in consideration for the mutual covenants and obligations set forth herein, the Parties agree as follows:

1.     Settlement Amount.  In return for the settlement of the Actions and the releases set forth herein, the Irgang Entities will pay the Trustee, for the benefit of the Maywood Debtors' estates, the total sum of fifteen million dollars ($15,000,000) (the "Settlement Amount") on or before April 15, 2008 (the "Settlement Due Date" or "Closing Date").  The Trustee shall allocate the Settlement Amount amongst the Maywood Debtors' estates on whose behalf the Real

Property Fraudulent Conveyance Actions were commenced. Such allocation shall not be binding on the Irgang Entities for their own purposes.

     2.    <u>Settlement Deposit</u>. Upon the execution of this Settlement Agreement, but in no event later than January 15, 2008, the Irgang Entities will remit to the Trustee a deposit in the amount of one million five hundred thousand dollars ($1,500,000) (the "Settlement Deposit") in immediately available funds to be credited against the Settlement Amount. The funds may be paid by either wire transfer or bank check only. The Settlement Deposit shall become absolute and nonrefundable upon Final Approval (as hereinafter defined) of the Settlement Agreement by the Court. The Settlement Deposit shall be held by the Trustee in a segregated interest bearing account. In the event that the Closing (as hereinafter defined) does not occur as a result of the Trustee failing to satisfy the Conditions to Closing set forth in paragraph 4 below, the Settlement Deposit, together with all accrued interest, shall be returned to the Irgang Entities, and this Settlement Agreement shall be null and void.

     3.    <u>Settlement Balance Due at Closing</u>. The balance of the Settlement Amount, in the sum of thirteen million five hundred thousand dollars ($13,500,000), shall be paid in immediately available funds by the Irgang Entities to the Trustee at the closing (the "Closing"), which will occur on or before the Settlement Due Date.

     4.    <u>Conditions to Closing</u>. The following are conditions to the Closing and the occurrence of the Closing Date:

     (a)    The Trustee shall have obtained, on or before March 15, 2008, an order of the Court approving this Agreement in all material respects and authorizing the Trustee to enter into this Agreement and to execute any and all documents necessary and appropriate to

implement the Agreement (the "Approval Order"), and such Approval Order shall not have been altered, modified or amended on appeal in any material respect.

(b)     As of the Closing, the Approval Order shall no longer be  subject to appeal, and nor shall it be the subject of a pending appeal (a "Final Order").  If by April 15, 2008, the Approval Order is not a Final Order, then the Trustee, in his sole and absolute discretion, upon written notice to Cole Schotz, counsel to the Irgang Entities, shall have the right to multiple extensions of the Closing Date, up to a date five (5) business days after such time as the Approval Order becomes a Final Order.  Notwithstanding that the Trustee may have exercised his right to extend the Closing Date pursuant to this paragraph 4(b), the Trustee shall still have the right, at any time before the Approval Order becomes a Final Order, but in no event before April 15, 2008, to terminate the Agreement and return the Settlement Deposit, together with accrued interest, to the Irgang Entities, in which event this Agreement shall be deemed null and void.

(c)     The Approval Order shall provide that the Irgang LLCs own 2093 Madison Ave, 6 East 132nd Street, 27 East 131st Street, 148 W. 124th Street, 65-67 East 125th Street, 77 East 125th Street and 79 East 125th Street (all in New York County) and 917 Eagle Avenue (in Bronx County) (collectively the "Eight Properties") free and clear of all claims, causes of action, rights, liens, mortgages and judgments held by: (i) any of the Maywood Debtors; (ii) any individual or entity that invested in the Maywood Debtors either through an equity investment or participation in any investor mortgage allegedly executed by a Maywood Debtor (a "Maywood Debtor Investor"); (iii) any entity, as defined in Section 101(15) of the Bankruptcy Code, that asserts any claim on behalf of any Maywood Debtor Investor; and (iv) any of the holders of the 125th Street Commercial Mortgages (as hereinafter defined and up to

the principal amount only). The Approval Order shall further provide that the claims, causes of action, rights, liens, mortgages and judgments (from which the Irgangs' title shall be free and clear as set forth in this subparagraph), shall attach to the Settlement Amount, subject to further order of the Court.

      (d)     The Approval Order shall specifically provide that the Irgang Entities' title to the Eight Properties shall be free and clear of the following known claims, causes of action, rights, liens, mortgages and judgments:

      (i)     The unpaid principal amount of the Mortgage recorded on February 24, 2003 in CRFN 2003000025594 in the New York County Clerk's Office originally in favor of Commercial Mortgage Corporation (the "Commercial Mortgage");

      (ii)     The unpaid principal amount of the Mortgages recorded on October 15, 2001 in Reel 3373, page 2282 and January 16, 2002 in Reel 3430, page 1074 in the New York County Clerk's Office originally in favor of Community Capital Bank and assigned to Parade Place, LLC by assignments of mortgage recorded on September 13, 2005 in CRFN 2005000510178 and CRFN 2005000510179 (the "Community Capital Mortgage");

      (iii)     The unpaid principal amount of the Mortgage recorded on December 3, 2001 in the New York County Clerk's Office in Reel 3401 page 327 in favor of Astoria Federal Savings & Loan Association (the "Astoria Mortgage" and, collectively with the Commercial Mortgage and the Community Capital Mortgage, the "125th Street Commercial Mortgages");

      (iv)     Any recorded claim against the Eight Properties, by way of judgment, mortgage or otherwise, of the following individuals or entities:

      (A)     Alpha Mortgage Investors;

(B)  Beta Mortgage Investors;

(C)  Deborah Winston-Levin;

(D)  Robert Levin;

(E)  The Harold Kulman Individual Retirement Account Trust and Harold Kulman, individually;

(F)  Northern Trust Bank as the Trustee of the Judith Kulman Individual Retirement Account Trust and Judith Kulman, individually;

(G)  Edwin V. Cooksey Individual Retirement Account Trust, and individually;

(H)  Allen S. Lewis Individual Retirement Account Trust and individually;

(I)  Jerome Rosenthal Individual Retirement Account and individually;

(J)  Richard Malkin;

(K)  Cynthia Malkin;

(L)  Selma Winston;

(M)  Osvaldo Cruz;

(N)  Jack Winston;

(O)  R. Harry Scott;

(P)  Kenia Cruz;

(Q)  Thomas Bohnert;

(R)  Watson Freeman; and

(S)    Marilyn Van Harkin.

(e)    The Trustee shall vacate and surrender possession of the offices located on the corner of the 27 East 131st Street property, which offices were formerly occupied by Maywood Capital and/or its related entities.

5.    Trustee's Avoiding Powers. Notwithstanding the provisions of paragraph 4 above regarding certain liens and claims that shall attach to the Settlement Amount subject to further order of the Court, nothing contained herein shall be construed to limit the Trustee's avoiding powers with respect to any lien or claim, or the Trustee's right to object to any lien or claim.

6.    Title to Properties. Upon approval of the Settlement Agreement by the Court and the payment of the Settlement Amount to the Trustee, title to the Eight Properties (which are the subject of the Real Property Fraudulent Conveyance Actions) shall be deemed vested in the Irgang LLCs, or their nominees, and shall no longer be subject to avoidance in the Maywood Bankruptcy Proceedings. Promptly after the Closing, the Trustee will (i) cancel or withdraw any and all lis pendens filed against the Eight Properties, and (ii) execute any further documentation the Irgang Entities reasonably request to confirm their vested title to the Eight Properties in accordance with the terms of this Settlement Agreement. To the extent the Irgang Entities request that the Trustee execute any further documentation to confirm their vested title to the Eight Properties, the Irgang Entities solely shall bear the costs and expenses of preparing such documents. The Irgang Entities shall be responsible for any fees or costs (including, but not limited to, recording fees or transfer taxes) in connection with the filing of any documents necessary to confirm their vested title.

7.    Payments of the 125th Street Commercial Mortgages. The Irgang Entities shall maintain and bring current all principal and interest payments due on the 125th Street

Commercial Mortgages through and including the Closing Date, and shall be responsible for the payment of all such amounts due under the 125th Street Commercial Mortgages through and including the Closing Date.  In the event there is any dispute concerning the amounts due under any of the 125th Street Commercial Mortgages, the Court shall retain jurisdiction to determine such dispute.  If any of the 125th Street Commercial Mortgages is subject to an adversary proceeding commenced by the Trustee to avoid all or part of such mortgage, the Irgang Entities shall remit the amounts they are responsible for under this paragraph through and including the Closing Date to the Trustee at Closing, which the Trustee shall hold in escrow pending further order of the Court.

8.    <u>Proceeds of the Eight Properties</u>.  Effective as of the Closing, (i) the Irgang Entities shall be entitled to retain all the rents and other proceeds and deposits generated from and/or related to the Eight Properties since the dates that they first obtained title to the Eight Properties, including the amounts that the Irgangs have held in escrow accounts during the pendency of the Real Property Fraudulent Conveyance Actions (the "Net Rent"); and (ii) the Trustee shall be entitled to retain the funds turned over by the state court receiver, and currently held by the Trustee, relating to the 917 Eagle Avenue Property (the "917 Eagle Fund").  Effective as of the Closing, (i) the Trustee and the Maywood Debtors shall waive all right, title and interest to the Net Rent and all orders of the Court requiring that the Net Rent be held in escrow or which placed any restrictions on the use thereof shall be vacated to the extent necessary to implement this paragraph, and (ii) the Irgang Entities shall waive all right, title and interest to the 917 Eagle Fund and all orders of the Court requiring that the 917 Eagle Fund be held in escrow or which placed any restrictions on the use thereof shall be vacated to the extent necessary to implement this paragraph.

9.    <u>Avoidance of the Bodden Mortgages</u>.  Effective as of the Closing, the Bodden mortgages, including any mortgage or lien from which Bodden took an assignment (collectively, the "Bodden Mortgages") that are the subject of the Mortgage Fraudulent Conveyance Actions, shall be deemed avoided by the Trustee, for purposes of the Mortgage Fraudulent Conveyance Actions and the Maywood Bankruptcy Proceedings only, and preserved by the Trustee for the benefit of the respective estate or estates on whose behalf the Trustee commenced the Mortgage Fraudulent Conveyance Actions.  Effective as of the Closing, any prior order of the Court that restricted the use of the proceeds from the sales of any of the properties owned by any of the Maywood Debtors (other than the Eight Debtors) as a result of Bodden's assertion of its rights under the Bodden Mortgages are deemed vacated, and to the extent the Bodden Mortgages attached to the proceeds of any prior sales, including, but not limited to, the sale of 3 Bridle Path, Westhampton Beach, New York ("the 3 Bridle Path Property"), those proceeds of sale are preserved for the benefit of the respective Maywood Debtor's estate.  Bodden consents to the avoidance of the its mortgage on the 3 Bridle Path Property, as sought in that certain action commenced by the trustee of the estate of Alexandra Horvath.

10.    <u>Release and Waiver of Claims</u>.  Upon the Closing, the Irgang Entities, individually and together with any and all entities related to and/or affiliated with any of the Irgang Entities, shall be deemed to have released and waived any and all claims and interests they may have, whether filed or unfiled, in the Maywood Bankruptcy Proceedings, as well as in the Chapter 7 cases of Joseph Greenblatt, Max Greenblatt and Alexandra Horvath.  This waiver of claims shall include any and all claims under the Bodden Mortgages, and any and all claims the Irgang Entities, or any entity related to and/or affiliated with any of the Irgang Entities, acquired by assignment or otherwise from any creditor or party in interest in the Maywood

Debtors' Chapter 11 cases, including, but not limited to, the claims held by the special purpose entities through whom the Bodden Entities took assignments of claims.

11.  _Default Provision._  Provided that the Conditions to Closing set forth in paragraph 4 above have been satisfied or waived, in the event the Irgang Entities fail to pay the Settlement Amount to the Trustee by the Settlement Due Date (i) the Irgang Entities waive any and all claims to the Settlement Deposit and the Trustee shall retain, as liquidated damages and without offset, the Settlement Deposit for the benefit of the Maywood Debtors' estates, and (ii) the Trustee shall proceed with a sale of the 125th Street Properties, free and clear of the Irgang Entities' claims and/or interests with respect to the those properties, provided, that the disposition of the proceeds of such sale shall be subject to the Court's determination of the Parties' respective rights and claims in the Actions.

12.  _Settlement Approval._   The Trustee shall move for Court approval of this Settlement Agreement promptly after its execution, and the Irgang Entities shall fully cooperate with the Trustee in obtaining Approval Order.  In the event that the Court has not entered the Approval Order within sixty (60) days after the execution of the Settlement Agreement, the Trustee may declare the Settlement Agreement null and void by providing notice of same to Cole Schotz, counsel to the Irgang Entities and the Trustee shall return the Settlement Deposit, together with all accrued interest, to the Irgang Entities.

13.  _Dismissal of Actions._

Upon the Closing, the Parties will execute stipulations of dismissal of the Actions, as between the Parties only, pursuant to which the Actions shall be dismissed with prejudice and without costs.

14.  _Mutual Releases._

(a)    Effective as of the Closing, the Trustee, as the Chapter 11 Trustee for the Maywood Debtors and on behalf of the Maywood Debtors' estates, fully releases and forever discharges the Irgang Entities, and their present and former owners, directors, officers, stockholders, direct and indirect members, employees, representatives, attorneys, agents, corporate parents, divisions, affiliates, subsidiaries, predecessors, transferees, successors and assigns from all claims and causes of action of whatever kind and nature, since the beginning of time, known or unknown, including, but not limited to, all of the claims the Trustee and/or the Maywood Debtors asserted, or which could have been asserted, in the Actions.

(b)    Effective as of the Closing, the Irgang Entities, and their present and former owners, directors, officers, direct and indirect members, stockholders, employees, representatives, attorneys, agents, corporate parents, divisions, affiliates, subsidiaries, predecessors, transferees, successors and assigns fully release and forever discharge the Trustee, as the Chapter 11 Trustee of the Maywood Debtors, and the Maywood Debtors, and their present and former owners, directors, officers, stockholders, direct and indirect members, employees, representatives, attorneys, agents, corporate parents, divisions, affiliates, subsidiaries, predecessors, transferees, successors and assigns from all claims and causes of action of whatever kind and nature, since the beginning of time, known or unknown, including, but not limited to, all of the claims the Irgang Entities asserted, or which could have been asserted, in the Actions.

15.    <u>Miscellaneous</u>.

(a)    This Settlement Agreement shall not be deemed an admission of liability by any Party.

(b)     The Settlement Agreement shall be construed pursuant to the laws of the State of New York.   The releases granted pursuant to this Settlement Agreement shall be governed and construed pursuant to the laws of the State of New York.   Any and all disputes arising, directly or indirectly, out of or relating to the Settlement Agreement and its terms, and all actions to enforce this Settlement Agreement and its terms shall be adjudicated in the Court, and the Parties expressly and irrevocably submit to the exclusive jurisdiction of the Court in any suit, action or proceeding, arising directly or indirectly, out of or relating to this Settlement Agreement, including but not limited to any action or proceeding by the Trustee to enforce his rights under the Settlement Agreement.

(c)     Except as otherwise provided herein, so long as this Settlement Agreement remains in full force and effect, the Parties will take appropriate action to suspend all further activities in the Actions as they pertain to the Parties only, pending dismissal thereof and full payment of the Settlement Amount.

(d)     This Settlement Agreement constitutes the entire agreement of the Parties, and may not be modified except by a writing executed by all of the Parties.

(e)     This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

(f)     The parties acknowledge effective assistance of counsel in the negotiation, drafting and execution of this Settlement Agreement, and agree that it shall not be construed for or against any Party on the basis of drafting responsibility.

(g)     The captions of each paragraph are purely for convenience, and not part of the Parties' substantive agreement.

(h)    Upon the full execution of this Agreement by all the Parties, the Trustee shall promptly file a motion, pursuant to Federal Rules of Bankruptcy Procedure Rule 9019, with notice to all creditors of the Maywood Debtors, for approval of this Settlement Agreement.

(i)    Within ten (10) days of the filing of the motion for approval of the Settlement Agreement, the Trustee shall publish a notice, in a form mutually agreed to by the Parties, in the National Edition of the New York Times, of the hearing on the approval of the settlement.  The costs of publication shall be borne equally by the Trustee and the Irgang Entities.

(j)    By the signatures below, the Parties to this Agreement acknowledge that they fully understand and accept the terms contained in this Agreement, and represent and agree that their signatures are freely, voluntarily and knowingly given, and that each has had the opportunity to consult with counsel prior to signing this Agreement.  The persons executing this Agreement hereby certify that they have authority to do so, either individually or on behalf of the Party on whose behalf they execute the Agreement, and that this Agreement is binding upon the Parties and their successors and assignees.  The Parties further acknowledge that the Trustee's execution is subject to Court approval.

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Settlement Agreement as of the 15th day of January, 2008.

/s/ John S. Pereira, Trustee

John S. Pereira, as Trustee for
the Maywood Debtors


/s/ Mark Irgang

Mark Irgang

_/s/ Jay Irgang_ \
    Jay Irgang

_/s/ Orli Irgang_ \
    Orli Irgang

2093 MADISON LLC


By: _/s/ Mark Irgang_ _____
      Name: Mark Irgang
      Title: Member


148 WEST 124TH STREET LLC


By: _/s/ Mark Irgang_ _____
      Name: Mark Irgang
      Title: Member


27 EAST 131ST STREET LLC


By: _/s/ Mark Irgang_ _____
      Name: Mark Irgang
      Title: Member


6 EAST 132ND STREET LLC


By: _/s/ Mark Irgang_ _____
      Name: Mark Irgang
      Title: Member

65-67 EAST 125TH STREET LLC


By: /s/ Mark Irgang
        Name: Mark Irgang
        Title: Member


77-79 EAST 125TH STREET LLC


By: /s/ Mark Irgang
        Name: Mark Irgang
        Title: Member


917 EAGLE AVENUE LLC


By: /s/ Mark Irgang
        Name: Mark Irgang
        Title: Member


BODDEN FUNDING CORP.


By: /s/ Mark Irgang
        Name: Mark Irgang
        Title: Vice President

1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 05-10987

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    MAYWOOD CAPITAL, INC.,

9

10         Debtor.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14              U. S. Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              February 14, 2008

19              11:33 AM

20

21    B E F O R E:

22    HON. ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25

2

1

2    Motion to Approve Compromise.

3

4    Chapter 11 Trustee's Motion Seeking Court Approval of The Sale

5    Of Trustee's Right, Title and Interest of Certain Real Property

6    and Improvements.

7

8    Motion to Approve Trustee's Settlement of Adversary Proceedings

9    Pursuant To Bankruptcy Rule 9019.

10

11   Supplemental Motion to Approve Compromise of Trustee's

12   Settlement of Certain Adversary Proceedings Pursuant to

13   Bankruptcy Rule 9019.

14

15

16

17

18

19

20

21

22

23

24   Transcribed by:  Ellen S. Kolman

25

3

1

2    A P P E A R A N C E S :

3    DREIER, LLP

4         Trustee for Maywood Capital Corporation

5         499 Park Avenue

6         New York, NY 10022

7

8    BY:    JOHN P. CAMPO, ESQ

9

10   CULLEN AND DYKMAN LLP

11        Attorneys for Maywood Capital Corporation

12        100 Quentin Roosevelt Blvd

13        Garden City, NY 11530

14

15   BY:    MATTHEW G. ROSEMAN, ESQ.

16

17   COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P. A.

18        Attorneys for Irgang Entities

19        900 Third Avenue

20        New York, NY 10022

21

22   BY:    LEO V. LEYVA, ESQ.

23        LAURENCE MAY, ESQ.

24

25

4

1

2    NUTOVIC & ASSOCIATES

3         Attorney for Parade Place, LLC

4         488 Madison Avenue

5         New York, NY 10022

6

7    BY:   ISAAC NUTOVIC, ESQ.

8

9    HAHN & HESSEN LLP

10        Attorneys for Migdol Realty

11        488 Madison Avenue

12        New York, NY 10022

13

14   BY:   EDWARD L. SCHNITZER, ESQ.

15

16   PRYOR CASHMAN LLP

17        Attorneys for RUD Development

18        410 Park Avenue

19        New York, NY 10022

20

21   BY:   RICHARD LEVY, JR. ESQ.

22

23

24

25

5

1

2    HERRICK, FEINSTEIN LLP

3          Attorneys for BRT

4          2 Park Avenue

5          New York, NY 10016

6

7    BY:   FREDERICK E. SCHMIDT, ESQ.

8

9    JORDAN B. DEFLORA

10          Attorney for Kennedy Funding, Inc.

11          2100 North Central Road

12          Fort Lee, NJ 07024

13

14    BY:   JORDAN B. DEFLORA, ESQ.

15

16    POPPE & BHOURASKAR, LLP

17          Empire State Building

18          350 Fifth Avenue

19          New York, NY 10118

20

21    BY:   WILLIAM M. POPPE, ESQ.

22

23

24

25

6

1

2    TRENK, DIPASQUALE, WEBSTER, DELLA FERA, SODONO

3        347 Mt. Pleasant Avenue

4        West Orange, NJ 07052

5

6    BY:   SAM DELLA FERA, ESQ.

7

8    HAROLD M. SOMER, P.C.

9        1025 Old Country Road

10        Westbury, NY 11590

11

12    BY:   HAROLD M. SOMER, ESQ.

13        DEBRA WOLTHER, ESQ.

14

15    STATE OF NEW JERSEY

16    DEPARTMENT OF LAW AND PUBLIC SAFETY

17        124 Halsey Street

18        Newark, NJ 07101

19

20    BY:   CHRISTOPHER W. GEROLD, Deputy Attorney General

21

22

23

24

25

7

1

2  FINKEL, GOLDSTEIN, ROSENBLOOM & NASH, LLP

3        Attorneys for Modelwire

4        26 Broadway

5        New York, NY 10004

6

7  BY:   J. TED DONOVAN, ESQ.

8

9  RACHEL S. BLUMENFELD

10       Attorney for Anyah

11       26 Court Street

12       Brooklyn, NY 11242

13

14  BY:   RACHEL S. BLUMENFELD, ESQ.

15

16  PEREIRA & SINSI, LLP

17       150 East 58th Street

18       New York, NY 10155

19

20  BY:   JOHN S. PEREIRA, ESQ.

21

22

23

24

25

8

P R O C E E D I N G S

1

2        THE COURT:  Turn to Maywood Capital.

3        MR. CAMPO:  Your Honor, we're here this morning in

4    connection with the trustee's 9019 motion to approve the

5    settlement with the Irgang Entities that resolves the eight

6    real property fraudulent conveyance actions that have been

7    commenced and actually tried to Your Honor and for which the

8    decision is currently sub judice and it resolves as well, Your

9    Honor, the Irgang Entities liability as parties to what's

10   referred to as the mortgage fraudulent conveyance actions in

11   connection with twelve adversary proceedings that are pending.

12   Your Honor, we have received -- and if I may, I'll just briefly

13   lay out what the limited objections were.  We received a

14   limited objection by Migdol Group concerning the scope of the

15   order.  They were concerned that because they are a party to

16   certain of the mortgage fraudulent conveyance actions that they

17   wanted to clarify that nothing contained in this settlement,

18   including the fact that there is an avoidance in preservation

19   of the Bodden mortgages, would be prejudicial to them in

20   connection with their status as a party to the mortgage

21   fraudulent conveyance actions.  And, Your Honor, we have no

22   issue with that language and we've added that language to the

23   order.  In addition --

24        THE COURT:  Well, can I stop you on that?

25        MR. CAMPO:  Sure.

9

1          THE COURT:  Parties' interpretation of what it means

2    when you say without prejudice is an interesting concept.

3    Judge Bernstein actually has a really good opinion on that

4    issue.  I take it that by saying you don't have a problem with

5    their agreement you're not saying that -- well, the consequence

6    of having the benefit of the Irgang's lien is what it is.

7          MR. CAMPO:  That's correct.

8          THE COURT:  And so you you're not saying that you're

9    waiving any benefit of that either?

10          MR. CAMPO:  No.  And just so we're clear, they're not

11    suggesting that we have no right to avoid and preserve the

12    Irgang's lien and that the lien hasn't been avoided and

13    preserved for the benefit of the estate.  What they're saying

14    though, Your Honor, is that because they are still a party to

15    that action, the approval as it pertains to them, and I think

16    more specifically with Migdol, the issue is as follows.  They

17    took title to the properties.  On one of the properties, I

18    believe they assert that they may have taken their title before

19    the Bodden lien, or the original Bodden lien, which was either

20    Kennedy or BRT, had been recorded against the property.  So in

21    effect what we're saying is as if they were the rightful title

22    owner to the property and then the lien was placed on the

23    property, they have their right to their defenses with respect

24    to that lien as it pertains to the continuation of the action.

25          THE COURT:  Well --

10

1        MR. CAMPO:  Not that the lien hasn't been avoid and

2   preserve.

3        THE COURT:  Or, in other words, these -- this motion

4   has nothing to do with them.

5        MR. CAMPO:  Correct.

6        THE COURT:  That's not their issues, their claims.

7   Their rights were not performing.

8        MR. CAMPO:  That's correct.  Nor is any other party

9   to any of the mortgage foreclosure actions.

10        THE COURT:  By the same token, what is before me is

11   this proposed settlement agreement and entry into that

12   settlement agreement obviously has consequences potentially for

13   creditors of the estate and those who might be in line before

14   or behind the mortgages that are getting avoided and preserved

15   for the benefit of the estate and they're not seeking to change

16   whatever those consequences are.

17        MR. CAMPO:  Absolutely.  And Migdol's lawyer is here,

18   Your Honor, and I think they can confirm that for the record.

19        MR. SCHNITZER:  Your Honor, Edward Schnitzer from

20   Hahn & Hessen on behalf of Migdol.  I can confirm that.  Our

21   concern, which has been addressed by Mr. Campo, is to the

22   extent we have any defenses against Bodden mortgages in this

23   case, that those defenses aren't changed by the fact that

24   perhaps those liens are now preserved for them and at this

25   state that we're in the same position we were yesterday as we

11

1    will be tomorrow.

2              THE COURT:  Okay.

3              MR. SCHMIDT:  Good morning, Your Honor,

4    Frederick Schmidt of Herrick, Feinstein, counsel for BRT.

5    We're in a similar fault, Your Honor, in that we were the

6    original mortgagees on those mortgages sold them to the -- to

7    Bodden.  And counsel to the trustee, who's advised beforehand

8    that he agrees that as to us, we preserve all rights to argue

9    that these mortgagers were in fact valid; that they're not

10   avoidable as to us and our defenses are preserved insofar as

11   how our lawsuit is concerned.

12             THE COURT:  Okay.

13             MR. DEFLORA:  Your Honor, again, I -- Jordan DeFlora,

14   I represent Kennedy Funding and exactly what counsel has just

15   said for BRT, I had the same conversation with Mr. Campo and

16   that is the same understanding as it relates to Kennedy

17   Funding.

18             THE COURT:  All right.  Very well.

19             MR. CAMPO:  And, Your Honor, I think that under the

20   circumstances I think that's reasonable to let them preserve

21   those rights.

22             THE COURT:  Okay.

23             MR. CAMPO:  But the avoidance is clear and it's a

24   final avoidance and preservation of the lien once the order

25   becomes final and on appeal.

12

1          THE COURT:  Right.

2          MR. CAMPO:  All right.

3          THE COURT:  Okay.

4          MR. CAMPO:  All right.  Your Honor, aside from the

5    limited objection of Migdol and the conversations that I've had

6    with BRT and Kennedy's lawyers, we received -- I received

7    from -- a phone call yesterday from the attorney for Parade

8    Place, who is the assignee of the Community Capital Mortgage,

9    which is one of the mortgages that under the terms of the

10   settlement agreement the trustee will pay from the settlement

11   amount the unpaid due and owing principal balance of that

12   mortgage as of the closing which we anticipate to be

13   somewhere -- subject, of course, to defenses as to amounts

14   somewhere in the vicinity of between 400 and 425 thousand

15   dollars.  Similarly, we paid the unpaid balance of the

16   commercial mortgage, which is the Intervest Mortgage, and we

17   pay the unpaid principal balance of the Astoria Mortgage.  The

18   Irgangs are responsible to make sure that -- and will pay at

19   the closing all accrued principal amounts that were due under

20   the terms of those mortgages up through and including the

21   closing.  And they will also be responsible to pay any and all

22   interest -- unpaid interest due on those mortgages up through

23   and including the closing.  Mr. Nutovic --

24          MR. NUTOVIC:  Yes.

25          MR. CAMPO:  Thank you.  Represents Parade Place.

13

1    Parade Place, Your Honor, is owned by Mr. Shapiro.

2         MR. NUTOVIC:  Hope that doesn't prejudice Your Honor.

3         THE COURT:  Seems like a nice fellow.

4         MR. CAMPO:  And Mr. Nutovic has asked that I confirm,

5    and I will confirm on the record, that there will be sufficient

6    funds from the allocation of the proceeds to pay the lia -- to

7    pay the amount of the Community Capital now assigned to Parade

8    Place Mortgage and I will confirm that on the record.  I have

9    told Mr. Nutovic then there is no promise at this point that he

10   will be paid at closing because there are issues that we need

11   to resolve in terms of fixing the principal amount, part of

12   which results from the fact that there is a portion of that

13   mortgage which was a second piece of that mortgage which was a

14   construction loan and not all of the monies under that

15   construction loan were advanced.  So there was a mortgage taken

16   out for 140 thousand dollars but it's clear that was never --

17   it was never fully advanced.  So we need to resolve that.  And

18   my understanding, Your Honor, is that there is an issue between

19   Mr. Nutovic and, I guess, the Irgang group at this point

20   because there is not an agreement on what the amount of the

21   interest -- unpaid interest would be on that mortgage.

22   Mr. Nutovic has asserted that the unpaid interest is in excess

23   of 200 thousand dollars.  We've not looked at that, Your Honor,

24   but the bottom line is that whatever is outstanding on that

25   interest amount the Irgangs will pay at the closing or if there

14

1    is insufficient -- I'm sorry, if there's an inability to agree

2    with Mr. Nutovic with respect to what the amount of that unpaid

3    interest is then the Irgangs have agreed that they'll escrow

4    that amount of money with the trustee for Your Honor to then

5    determine, if need be at a subsequent proceeding, any dispute

6    that may exist between the two sides on that issue.  And it's

7    my understanding that the dispute pertains primarily to the

8    fact that there is some default interest that's been included

9    in the calculation.

10            THE COURT:  Okay.

11            MR. NUTOVIC:  Your Honor, if I may be heard briefly.

12   I think Mr. Campo has articulated two of the issues that are

13   significant to me.  One is the settlement agreement provides

14   that Mr. Campo is going to be allocating out of the 15 million

15   dollars indeterminate amounts amongst each debtor.  Presently,

16   we have a mortgage on property that is --

17            THE COURT:  Right.  But this solution resolves your

18   rights under 363(f) because he's saying there will be enough --

19   he's committing that there will be enough to pay the estate's

20   portion of the liability under the settlement agreement to your

21   client in full.

22            MR. NUTOVIC:  Well, Your Honor, that's where I don't

23   want to get whipsawed between two parties.  Right now, I

24   vote -- my client's calculation is roughly 700 thousand dollar

25   mortgage against property that's worth 2.5 million.  If there's

15

1    some dispute with the Irgangs and we can't collect from the

2    Irgangs, for whatever reason, I don't know, that should not

3    release the trustee from liability.  So it's up to the trustee

4    to ensure that the Irgangs live up to the settlement agreement

5    and he has to just --

6                THE COURT:  Well, of course.  This -- he doesn't have

7    an independent obligation to pay but he has an obligation to

8    enforce the settlement agreement.

9                MR. NUTOVIC:  And he has an independent obligation to

10   ensure that my payment -- that my client's mortgage is paid in

11   full, whatever that amount is allowed to be.  As of right now,

12   that's a claim on real estate, that lien is going to be

13   released and in exchange for that, because that's what the

14   Irgangs are requiring, we have to have one address to get our

15   money from.  And as long as it's very clear that the trustee

16   cannot go -- come to my client and say we have to get the money

17   from Irgang, I won't have a problem.

18               THE COURT:  Well, he --

19               MR. NUTOVIC:  I think the trustee is --

20               THE COURT:  -- well, let me be clear.  As I

21   understand it, the trustee's obligation would be to enforce the

22   settlement agreement in respect of what the Irgangs would owe

23   to your client.

24               MR. NUTOVIC:  And if it's not in -- my client should

25   not be held responsible for any delays in the trustee doing

16

1    that.  Once my client has fixed the amount held by the trustee

2    out of his 15 million dollars, should be paid to my client.

3    And if for some reason the Irgangs tying him up on other

4    offsets and settlement or anything like that --

5            THE COURT:  There's no offset here.  There's no

6    offset, there's no settlement.  It's a new obligation that they

7    would have to pay under the settlement agreement.

8            MR. LEYVA:  So -- so, may I, Your Honor?

9            THE COURT:  Yes.

10            MR. LEYVA:  Leo Leyva for the Irgang Entities.  We

11    are committed to one thing; to closing this transaction.  And I

12    assure you -- and one of the things -- the important things

13    that Mr. Campo says we are looking for the Court to maintain

14    jurisdiction over this issue because we do believe that the

15    number that was just thrown out by counsel is a ridiculous

16    number and we will be back here to have that number fixed

17    because again, we believe what is now transpiring here is an

18    attempt by counsel's client to now put the strong arm and try

19    to squeeze money out of the Irgangs or the trustees.  So we

20    will fix the number; we'll be back, Judge, and we will be ready

21    at closing to pay whatever amounts are rightfully due.  So

22    there's no question on our part in terms of fulfilling our

23    obligations on the settlement agreements.

24            THE COURT:  Okay.

25            MR. NUTOVIC:  Your Honor, all I'm saying is I don't

17

1    think the settlement should have any impact on my client's

2    rights to collect funds from the trustee.  Right now the

3    trustee's the debtor, or representing the debtor, and if the

4    trustee is not going to be responsible for that there has to be

5    some reason that he can exculpate himself from that

6    responsibility.  If the Irgangs are secondarily backstopping

7    his obligation to pay my client to the tune of interest, or

8    whatever the amount is, that's his affair.  But I don't want to

9    be in a position, post-settlement, with being worried with it,

10   that I never objected to a release of the trustee of the Irgang

11   or whatever the Irgang payment amount is.  And I just want to

12   state for the record that no matter what the Irgang --

13          THE COURT:  Well, is the amount of this debt an

14   issue?

15          MR. CAMPO:  The principal amount of the debt, Your

16   Honor, as we can determine it so far on the first piece of the

17   mortgage, which is 360 thousand dollars, is not at issue.

18   There's two components to this 500 thousand dollar mortgage.

19   There was a 360 thousand dollar mortgage and there was a 140

20   thousand dollar construction mortgage.  And, Your Honor, I

21   believe the settlement agreement spells out the two components

22   of the mortgage.

23          THE COURT:  Well, but as I understood it, what you

24   said is that as far as the trustee's portion of the settlement

25   agreement that he's committing to pay at closing there is one

18

1    component that may be an issue which is a portion of the

2    secured debt, not the lien, but a portion of secured debt may

3    never have been advanced and so therefore there may not be a

4    debt owing beyond the amount that you -- that was advanced.

5         MR. CAMPO:  That's correct.  And, in fact, I believe

6    Mr. Nutovic would acknowledge that a portion of the second --

7    the mortgage construction loan was never advanced because when

8    they sought to foreclose it in 2004 they asserted in their

9    foreclosure action that the amount owing on that mortgage was

10   ninety-five thousand dollars, which we believe is the seventy

11   that was advanced plus accrued interest and other charges.

12        THE COURT:  And is there a dispute?  I gather it is

13   over the accrued interest amount which is the amount of the

14   settlement agreement that the Irgangs are responsible for

15   paying?

16        MR. MAY:  Yes, because --

17        MR. CAMPO:  My understanding is that there is, but

18   I'll let Mr. May speak.

19        MR. MAY:  Yes, Your Honor.  I mean, we haven't -- we

20   have never received an exact interest calculation but it's our

21   understanding that included within the interest component is

22   default interest which is an issue with us because if during

23   the course of the case we tendered interest and principal in a

24   timely fashion, the tender was rejected.  So that raises the

25   question in our mind as to whether it's appropriate for default

19

1    interest to be added to the interest component.

2             MR. NUTOVIC:  Your Honor, we know nothing about the

3    standard because apparently it was allegedly tethered to

4    Community Bank, which was the foreclosing entity at the time my

5    client purchased after the foreclosure was instituted.  But

6    we --

7             THE COURT:  Did they give anyone notice of that?

8             MR. NUTOVIC:  I beg your pardon?

9             THE COURT:  Did they give anyone notice of that

10   purchase?

11            MR. NUTOVIC:  Your Honor, I'm just newly in this

12   case.  I don't know -- I can't tell you off the top of my head,

13   but it's in the trustee's papers.

14            THE COURT:  Right.

15            MR. NUTOVIC:  Okay.

16            THE COURT:  Now, is the lien of this entity -- what

17   was it --

18            MR. NUTOVIC:  Parade Place.

19            MR. CAMPO:  It's Community Capital.  It's Parade

20   Place --

21            MR. NUTOVIC:  Community Capital/Parade Place.

22            MR. CAMPO:  -- as assignee -- as assignee of

23   Community Capital.

24            THE COURT:  In respect of the interest obligation --

25   the accrued interest obligation that the Irgangs have, will the

20

1  lien still be attached to the property in respect to the

2  interest obligation?

3          MR. CAMPO:  Well, Your Honor, it would if the Irgangs

4  fail to pay the interest at the time of the closing.  So

5  they've agreed that they'll pay the interest.  I think what the

6  Irgangs at least asked me for and I think this is what

7  Mr. Leyva --

8          THE COURT:  I don't see why -- if that's the case,

9  then I don't understand Mr. Nutovic's objection.

10          MR. CAMPO:  Except, Your Honor, I would just -- let

11  me clarify.  What I think -- the Irgangs acknowledge that

12  they're entitled -- that they have to pay the accrued interest.

13  They only wanted to reserve their right to have this Court

14  determine if it's necessary to determine a dispute that might

15  exist between Parade and them on the mortgage amount.

16          THE COURT:  Okay.

17          MR. CAMPO:  I don't -- and I don't want to misspeak

18  for -- I don't want to speak for the Irgangs on this but my

19  understanding is, is that the way they'll confirm that title is

20  free and clear of the lien not only for the due principal but

21  for the interest is by --

22          THE COURT:  Is by putting the money up at the

23  closing --

24          THE COURT:  -- putting the money up at the closing

25  into a lateral account or an escrow account.

21

1      MR. CAMPO:  Correct.

2      MR. MAY:  Or what I would hope would be more likely

3  is if we can't resolve it to bring an application to this Court

4  and get it resolved pre-closing.

5      THE COURT:  I just want to make sure -- that's fine,

6  but the key thing is that there will be an interest of

7  Community/Parade in an account pending resolution of that

8  dispute.

9      MR. CAMPO:  Yeah.

10      THE COURT:  Okay.

11      MR. NUTOVIC:  And, Your Honor, as long as it's in the

12  amount that my client is claiming, we won't have a problem.

13      THE COURT:  Yeah.  No, that's what's been said.

14  Okay.  All right.  So there's no problem there.

15      MR. CAMPO:  Yes.  It's not that they weren't willing

16  to escrow the full amount of the assert --

17      THE COURT:  All right.  So I -- so 363(f) you'll have

18  to satisfy, then?

19      MR. CAMPO:  Absolutely, Your Honor.

20      THE COURT:  Okay.

21      MR. NUTOVIC:  Your Honor, and the only other issue

22  that I have is a similar issue that -- to what has been --

23      THE COURT:  And by the way, the trustee has to do

24  nothing more in respect to the dispute between the Irgangs and

25  Mr. Nutovic than to give Mr. Nutovic's client the right to

22

1    enforce the agreement on that point.

2         MR. CAMPO:  Absolutely, Your Honor.  We -- and -- we

3    could clarify this now, too, Your Honor.  It isn't necessary --

4    I mean, we offered to hold the money pending that dispute if

5    there is one.

6         THE COURT:  You don't need to.

7         MR. CAMPO:  We really don't need to.

8         THE COURT:  As long as they put it up, you don't need

9    to.

10        MR. CAMPO:  Right.

11        MR. NUTOVIC:  Well, where we would put it up, Your

12   Honor?  That's the --

13        THE COURT:  In an account that they've agreed that

14   this Court can preside over.

15        MR. NUTOVIC:  Which would be a court escrow account?

16        THE COURT:  Well, in a court that -- where there's

17   jurisdiction of this Court over the money and who gets it.

18        MR. NUTOVIC:  Your Honor, I --

19        THE COURT:  They're present in New York.  I can

20   enforce an order against them and they're agreed the

21   jurisdiction over them.

22        MR. NUTOVIC:  All right.  Your Honor --

23        THE COURT:  It doesn't have to be an escrow account

24   in the court.

25        MR. NUTOVIC:  Okay, Your Honor, it's a mechanism that

23

1    presumably we can work out.  I just don't want this settlement

2    agreement to go through with any suggestion that my client has

3    waived its rights --

4              THE COURT:  There's no suggestion of that.

5              MR. NUTOVIC:  -- or claims that the claimant has

6    against the trustee.  If there is a --

7              THE COURT:  No, there is a suggestion -- no, I'm --

8    I've said this four times.  Your client is not going to

9    preserve a claim against a trustee in respect of the amounts

10   that the Irgangs have said they will pay.  Instead, your client

11   is going to get an interest preserved in an account subject to

12   the jurisdiction of this Court.  That's their replacement

13   collateral, which is perfectly appropriate under 363(f).  And

14   the trustee will have no obligation in respect of that portion

15   of your client's claims except not to thwart your client's

16   rights to enforce the Irgang's agreement.

17             MR. NUTOVIC:  Your Honor, I think the only thing that

18   remains is the mechanism of ensuring that that takes place by

19   the settlement -- by the closing date.

20             THE COURT:  That's part of -- that's what's been said

21   on the record.  It's going to be set up by the closing date.

22             MR. NUTOVIC:  I guess what we will do is we'll send

23   the trustee our payoff letter for that amount and he will have

24   to ensure that that amount is paid up -- or escrowed at

25   closing.

24

1    THE COURT:  He and the Irgangs.  Yes.

2    MR. CAMPO:  We will, Your Honor, and I will just make

3    sure that I could just ask Mr. Nutovic to make sure that he,

4    when he prepares that payoff amount, which should be pretty

5    easy to do at this point, that he break down how much of it

6    is -- how much of it is accrued but unpaid principal, how much

7    of it is principal that is due -- that has not yet come due and

8    how much of it is accrued and unpaid interest.

9    THE COURT:  Right.

10   MR. CAMPO:  And if he could also, Your Honor, if I

11   may, for the benefit of all the parties, could I also impose

12   upon him to include any additional breakdown with respect to

13   legal fees, with respect to the foreclosure action and

14   obviously, Your Honor, with respect to the interest, a

15   breakdown of how much of it is contract versus how much of it

16   is default.

17   MR. NUTOVIC:  Well, Your Honor, again, I want to just

18   point out one other thing.  My client's position is that the

19   mortgage was accelerated as fully due --

20   THE COURT:  That's fine.

21   MR. NUTOVIC:  Right.  Mr. Campo asked me to break

22   down how much principal is due, and I think it was equally

23   required of the Irgangs to make principal payments to the

24   closing as it would have been if the notes were reinstated.

25   And I don't know that if that's going to be so easy for me to

25

1    do.  But we will cooperate with the trustee.  We have no

2    interest in not getting this resolved.

3                THE COURT:  You should make the good faith effort to

4    do that.  You can certainly do it under a reservation of

5    rights.

6                MR. NUTOVIC:  Yes.

7                MR. CAMPO:  Yes.  Because, Your Honor, obviously, the

8    estate is only responsible to pay for the interest --

9                THE COURT:  I understand that.

10               MR. CAMPO:  -- that would have been derived from it.

11   So that's all.  He needs to do that.

12               THE COURT:  You could do it on a reservation of

13   rights but you should break it out as requested.

14               MR. NUTOVIC:  We'll do what we can, Your Honor.  The

15   last issue has to do with third-party releases which I, you

16   know, I know other people have --

17               THE COURT:  Well, I think Mr. Campo's going to get

18   into that.

19               MR. CAMPO:  I am, Your Honor.

20               MR. NUTOVIC:  And, Your Honor, this relates to

21   Mr. Campo's assertion that he believes that some portion of the

22   mortgage payments may have belonged to other parties other than

23   the debtor, and that because of that our mortgage amount may be

24   not fully enforceable.  And to the extent any of the Irgangs

25   were involved in any of that, we don't want to be in a position

26

1    of waiving our rights against Irgang.

2              THE COURT:  Right.

3              MR. CAMPO:  Well.

4              THE COURT:  Let -- why don't you turn to the third-

5    party release issue?

6              MR. CAMPO:  Why don't I -- I will, Your Honor.  Your

7    Honor, I think -- and we've had, this morning, a significant

8    amount of discussion with the Irgangs over this third-party

9    release issue and I think I'm happy to say, Your Honor, that at

10   this point the Irgangs have agreed that we're not -- we're

11   moving away from the form of the order that they had -- that

12   had anything that implied that there was a third-party release

13   here.  The Irgang -- the order that's going -- that we're going

14   to present, Your Honor, assuming Your Honor approves the

15   settlement, is going to be the form of order that the trustee

16   prepared and sent down to the Court last evening.

17             THE COURT:  Okay.

18             MR. CAMPO:  Although there will be some modifications

19   to it.  And I will specifically tell the Court what provisions

20   of the original Irgang proposed order will go into that -- into

21   a revamped trustee's order, and the rest of our order will

22   remain exactly the same.

23             THE COURT:  Okay.

24             MR. CAMPO:  First, Your Honor, we have agreed that

25   there's a paragraph number 9 in the Irgang's proposed order

27

1    which simply clarifies that the Irgangs don't have any

2    successor liability with respect to the claims which are --

3    that they are requiring their title free and clear of.

4              THE COURT:  The free and clear claims?

5              MR. CAMPO:  Yes.

6              THE COURT:  Right.

7              MR. CAMPO:  And, Your Honor, while it wasn't in the

8    settlement agreement, we have no problem with that.  We think

9    it's appropriate to give the Irgangs that.  Nobody is

10   suggesting that they should have successor liability for any of

11   the claims of the debtor.  Or have successor liability to the

12   estate.

13             THE COURT:  In respect to the free and clear --

14             MR. CAMPO:  In respect to the free and clear claims.

15             THE COURT:  Okay.

16             MR. CAMPO:  That's correct.

17             THE COURT:  All right.

18             MR. CAMPO:  Because those claims are simply going to

19   attach to the settlement fund.

20             THE COURT:  All right.

21             MR. CAMPO:  The second provision of the Irgang's

22   order that they have asked us to include in our order, and

23   which we have no problem but we want to bring it to the Court's

24   attention to make sure Your Honor has no problem with it, is

25   paragraph 10 of their proposed order but slightly modified.

28

1    Paragraph 10, Your Honor, effectively clarifies, or the way

2    we've agreed to the language, is that the Irgang's Entities'

3    title to the eight properties will be free and clear of the

4    claims as defined.  And that the order is and shall be binding

5    upon and govern the acts of entities of governmental filing

6    agents, recorders of deeds and mortgages, administrative

7    agencies, federal and state local officials who may be

8    required, by operation of law or otherwise to accept, file, or

9    register or otherwise record or release any documents or

10   instruments to effectuate the -- the clear title that the

11   Irgangs are effectively securing by virtue of the settlement.

12            We have no problem with that, Your Honor.  As a

13   matter of the Court's ability to -- in an effort to promulgate

14   such a provision in the order, the only thing that I would say

15   is that there were no federal agencies, or the like, who were

16   served with the trustee's motion.  And that's the only issue.

17            THE COURT:  But this language is quite customary

18   and --

19            MR. CAMPO:  It's quite customary in a 363 order.

20            THE COURT:   -- in connection with transfers free and

21   clear.

22            MR. CAMPO:  Absolutely.  Although this is not really

23   technically a 363 sale, but --

24            THE COURT:  Well, but it is a transfer free and

25   clear.

29

1          MR. CAMPO:  Correct.

2          THE COURT:  And I'm comfortable with it too.

3          MR. CAMPO:  Okay.

4          THE COURT:  It's clear to me, and certainly the

5  objections to -- that were filed to the motion, the limited

6  objections raise the issue, and this is consistent with their

7  view that the Irgangs are entitled to get the properties free

8  and clear to the extent paragraph 4 of C says they're getting

9  them free and clear of the settlement agreement.  And when you

10  get property free and clear like that you're entitled to get a

11  direction from the Court to the transfer authorities to

12  recognize the transfer.

13          MR. CAMPO:  Correct.

14          THE COURT:  So I'm comfortable with that and I

15  believe that the governmental agencies who've filed limited

16  objections would also be comfortable with it because they

17  acknowledge that the free and clear aspect of the settlement

18  agreement was not a problem.

19          MR. CAMPO:  Right.  But what, Your Honor, just so I'm

20  clear, we're talking about -- you're referring to the

21  governmental agency as the Bureau of Security.

22          THE COURT:  I understand.

23          MR. CAMPO:  I'm really referring to the county

24  recording offices and the like.

25          THE COURT:  But that's --

30

1      MR. CAMPO:  I agree with you, Your Honor.  You have

2  the authority to do that in any event.

3      THE COURT:  Okay.

4      MR. CAMPO:  Okay.  The next provision of the Irgang

5  proposed order, from which differs from our order and which was

6  set forth in detail in the letter that we sent to the Court

7  yesterday, deals with the identity of specific liens,

8  mortgages, judgments, assignments, lis pendens, financing

9  statements of the like, it was in the Irgang's proposed

10  paragraph 12, Your Honor.  Now, as I said in my letter

11  yesterday, Your Honor, we had sort of a belt and suspenders

12  provision in our order.  The one belt and suspenders was that

13  they get -- it's clear that they get it free and clear of

14  Maywood investor claims, Maywood debtors' claims, any entity

15  that could usurp a claim on behalf of a Maywood investor and,

16  of course, the three commercial mortgages.

17      The language that they added in their paragraph 12,

18  which has approximately fifty-five subparagraphs to, includes

19  certain assignments and leases which we believe were

20  encompassed in the language of our order but if it's of comfort

21  to the Irgangs to specifically set them forth in the order and

22  to their title company, more specifically, we have no problem

23  with going back now and giving them the specific language that

24  they've asked for by adding that, in effect, to our paragraph

25  4.

31

1          THE COURT:  So I guess the issue --

2          MR. CAMPO:  Sorry, Your Honor, our paragraph -- I

3    apologize, our paragraph 8.

4          THE COURT:  -- so the issue your letter raised was

5    one of due diligence.  Whether you were comfortable that these

6    specific references here in the fifty or so subparagraphs were

7    ones that would truly fit within your catchall.

8          MR. CAMPO:  Right.

9          THE COURT:  And are you -- is the trustee now

10   comfortable that they would?

11         MR. CAMPO:  Well, we're comfortable, Your Honor,

12   having gone through it in some detail this morning while we

13   were waiting to come before the Court, that a significant

14   number of them do fit within it.  Subject to seeing the title

15   report that they've shown us to confirm that the CFRN numbers

16   or the libers and page numbers are, we're comfortable that they

17   are indeed -- for example, a lot of them -- like there's --

18         THE COURT:  Well, do you want to put that condition

19   in here, then, subject to confirmation of a title report?

20         MR. CAMPO:  Subject to confirmation of the title

21   report, Your Honor, we are going to add certain of these but

22   there are some of these, Your Honor, which we are certain do

23   not belong in here and they're not going to go into our order

24   and I'll -- if you want, I'll tell the Court which --

25         THE COURT:  No.  As long as you have agreement on it

32

1    that's fine.

2            MR. CAMPO:  We have an agreement with the Irgangs as

3    to which ones will go in subject to verification of the title

4    report.  We have an agreement with the Irgangs as to which ones

5    are clearly not coming in because they do not fit the

6    categories of a settlement agreement.

7            THE COURT:  All right.  So you're going to revise the

8    paragraph, then, to pick up those distinctions?

9            MR. CAMPO:  We will.

10           THE COURT:  Okay.

11           MR. CAMPO:  And we will only include those which we

12   are very comfortable with are clearly investor claims.

13           THE COURT:  Okay.

14           MR. CAMPO:  Or relate to the three commercial

15   mortgages, for example an assignment of leases.

16           THE COURT:  Right.

17           MR. CAMPO:  Okay.  The next and last provision of the

18   Irgang order which we have agreed that we'll incorporate,

19   although we didn't think it was necessary, was because the

20   settlement agreement specifically provides that upon the

21   closing we'll execute stipulations of dismissal, is that we

22   will modify their paragraph 13 and put in a provision that says

23   that upon -- not that the real property fraudulent conveyance

24   actions will be dismissed upon closing but that upon closing

25   stipulations of dismissal will be executed to dismiss those

33

1    actions.

2            THE COURT:  I would do that anyway.  I couldn't -- I

3    would need a separate piece of paper dismissing that.

4            MR. CAMPO:  Correct.  We know that, Your Honor.

5    So -- but we will put a provision in our order that clarifies

6    that upon closing we'll execute those stipulations of

7    dismissal.  Which will only dismiss the Irgang -- well, it will

8    dismiss the --

9            THE COURT:  Right.  They'll report them as defendants

10   and ones where there are multiple defendants --

11           MR. CAMPO:  Correct.  And it will dismiss the ones

12   that involve the real property fraudulent conveyance actions.

13           THE COURT:  Okay.

14           MR. CAMPO:  Okay.  And that, Your Honor, is the

15   extent of the changes that will come into the trustee's

16   proposed order that we'll submit to the Court hopefully either

17   later this afternoon or certainly by tomorrow.

18           THE COURT:  Okay.

19           MR. CAMPO:  Okay.  Now, Your Honor, there was one

20   other objection that was raised.  It was the limited objection

21   by the New Jersey Bureau of Securities which also went to the

22   issue of third-party releases.  And it's -- and the Irgangs

23   have agreed that they acknowledge that this settlement does

24   not -- is without prejudice to any rights or claims that the

25   bureau -- that the New Jersey Bureau of Securities has with

34

1    respect to enforcing any claims that they may have as against

2    the Irgang entities.  So I believe that limited objection is

3    resolved.

4                THE COURT:  Okay.

5                MR. GEROLD:  Your Honor, if I may.  The New Jersey

6    Bureau of Securities, who've stated in this court before that

7    we don't bring actions on behalf of Maywood or investors in

8    general, independent claims brought by the bureau chief in his

9    regulatory capacity and the representations made by Mr. Campo

10   and as was just stated to the Court, that none of those rights

11   would be affected by the settlement agreement and I would like

12   to make it, or if it is clear now that I've stated it, that

13   those rights are now being impacted by the settlement agreement

14   for the order that will be entered.

15               THE COURT:  Okay.  Well, there was no third-party

16   release in the trustee's order and there still isn't.

17               MR. GEROLD:  Okay.  That's fine, Your Honor.

18               MR. CAMPO:  Actually, Your Honor, I was hoping that

19   Mr. Gerold would -- I believe he's seen my order and my

20   understanding was he had no problem with it.

21               MR. GEROLD:  So long as the interpretation of that

22   order excludes the bureau because there has been --

23               THE COURT:  Let me -- they're getting this free and

24   clear.  They're getting the properties free and clear and I

25   didn't read the bureau to be objecting to that.

35

1      MR. GEROLD:  There was a limited objection not to

2  object --

3            THE COURT:  The Irgang people -- the entities.

4            MR. GEROLD:  The entities or the people.

5            THE COURT:  All right.  And that's -- and I believe

6  that the record's clear that there's no such third-party

7  release.  The properties, as contemplated by 4 -- 4(c) of the

8  settlement are free and clear.

9            MR. GEROLD:  Your Honor, to the extent that the

10  bureau may obtain a judgment in the future --

11            THE COURT:  Well, that's different.  If you get a

12  judgment you can always go against whatever your defendant --

13  whatever property they have.

14            MR. GEROLD:  Thank you.

15            MR. MAY:  I think that's correct, Your Honor.  What

16  we wanted to clarify in both for counsel and for the record is

17  that as we understand the New Jersey bureau's claims; it's

18  permitted to proceed with those claims notwithstanding this

19  order, but we didn't understand them to be making a claim that

20  they somehow have the right to title to these properties.  They

21  have a right to a claim, but that particular issue is not part

22  of what they're seeking to preserve.

23            THE COURT:  Right.  That's right, sir.

24            MR. GEROLD:  That's right.

25            THE COURT:  Okay.

36

MR. CAMPO:  Your Honor, I think we've now -- at least we've resolved the issues concerning the order, we've resolved the issues concerning the limited objections.  I would -- Your Honor's fully familiar with this case and I don't think it's necessary to proffer.  If you would like me to proffer Mr. Pereria's testimony --

THE COURT:  Well, I had the benefit of an entire trial.

MR. CAMPO:  I understand that, Your Honor, so I think --

THE COURT:  Let me hear if there's anyone else who wants to speak about the motion.

MR. LEVY:  Your Honor, I have just one small issue to raise.

THE COURT:  Then, again, this on behalf of BRT?

MR. LEVY:  No, Your Honor, I'm Richard Levy on behalf RUD Development which is --

THE COURT:  I'm sorry, which --

MR. GEROLD:  RUD Development.

THE COURT:  Oh, of course.

MR. LEVY:  Your Honor will recall that RUD was the --

THE COURT:  Can we turn to this --

MR. LEVY:  This relates to that.

THE COURT:  This relates to the settlement?

MR. LEVY:  It relates to the settlement.

37

1          THE COURT:  As opposed to the separate relief that

2   they've sought in their supplementary --

3          MR. LEVY:  No.  It does relate to the settlement.

4          THE COURT:  Okay.  Fine.

5          MR. LEVY:  Your Honor will recall that as a result of

6   the auction process held in this court on December 21st, this

7   settlement emerged and supplanted the trustee's proposal to

8   proceed with a contracted sale to RUD Development for the three

9   properties at an accumulated price of 8.8 million dollars.

10         THE COURT:  Right.

11         MR. LEVY:  Which called for a two percent breakup

12  fee.  That two percent breakup fee is now contemplated to be

13  included in -- is in the settlement order and is contemplated

14  to be paid at closing.  At the tail end of the hearing on

15  December 21st, Your Honor, we had an exchange on the record

16  where I advised the Court that the RUD contract had a drop-dead

17  date of January 15th to close.  We agreed to extend that date,

18  at Mr. Campo's request, to April 30th and to remain in place as

19  the standby purchaser, if you will, in case this settlement

20  doesn't close.

21         What I'm rising to confirm, Your Honor, is the

22  understanding that my clients have, when we were here on

23  December 21st, is that this settlement closes by April 15th; we

24  agree to stay in place until April 30th.  In the event that

25  this settlement doesn't close, there's a closing on the sale to

38

1    us following an April 15th drop-dead date.  I'm not sure that

2    that's been made clear yet today, but that was surely the

3    understanding that I thought we were proceeding with on

4    December 21st.

5                MR. CAMPO:  Your Honor, I can't disagree with

6    Mr. Levy's interpretation of that; that is what we had agreed

7    to.  And in particular now, Your Honor, since assuming Your

8    Honor's going to approve the settlement at that point and since

9    there are no controversies throughout the hearing, that order

10   should become final and unappealable within ten days after its

11   entry.  At that point we are going to--

12               THE COURT:  Well, I had one issue with what Mr. Levy

13   said, and maybe I just heard it wrong.  Normally, when you have

14   a backup bidder the bidder, obviously, can walk at the date

15   that they've agreed with you that they can walk.  But normally

16   it's in the trustee's discretion whether to close with a backup

17   bidder or not.  Usually they do because -- they do close

18   because the trustee generally wants to do that, but I don't

19   know whether there was anything more that Mr. Levy was

20   suggesting, i.e., does the trustee have to close on the 15th?

21               MR. CAMPO:  Right.  And, Your Honor, I guess what I'm

22   miss --

23               THE COURT:  On the 30th, excuse me, before the 30th.

24               MR. CAMPO:  -- maybe overstated my statement about

25   agreeing with Mr. Levy.  There is not question that we

39

1   acknowledge that Mr. Levy's the backup bidder.  There's no

2   question that Mr. Levy is staying in until the 30th to remain

3   as the backup bidder.  There's no obligation by the trustee,

4   under this order, to close with Mr. Levy but if we didn't close

5   with Mr. Levy we'd have to give him his stalking horse then.

6           THE COURT:  Okay.

7           MR. LEVY:  And, Your Honor, I had spoken with

8   Mr. Campo, prior to this hearing, that on the assumption that

9   the trustee would intend to close with RUD Development in the

10  event of a failed closing here that the one procedural item

11  that would need -- on the loop that would need to be closed is

12  approval of the RUD contract at a hearing before Your Honor

13  where we could demonstrate our bona fides for good faith

14  findings because that would be a condition proceeding,

15  obviously, to our closing.

16          THE COURT:  Right.

17          MR. LEVY:  And I'm wondering, Your Honor, two things.

18  One, should we set a holding date in order to do that to make

19  sense to me, and I think Mr. Campo had agreed in our exchange

20  that that did make sense.  Two, I'm a little concerned that the

21  language of the settlement agreement and its conditions to

22  closing seems to allow the trustee the ability, if this order

23  isn't final by April 15th, to extend closing date some --

24          THE COURT:  No, but that's fine.  I mean at that

25  point, as Mr. Campo says, he's paid for that -- he's paid you

40

1    all for that -- yeah, with breakup fee.

2            MR. CAMPO:  That's correct, Your Honor.

3            THE COURT:  So I could give you a holding date of

4    Monday, the 28th of April.

5            MR. MAY:  Your Honor, I just want to raise one issue

6    in light of what Mr. Levy said and this is, I guess, a little

7    bit of a concern on our part.  One of the requirements for us

8    to close is that an order be final and unappealable and the

9    trustee has the right to extend that in his option.  There

10   aren't any objections, as we stand here now, to this

11   application which I believe have not been resolved.  So in my

12   view, I don't think anyone has standing to file an appeal, but

13   that's just my own personal view.

14           THE COURT:  You're probably right.

15           MR. MAY:  Okay.

16           THE COURT:  Assuming the order is consistent with

17   what's going on in the records.

18           MR. MAY:  As long as Mr. Levy confirms that I'm

19   right, I'm happy.  Because I don't want the situation here to

20   end up with somehow an appeal is filed by his client and --

21           THE COURT:  No, he wouldn't do that.  Well, he might

22   as well confirm that right now.

23           MR. LEVY:  Your Honor, we have no interest in -- we

24   have, obviously, the right to buy the property but we've

25   allowed this process to go on and didn't contest the process

41

1    thus far.

2           THE COURT:  Mr. May's a very careful lawyer.  So --

3           MR. LEVY:  I feel much better, Your Honor.

4           THE COURT:  Okay.

5           MR. LEVY:  Monday the 28th, Your Honor?

6           THE COURT:  Yeah.  And, again, that's just a holding

7    date.

8           MR. LEVY:  Is there a place or time for that, Your

9    Honor?

10          THE COURT:  Ten o'clock.

11          MR. LEVY:  Thank you, Your Honor.

12          MR. CAMPO:  I, for one, wouldn't want to be here if

13   he was to file, Your Honor.

14          MR. LEVY:  Thank you, Your Honor.

15          THE COURT:  Okay.  All right, does anyone else have

16   anything to say on the motion?  Okay.  As I noted a few minutes

17   ago, this is one of the rare -- some of the motions where the

18   Court is actually going through not only some preliminary

19   stages in the litigation but a full trial and considerable

20   briefing, although not complete briefing with posttrial

21   submissions.  In light of that, and, obviously, I have a good

22   sense of the merits of the litigation and the defenses and

23   rights asserted by the Irgang entities and I conclude in light

24   of that that this settlement is fair and reasonable for the

25   debtors' respective estates and that it is in the best interest

42

1    of the debtors.   The only objections which were of a limited

2    nature to the proposed settlement have all been resolved on the

3    record by either clarifying statements or changes that will be

4    reflected in the order that's ultimately submitted.   And

5    consequently this stands as an unopposed settlement that's

6    reflected, I believe, in the analysis of the merits as well as

7    the fact that it was negotiated at arm's length by

8    sophisticated parties including a sophisticated Chapter 11

9    Trustee.   It's clear for the record now that the order that's

10   going to be submitted is consistent with the settlement

11   agreement including specifically paragraph 4(c) of that

12   agreement and that not only is that relief not objected to but

13   I believe it's appropriate in respect of third-party rights as

14   paragraph 4(c) is consistent with Section 363(f) of the

15   bankruptcy code.   There was a related portion of the relief

16   sought in respect to the backup bidder and a breakup fee that I

17   believe is properly or would be properly due and owing under

18   the circumstances set forth in respect of the request for

19   approval of the breakup fee given the context of this matter

20   and in particular how the trustee ultimately arrived at this

21   settlement which was in a context of multiple parties bidding

22   for certain of the properties at issue here in a clear

23   unofficial but still very meaningful auction setting.   So,

24   again, I have no problem approving under the terms that the

25   trustee's agreed to the breakup fee for the backup bidder which

43

1    is in terms of the amount of the fee consistent with the

2    practice in the court.  So as a practical matter I believe that

3    Mr. Campo should circulate the revised order to the counsel

4    who've appeared here.  He can, if he wants to, in fact he

5    probably should, circulate it first to the Irgangs but by

6    any -- no matter what he chooses to do he should definitely

7    copy the counsel who are here when you submit the order to go

8    to the Court so that they can -- if they want to take issue

9    with whether it's consistent with what was laid out on the

10   record.

11          MR. CAMPO:  Your Honor, thank you very much.

12          THE COURT:  Are we going to have -- is there anything

13   to be had on the pretrial conference?

14          MR. CAMPO:  On all of the pretrials, Your Honor, I've

15   had further meetings with all of the attorneys who did -- who

16   have not had these discussions with me previously.  I had them

17   when we were waiting for the calendar and everybody has agreed

18   that we were going to proceed along the same lines that we had

19   done with the last batch, which is that we'll kick everything

20   over to the 18th.  Now, I recognize, Your Honor, that will

21   create an enormous number of pretrials that would theoretically

22   be on the calendar.  I would suspect that none of them will

23   come onto the calendar but what I will do is I will provide to

24   the Court a updated status chart for everything that's going to

25   be on on the 18th.  I believe we've set the 18th as the return

44

1    date for default motions for those parties who haven't answered

2    or otherwise reached and contacted us.

3            THE COURT:  Right.

4            MR. CAMPO:  And we will use the 18th as a date if

5    necessary, Your Honor, to ask for the Court's assistance if we

6    haven't either settled or agreed to a formal discovery schedule

7    with the defendants.

8            THE COURT:  Okay.  So you'll be talking with these

9    defendants about a discovery schedule too?

10           MR. CAMPO:  I will be speaking with multiple

11   defendants over the course of the next two weeks about either

12   resolving or getting an agreed upon discovery schedule which we

13   will not ask the Court to so order unless any of the defendants

14   either believe it's necessary or if we think it might be

15   necessary if we're concerned about parties living up to it.

16           THE COURT:  Okay.  Well, you should definitely

17   memorialize it somehow even if it's not going to be so ordered.

18           MR. CAMPO:  Oh, it will be memorialized.  The only

19   question is that we didn't want to burden the Court with having

20   so order fifty scheduling stipulations.

21           THE COURT:  Unless either party to the dispute wants

22   it.

23           MR. CAMPO:  Right.  And now, Your Honor, if I may,

24   there is one issue that I would bring to the Court's attention

25   although the pretrial wasn't on today.  It was the Homehaven

45

1    adversary which deals with 10 -- with 19 -- 190-01 Hollis

2    Avenue.  Your Honor had set a discovery deadline on the issues

3    of the breach of the stipulation for the end of February.

4    Counsel for both sides have agreed that that discovery -- that

5    deadline should get kicked out one month.  Your Honor never

6    entered an order on that although it was part of the record.

7    If Your Honor would like me to submit --

8            THE COURT:  Why don't you just submit an order -- not

9    an order, a letter --

10           MR. CAMPO:  A letter confirming --

11           THE COURT:  -- confirming the new date.

12           MR. CAMPO:  -- the new date and I will copy --

13           THE COURT:  Copy the other side.

14           MR. CAMPO:  -- the other side and that will be it.

15   Okay.

16           THE COURT:  So, March 18th at 10, then, with the

17   others.

18           MR. CAMPO:  That will be all of the adversaries.

19           THE COURT:  But you'll be in contact with people as

20   to whether --

21           MR. CAMPO:  Whether there's going to be --

22           THE COURT:  -- you would want to say anything.  I --

23   they're free to come, I guess, if they want to.

24           MR. CAMPO:  Yeah.  I'll be here but I will certainly

25   give everybody an opportunity to know -- to decide whether they

46

1    want to come or not.

2              THE COURT:  Okay.

3              MR. CAMPO:  But my hope would be that there'll be

4    very few of those people here.

5              THE COURT:  Okay.

6              MR. LEVY:  Your Honor, there's one other adversary

7    proceeding that doesn't fit easily into the massive proceedings

8    that are being carried.  That's the adversary proceeding that

9    Mr. Shapiro, the 125th owner, commits against the trustee and

10   RUD Development alleging violation of its original contract to

11   purchase the property.  I see Mr. Nutovic, as plaintiff's

12   counsel, has left --

13             THE COURT:  I haven't seen that.

14             MR. LEVY:  He filed a motion to dismiss that

15   complaint.

16             THE COURT:  I haven't seen that proceeding.  I'm not

17   that familiar with it, so.

18             MR. LEVY:  Can we just -- because if someone shows

19   today as an initial pretrial, could we just carry that out to

20   March 18th as well?

21             THE COURT:  There's a motion to dismiss that's been

22   filed?

23             MR. LEVY:  We filed -- my client has just filed a

24   motion to dismiss.

25             THE COURT:  Do you have a return date?

47

1          MR. LEVY:  We have a return date of March 14th.  It

2     may well be, Your Honor, that we're going to try to kick that a

3     little bit to adjust the briefing.

4          THE COURT:  All right.  Well, if it stays on the 14th

5     then we'll have that be the pretrial.  If it's moved then we'll

6     have a pretrial without one on the same date as the motion to

7     dismiss.

8          MR. LEVY:  For a --

9          THE COURT:  Why don't you tell Mr. Nutovic that?

10         MR. CAMPO:  We will, Your Honor.

11         THE COURT:  Judge Gerber has an interesting opinion

12     on your fairing with sales in, I believe, Adelphia.

13         MR. CAMPO:  Thank you, Your Honor.

14         (Time noted: 12:24 PM)

15

16

17

18

19

20

21

22

23

24

25

48

I N D E X

RULINGS

Page Line

Approval of breakup fee                              42    20

for backup bidder.

49

1

2                    C E R T I F I C A T I O N

3

4   I Ellen S. Kolman, court approved transcriber, certify that the

5   foregoing is a correct transcript from the official electronic

6   sound recording of the proceedings in the above-entitled

7   matter.

8

9   _____  February 25, 2008_____

10  Signature of Transcriber           Date

11  *Ellen S. Kolman*

12  Ellen S. Kolman

13  typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25

1

**A**

ability 28:13 39:22
above-entitled 49:6
Absolutely 10:17
  21:19 22:2 28:22
accelerated 24:19
accept 28:8
account 20:25,25
  21:7 22:13,15,23
  23:11
accrued 12:19 18:11
  18:13 19:25 20:12
  24:6,8
accumulated 37:9
acknowledge 18:6
  20:11 29:17 33:23
  39:1
action 9:15,24 18:9
  24:13
actions 8:6,10,16,21
  10:9 32:24 33:1,12
  34:7
acts 28:5
add 31:21
added 8:22 19:1
  30:17
adding 30:24
addition 8:23
additional 24:12
address 15:14
addressed 10:21
Adelphia 47:12
adjust 47:3
administrative 28:6
advanced 13:15,17
  18:3,4,7,11
adversaries 45:18
adversary 2:8,12
  8:11 45:1 46:6,8
advised 11:7 37:16
affair 17:8
afternoon 33:17
agencies 28:7,15
  29:15
agency 29:21

agents 28:6
ago 41:17
agree 14:1 30:1
  37:24
agreed 14:3 20:5
  22:13,20 26:10,24
  28:2 32:18 33:23
  37:17 38:6,15
  39:19 42:25 43:17
  44:6,12 45:4
agreeing 38:25
agreement 9:5 10:11
  10:12 12:10 13:20
  14:13,20 15:4,8,22
  16:7 17:21,25
  18:14 22:1 23:2,16
  27:8 29:9,18 31:25
  32:2,4,6,20 34:11
  34:13 39:21 42:11
  42:12
agreements 16:23
agrees 11:8
allegedly 19:3
alleging 46:10
allocating 14:14
allocation 13:6
allow 39:22
allowed 15:11 40:25
amount 12:11 13:7
  13:11,20,25 14:2,4
  15:11 16:1 17:8,11
  17:13,15 18:4,9,13
  18:13 20:15 21:12
  21:16 23:23,24
  24:4 25:23 26:8
  43:1
amounts 12:13,19
  14:15 16:21 23:9
analysis 42:6
answered 44:1
anticipate 12:12
Anyah 7:10
anyway 33:2
apologize 31:3
apparently 19:3

appeal 11:25 40:12
  40:20
appeared 43:4
application 21:3
  40:11
appropriate 18:25
  23:13 27:9 42:13
approval 2:4 9:15
  39:12 42:19 48:6
approve 2:2,8,11 8:4
  38:8
approved 49:4
approves 26:14
approving 42:24
approximately
  30:18
April 37:18,23,24
  38:1 39:23 40:4
argue 11:8
arm 16:18
arm's 42:7
arrived 42:20
articulated 14:12
aside 12:4
asked 13:4 20:6
  24:21 27:22 30:24
aspect 29:17
assert 9:18 21:16
asserted 13:22 18:8
  41:23
assertion 25:21
assigned 13:7
assignee 12:8 19:22
  19:22
assignment 32:15
assignments 30:8,19
assistance 44:5
ASSOCIATES 4:2
assuming 26:14 38:7
  40:16
assumption 39:8
assure 16:12
Astoria 12:17
attach 27:19
attached 20:1

attempt 16:18
attention 27:24
  44:24
attorney 4:3 5:10
  6:20 7:10 12:7
attorneys 3:11,18
  4:10,17 5:3 7:3
  43:15
auction 37:6 42:23
authorities 29:11
authority 30:2
Avenue 3:5,19 4:4
  4:11,18 5:4,18 6:3
  45:2
avoid 9:11 10:1
avoidable 11:10
avoidance 8:18
  11:23,24
avoided 9:12 10:14

**B**

B 1:21 5:9,14
back 16:16,20 30:23
backstopping 17:6
backup 38:14,16
  39:1,3 42:16,25
  48:7
balance 12:11,15,17
Bank 19:4
bankruptcy 1:2,14
  1:23 2:9,13 42:15
batch 43:19
beg 19:8
behalf 10:20 30:15
  34:7 36:15,16
believe 9:18 16:14
  16:17 17:21 18:5
  18:10 29:15 30:19
  34:2,19 35:5 40:11
  42:6,13,17 43:2,25
  44:14 47:12
believes 25:21
belong 31:23
belonged 25:22
belt 30:11,12

**benefit** 9:6,9,13
  10:15 24:11 36:7
**Bernstein** 9:3
**best** 41:25
**better** 41:3
**beyond** 18:4
**BHOURASKAR**
  5:16
**bidder** 38:14,14,17
  39:1,3 42:16,25
  48:7
**bidding** 42:21
**binding** 28:4
**bit** 40:7 47:3
**BLUMENFELD** 7:9
  7:14
**Blvd** 3:12
**Bodden** 8:19 9:19,19
  10:22 11:7
**bona** 39:13
**bottom** 13:24
**Bowling** 1:15
**breach** 45:3
**break** 24:5,21 25:13
**breakdown** 24:12
  24:15
**breakup** 37:11,12
  40:1 42:16,19,25
  48:6
**briefing** 41:20,20
  47:3
**briefly** 8:12 14:11
**bring** 21:3 27:23
  34:7 44:24
**Broadway** 7:4
**Brooklyn** 7:12
**brought** 34:8
**BRT** 5:3 9:20 11:4
  11:15 12:6 36:15
**Building** 5:17
**burden** 44:19
**bureau** 29:21 33:21
  33:25,25 34:6,8,22
  34:25 35:10
**bureau's** 35:17

**buy** 40:24
_____
**C**
_____
**C** 3:2 8:1 29:8 49:2,2
**calculation** 14:9,24
  18:20
**calendar** 43:17,22
  43:23
**call** 12:7
**called** 37:11
**Campo** 3:8 8:3,25
  9:7,10 10:1,5,8,17
  10:21 11:15,19,23
  12:2,4,25 13:4
  14:12,14 16:13
  17:15 18:5,17
  19:19,22 20:3,10
  20:17 21:1,9,15,19
  22:2,7,10 24:2,10
  24:21 25:7,10,19
  26:3,6,18,24 27:5
  27:7,14,16,18,21
  28:19,22 29:1,3,13
  29:19,23 30:1,4
  31:2,8,11,20 32:2
  32:9,11,14,17 33:4
  33:11,14,19 34:9
  34:18 36:1,9 38:5
  38:21,24 39:8,19
  39:25 40:2 41:12
  43:3,11,14 44:4,10
  44:18,23 45:10,12
  45:14,18,21,24
  46:3 47:10,13
**Campo's** 25:17,21
  37:18
**capacity** 34:9
**Capital** 1:8 3:4,11
  8:2 12:8 13:7
  19:19,23
**Capital/Parade**
  19:21
**careful** 41:2
**carried** 46:8
**carry** 46:19

**case** 1:4 10:23 18:23
  19:12 20:8 36:4
  37:19
**CASHMAN** 4:16
**catchall** 31:7
**categories** 32:6
**Central** 5:11
**certain** 2:5,12 8:16
  30:19 31:21,22
  42:22
**certainly** 25:4 29:4
  33:17 45:24
**certify** 49:4
**CFRN** 31:15
**change** 10:15
**changed** 10:23
**changes** 33:15 42:3
**Chapter** 2:4 42:8
**charges** 18:11
**chart** 43:24
**chief** 34:8
**chooses** 43:6
**CHRISTOPHER**
  6:20
**circulate** 43:3,5
**circumstances** 11:20
  42:18
**City** 3:13
**claim** 15:12 23:9
  30:15 35:19,21
**claimant** 23:5
**claiming** 21:12
**claims** 10:6 23:5,15
  27:2,4,11,14,18
  28:4 30:14,14
  32:12 33:24 34:1,8
  35:17,18
**clarifies** 27:1 28:1
  33:5
**clarify** 8:17 20:11
  22:3 35:16
**clarifying** 42:3
**clear** 9:10 11:23
  13:16 15:15,20
  20:20 27:3,4,13,14

28:3,10,21,25 29:4
  29:8,9,10,17,20
  30:13,13 34:12,24
  34:24 35:6,8 38:2
  42:9,22
**clearly** 32:5,12
**client** 14:21 15:16
  15:23,24 16:1,2,18
  17:7 19:5 21:12,25
  23:2,8,10 40:20
  46:23
**clients** 37:22
**client's** 14:24 15:10
  17:1 23:15,15
  24:18
**close** 37:17,20,25
  38:16,17,20 39:4,4
  39:9 40:8
**closed** 39:11
**closes** 37:23
**closing** 12:12,19,21
  12:23 13:10,25
  16:11,21 17:25
  20:4,23,24 23:19
  23:21,25 24:24
  32:21,24,24 33:6
  37:14,25 39:10,15
  39:22,23
**code** 42:15
**COLE** 3:17
**collateral** 23:13
**collect** 15:1 17:2
**come** 15:16 24:7
  31:13 33:15 43:23
  45:23 46:1
**comfort** 30:20
**comfortable** 29:2,14
  29:16 31:5,10,11
  31:16 32:12
**coming** 32:5
**commenced** 8:7
**commercial** 12:16
  30:16 32:14
**commits** 46:9
**committed** 16:11

committing 14:19 17:25
Community 12:8 13:7 19:4,19,21,23
Community/Parade 21:7
company 30:22
complaint 46:15
complete 41:20
component 18:1,21 19:1
components 17:18 17:21
Compromise 2:2,11
concept 9:2
concern 10:21 40:7
concerned 8:15 11:11 39:20 44:15
concerning 8:14 36:2,3
conclude 41:23
condition 31:18 39:14
conditions 39:21
conference 43:13
confirm 10:18,20 13:4,5,8 20:19 31:15 37:21 40:22
confirmation 31:19 31:20
confirming 45:10,11
confirms 40:18
connection 8:4,11 8:20 28:20
consequence 9:5
consequences 10:12 10:16
consequently 42:5
considerable 41:19
consistent 29:6 40:16 42:10,14 43:1,9
construction 13:14 13:15 17:20 18:7
contact 45:19

contacted 44:2
contained 8:17
contemplated 35:7 37:12,13
contest 40:25
context 42:19,21
continuation 9:24
contract 24:15 37:16 39:12 46:10
contracted 37:8
controversies 38:9
conversation 11:15
conversations 12:5
conveyance 8:6,10 8:16,21 32:23 33:12
cooperate 25:1
copy 43:7 45:12,13
Corporation 3:4,11
correct 9:7 10:5,8 18:5 21:1 27:16 29:1,13 33:4,11 35:15 40:2 49:5
counsel 11:4,7,14 16:15 35:16 43:3,7 45:4 46:12
counsel's 16:18
Country 6:9
county 29:23
course 12:13 15:6 18:23 30:16 36:20 44:11
court 1:2,14 2:4 7:11 8:2,24 9:1,8 9:25 10:3,6,10 11:2,12,18,22 12:1 12:3 13:3 14:10,17 15:6,18,20 16:5,9 16:13,24 17:13,23 18:12 19:7,9,14,16 19:24 20:8,13,16 20:22,24 21:3,5,10 21:13,17,20,23 22:6,8,13,14,15,16 22:16,17,19,23,24

23:4,7,12,20 24:1 24:9,20 25:3,9,12 25:17 26:2,4,16,17 26:19,23 27:4,6,13 27:15,17,20 28:17 28:20,24 29:2,4,11 29:14,22,25 30:3,6 31:1,4,9,13,18,24 31:25 32:7,10,13 32:16 33:2,9,13,16 33:18 34:4,6,10,15 34:23 35:3,5,11,23 35:25 36:7,11,15 36:18,20,22,24 37:1,4,6,10,16 38:12,23 39:6,16 39:24 40:3,14,16 40:21 41:2,4,6,10 41:15,18 43:2,8,12 43:24 44:3,8,13,16 44:19,21 45:8,11 45:13,16,19,22 46:2,5,13,16,21,25 47:4,9,11 49:4
Court's 27:23 28:13 44:5,24
create 43:21
creditors 10:13
CULLEN 3:10
currently 8:8
customary 28:17,19

D

D 1:22 8:1 48:2
date 23:19,21 37:17 37:17 38:1,14 39:18,23 40:3 41:7 44:1,4 45:11,12 46:25 47:1,6 49:10
days 38:10
deadline 45:2,5
deals 30:7 45:1
DEBRA 6:13
debt 17:13,15 18:2,2 18:4

debtor 1:10 14:15 17:3,3 25:23 27:11
debtors 30:14 41:25 42:1
December 37:6,15 37:23 38:4
decide 45:25
decision 8:8
deeds 28:6
default 14:8 18:22 18:25 24:16 44:1
defendant 35:12
defendants 33:9,10 44:7,9,11,13
defenses 9:23 10:22 10:23 11:10 12:13 41:22
defined 28:4
definitely 43:6 44:16
DeFlora 5:9,14 11:13,13
delays 15:25
DELLA 6:2,6
demonstrate 39:13
DEPARTMENT 6:16
Deputy 6:20
derived 25:10
detail 30:6 31:12
determine 14:5 17:16 20:14,14
Development 4:17 36:17,19 37:8 39:9 46:10
different 35:11
differs 30:5
diligence 31:5
DIPASQUALE 6:2
direction 29:11
disagree 38:5
discovery 44:6,9,12 45:2,4
discretion 38:16
discussion 26:8
discussions 43:16

**dismiss** 32:25 33:7,8
  33:11 46:14,21,24
  47:7
**dismissal** 32:21,25
  33:7
**dismissed** 32:24
**dismissing** 33:3
**dispute** 14:5,7 15:1
  18:12 20:14 21:8
  21:24 22:4 44:21
**distinctions** 32:8
**DISTRICT** 1:3
**documents** 28:9
**doing** 15:25
**dollar** 14:24 17:18
  17:19,20
**dollars** 12:15 13:16
  13:23 14:15 16:2
  17:17 18:10 37:9
**DONOVAN** 7:7
**DRAIN** 1:22
**DREIER** 3:3
**drop-dead** 37:16
  38:1
**due** 12:11,19,22
  16:21 20:20 24:7,7
  24:19,22 31:5
  42:17
**DYKMAN** 3:10

**E**

**E** 1:21,21 3:2,2 5:7
  8:1,1 48:2 49:2
**easily** 46:7
**East** 7:17
**easy** 24:5,25
**Edward** 4:14 10:19
**effect** 9:21 30:24
**effectively** 28:1,11
**effectuate** 28:10
**effort** 25:3 28:13
**eight** 8:5 28:3
**either** 9:9,19 33:16
  42:3 44:6,11,14,21
**electronic** 49:5

**Ellen** 2:24 49:4,12
**emerged** 37:7
**Empire** 5:17
**encompassed** 30:20
**enforce** 15:8,21 22:1
  22:20 23:16
**enforceable** 25:24
**enforcing** 34:1
**enormous** 43:21
**ensure** 15:4,10
  23:24
**ensuring** 23:18
**entered** 34:14 45:6
**entire** 36:7
**entities** 3:18 8:5,9
  16:10 28:2,5 34:2
  35:3,4 41:23
**entitled** 20:12 29:7
  29:10
**entity** 19:4,16 30:14
**entry** 10:11 38:11
**equally** 24:22
**escrow** 14:3 20:25
  21:16 22:15,23
**escrowed** 23:24
**ESQ** 3:8,15,22,23
  4:7,14,21 5:7,14
  5:21 6:6,12,13 7:7
  7:14,20
**estate** 9:13 10:13,15
  15:12 25:8 27:12
**estates** 41:25
**estate's** 14:19
**evening** 26:16
**event** 30:2 37:24
  39:10
**everybody** 43:17
  45:25
**exact** 18:20
**exactly** 11:14 26:22
**example** 31:17 32:15
**excess** 13:22
**exchange** 15:13
  37:15 39:19
**excludes** 34:22

**exculpate** 17:5
**excuse** 38:23
**execute** 32:21 33:6
**executed** 32:25
**exist** 14:6 20:15
**extend** 37:17 39:23
  40:9
**extent** 10:22 25:24
  29:8 33:15 35:9

**F**

**F** 1:21 49:2
**fact** 8:18 10:23 11:9
  13:12 14:8 18:5
  42:7 43:4
**fail** 20:4
**failed** 39:10
**fair** 41:24
**fairing** 47:12
**faith** 25:3 39:13
**familiar** 36:4 46:17
**far** 17:16,24 41:1
**fashion** 18:24
**fault** 11:5
**February** 1:18 45:3
  49:9
**federal** 28:7,15
**fee** 37:12,12 40:1
  42:16,19,25 43:1
  48:6
**feel** 41:3
**fees** 24:13
**Feinstein** 5:2 11:4
**fellow** 13:3
**FERA** 6:2,6
**fides** 39:13
**Fifth** 5:18
**fifty** 31:6 44:20
**fifty-five** 30:18
**file** 28:8 40:12 41:13
**filed** 29:5,15 40:20
  46:14,22,23,23
**filing** 28:5
**final** 11:24,25 38:10
  39:23 40:8

**financing** 30:8
**findings** 39:14
**fine** 21:5 24:20 32:1
  34:17 37:4 39:24
**FINKEL** 7:2
**first** 17:16 26:24
  43:5
**fit** 31:7,14 32:5 46:7
**fix** 16:20
**fixed** 16:1,16
**fixing** 13:11
**following** 38:1
**follows** 9:16
**foreclose** 18:8
**foreclosing** 19:4
**foreclosure** 10:9
  18:9 19:5 24:13
**foregoing** 49:5
**form** 26:11,15
**formal** 44:6
**FORMAN** 3:17
**Fort** 5:12
**forth** 30:6,21 42:18
**four** 23:8
**fraudulent** 8:6,10,16
  8:21 32:23 33:12
**Frederick** 5:7 11:4
**free** 20:20 27:3,4,13
  27:14 28:3,20,24
  29:7,9,10,17 30:13
  34:23,24 35:8
  45:23
**fulfilling** 16:22
**full** 14:21 15:11
  21:16 41:19
**fully** 13:17 24:19
  25:24 36:4
**fund** 27:19
**Funding** 5:10 11:14
  11:17
**funds** 13:6 17:2
**further** 43:15
**future** 35:10

**G**

**G** 3:15 8:1
**Garden** 3:13
**gather** 18:12
**general** 6:20 34:8
**generally** 38:18
**Gerber** 47:11
**Gerold** 6:20 34:5,17
  34:19,21 35:1,4,9
  35:14,24 36:19
**getting** 10:14 25:2
  29:8 34:23,24
  44:12
**give** 19:7,9 21:25
  27:9 39:5 40:3
  45:25
**given** 42:19
**giving** 30:23
**go** 15:16 23:2 26:20
  31:23 32:3 35:12
  40:25 43:7
**going** 14:14 15:12
  17:4 23:8,11,21
  24:25 25:17 26:13
  26:13,15 27:18
  30:23 31:21,23
  32:7 38:8,11 40:17
  41:18 42:10 43:12
  43:18,24 44:17
  45:21 47:2
**GOLDSTEIN** 7:2
**good** 9:3 11:3 25:3
  39:13 41:21
**govern** 28:5
**governmental** 28:5
  29:15,21
**Green** 1:15
**group** 8:14 13:19
**guess** 13:19 23:22
  31:1 38:21 40:6
  45:23

———————
**H**
**Hahn** 4:9 10:20
**Halsey** 6:17
**happy** 26:9 40:19

**HAROLD** 6:8,12
**head** 19:12
**hear** 36:11
**heard** 14:11 38:13
**hearing** 37:14 38:9
  39:8,12
**held** 15:25 16:1 37:6
**Herrick** 5:2 11:4
**Hessen** 4:9 10:20
**hold** 22:4
**holding** 39:18 40:3
  41:6
**Hollis** 45:1
**Homehaven** 44:25
**HON** 1:22
**Honor** 8:3,7,9,12,21
  9:14 10:18,19 11:3
  11:5,13,19 12:4
  13:1,2,18,23 14:4
  14:11,22 16:8,25
  17:16,20 18:19
  19:2,11 20:3,10
  21:11,19,21 22:2,3
  22:12,18,22,25
  23:17 24:2,10,14
  24:17 25:7,14,19
  25:20 26:6,7,9,14
  26:14,24 27:7,24
  28:1,12 29:19 30:1
  30:10,11 31:2,11
  31:21,22 33:4,14
  33:19 34:5,17,18
  35:9,15 36:1,9,13
  36:16,21 37:5,15
  37:21 38:5,7,21
  39:7,12,17 40:2,5
  40:23 41:3,5,9,11
  41:13,14 43:11,14
  43:20 44:5,23 45:2
  45:5,7 46:6 47:2
  47:10,13
**Honor's** 36:4 38:8
**hope** 13:2 21:2 46:3
**hopefully** 33:16
**hoping** 34:18

**horse** 39:5

———————
**I**
**identity** 30:7
**impact** 17:1
**impacted** 34:13
**implied** 26:12
**important** 16:12
**impose** 24:11
**Improvements** 2:6
**inability** 14:1
**include** 24:12 27:22
  32:11
**included** 14:8 18:21
  37:13
**includes** 30:18
**including** 8:18 12:20
  12:23 42:8,11
**incorporate** 32:18
**independent** 15:7,9
  34:8
**indeterminate** 14:15
**initial** 46:19
**insofar** 11:10
**instituted** 19:5
**instruments** 28:10
**insufficient** 14:1
**intend** 39:9
**interest** 2:5 12:22,22
  13:21,21,22,25
  14:3,8 17:7 18:11
  18:13,20,21,22,23
  19:1,1,24,25 20:2
  20:4,5,12,21 21:6
  23:11 24:8,14 25:2
  25:8 40:23 41:25
**interesting** 9:2
  47:11
**interpretation** 9:1
  34:21 38:6
**Intervest** 12:16
**investor** 30:14,15
  32:12
**investors** 34:7
**involve** 33:12

**involved** 25:25
**Irgang** 3:18 8:5,9
  13:19 15:17 16:10
  17:10,11,12 26:1
  26:13,20 30:4
  32:18 33:7 34:2
  35:3 41:23
**Irgangs** 12:18 13:25
  14:3 15:1,2,4,14
  15:22 16:3,19 17:6
  18:14 19:25 20:3,6
  20:11,18 21:24
  23:10 24:1,23
  25:24 26:8,10 27:1
  27:9 28:11 29:7
  30:21 32:2,4 33:22
  43:5
**Irgang's** 9:6,12
  23:16 26:25 27:21
  28:2 30:9
**ISAAC** 4:7
**issue** 8:22 9:4,16
  13:18 14:6 16:14
  17:14,17 18:1,12
  21:21,22 25:15
  26:5,9 28:16 29:6
  31:1,4 33:22 35:21
  36:13 38:12 40:5
  42:22 43:8 44:24
**issues** 10:6 13:10
  14:12 36:2,3 45:2
**item** 39:10
**i.e** 38:20

———————
**J**
**J** 7:7
**January** 37:17
**Jersey** 6:15 33:21,25
  34:5 35:17
**JOHN** 3:8 7:20
**Jordan** 5:9,14 11:13
**JR** 4:21
**Judge** 1:23 9:3
  16:20 47:11
**judgment** 35:10,12

**judgments** 30:8
**judice** 8:8
**jurisdiction** 16:14
  22:17,21 23:12

_____
**K**

**Kennedy** 5:10 9:20
  11:14,16
**Kennedy's** 12:6
**key** 21:6
**kick** 43:19 47:2
**kicked** 45:5
**know** 15:2 19:2,12
  24:25 25:16,16
  33:4 38:19 45:25
**Kolman** 2:24 49:4
  49:12

_____
**L**

**L** 4:14
**laid** 43:9
**language** 8:22,22
  28:2,17 30:17,20
  30:23 39:21
**lateral** 20:25
**LAURENCE** 3:23
**law** 6:16 28:8
**lawsuit** 11:11
**lawyer** 10:17 41:2
**lawyers** 12:6
**lay** 8:13
**leases** 30:19 32:15
**Lee** 5:12
**left** 46:12
**legal** 24:13
**length** 42:7
**Leo** 3:22 16:10
**LEONARD** 3:17
**letter** 23:23 30:6,10
  31:4 45:9,10
**Levy** 4:21 36:13,16
  36:16,21,23,25
  37:3,5,11 38:12,19
  38:25 39:2,4,5,7
  39:17 40:6,18,23

41:3,5,8,11,14
  46:6,14,18,23 47:1
  47:8
**Levy's** 38:6 39:1
**Leyva** 3:22 16:8,10
  16:10 20:7
**lia** 13:6
**liability** 8:9 14:20
  15:3 27:2,10,11
**libers** 31:16
**lien** 9:6,12,12,19,19
  9:22,24 10:1 11:24
  15:12 18:2 19:16
  20:1,20
**liens** 10:24 30:7
**light** 40:6 41:21,23
**limited** 8:13,14 12:5
  29:5,15 33:20 34:2
  35:1 36:3 42:1
**line** 10:13 13:24
  48:5
**lines** 43:18
**lis** 30:8
**litigation** 41:19,22
**little** 39:20 40:6 47:3
**live** 15:4
**living** 44:15
**LLC** 4:3
**LLP** 3:3,10 4:9,16
  5:2,16 7:2,16
**loan** 13:14,15 18:7
**local** 28:7
**long** 15:15 21:11
  22:8 31:25 34:21
  40:18
**looked** 13:23
**looking** 16:13
**loop** 39:11
**lot** 31:17

_____
**M**

**M** 5:21 6:8,12
**Madison** 4:4,11
**maintain** 16:13
**making** 35:19

**March** 45:16 46:20
  47:1
**massive** 46:7
**matter** 1:6 17:12
  28:13 42:19 43:2,6
  49:7
**MATTHEW** 3:15
**Maywood** 1:8 3:4,11
  8:2 30:14,14,15
  34:7
**May's** 41:2
**mean** 18:19 22:4
  39:24
**meaningful** 42:23
**means** 9:1
**mechanism** 22:25
  23:18
**meetings** 43:15
**MEISEL** 3:17
**memorialize** 44:17
**memorialized** 44:18
**merits** 41:22 42:6
**Migdol** 4:10 8:14
  9:16 10:20 12:5
**Migdol's** 10:17
**million** 14:14,25
  16:2 37:9
**mind** 18:25
**minutes** 41:16
**misspeak** 20:17
**Modelwire** 7:3
**modifications** 26:18
**modified** 27:25
**modify** 32:22
**Monday** 40:4 41:5
**money** 14:4 15:15
  15:16 16:19 20:22
  20:24 22:4,17
**monies** 13:14
**month** 45:5
**morning** 8:3 11:3
  26:7 31:12
**mortgage** 8:10,16,20
  10:9 12:8,12,16,16
  12:17 13:8,13,13

13:15,21 14:16,25
  15:10 17:17,18,19
  17:20,22 18:7,9
  20:15 24:19 25:22
  25:23
**mortgagees** 11:6
**mortgagers** 11:9
**mortgages** 8:19
  10:14,22 11:6 12:9
  12:20,22 28:6 30:8
  30:16 32:15
**motion** 2:2,4,8,11
  8:4 10:3 28:16
  29:5 36:12 41:16
  46:14,21,24 47:6
**motions** 41:17 44:1
**moved** 47:5
**moving** 26:11
**Mt** 6:3
**multiple** 33:10
  42:21 44:10

_____
**N**

**N** 3:2 8:1 48:2 49:2
**name** 49:13
**NASH** 7:2
**nature** 42:2
**necessary** 20:14
  22:3 32:19 36:5
  44:5,14,15
**need** 13:10,17 14:5
  22:6,7,8 33:3
  39:11,11
**needs** 25:11
**negotiated** 42:7
**never** 13:16,17
  17:10 18:3,7,20
  45:5
**new** 1:3,16,16 3:6,20
  4:5,12,19 5:5,19
  6:15 7:5,18 16:6
  22:19 33:21,25
  34:5 35:17 45:11
  45:12
**Newark** 6:18

newly 19:11
nice 13:3
ninety-five 18:10
NJ 5:12 6:4,18
normally 38:13,15
North 5:11
noted 41:16 47:14
notes 24:24
notice 19:7,9
notwithstanding
  35:18
number 16:15,16,16
  16:20 26:25 31:14
  43:21
numbers 31:15,16
Nutovic 4:2,7 12:23
  12:24 13:2,4,9,19
  13:22 14:2,11,22
  15:9,19,24 16:25
  18:6 19:2,8,11,15
  19:18,21 21:11,21
  21:25 22:11,15,18
  22:22,25 23:5,17
  23:22 24:3,17,21
  25:6,14,20 46:11
  47:9
Nutovic's 20:9 21:25
NY 3:6,13,20 4:5,12
  4:19 5:5,19 6:10
  7:5,12,18

_____
          O
_____
O 1:21 8:1 49:2
object 35:2
objected 17:10
  42:12
objecting 34:25
objection 8:14 12:5
  20:9 33:20,20 34:2
  35:1
objections 8:13 29:5
  29:6,16 36:3 40:10
  42:1
obligation 15:7,7,9
  15:21 16:6 17:7

19:24,25 20:2
  23:14 39:3
obligations 16:23
obtain 35:10
obviously 10:12
  24:14 25:7 38:14
  39:15 40:24 41:21
offered 22:4
offices 29:24
official 49:5
officials 28:7
offset 16:5,6
offsets 16:4
Oh 36:20 44:18
Okay 11:2,12,22
  12:3 14:10 16:24
  19:15 20:16 21:10
  21:14,20 22:25
  26:17,23 27:15
  29:3 30:3,4 32:10
  32:13,17 33:13,14
  33:18,19 34:4,15
  34:17 35:25 37:4
  39:6 40:15 41:4,15
  41:16 44:8,16
  45:15 46:2,5
Old 6:9
once 11:24 16:1
ones 31:7 32:3,4
  33:10,11
operation 28:8
opinion 9:3 47:11
opportunity 45:25
opposed 37:1
option 40:9
Orange 6:4
order 8:15,23 11:24
  22:20 26:11,13,15
  26:20,21,21,25
  27:22,22,25 28:4
  28:14,19 30:5,5,12
  30:20,21 31:23
  32:18 33:5,16
  34:14,16,19,22
  35:19 36:2 37:13

38:9 39:4,18,22
  40:8,16 42:4,9
  43:3,7 44:13,20
  45:6,8,9
ordered 44:17
original 9:19 11:6
  26:20 46:10
outstanding 13:24
overstated 38:24
owe 15:22
owing 12:11 18:4,9
  42:17
owned 13:1
owner 9:22 46:9
o'clock 41:10

_____
          P
_____
P 3:2,2,8,17 8:1
page 31:16 48:5
paid 12:15 13:10
  15:10 16:2 23:24
  37:14 39:25,25
paper 33:3
papers 19:13
Parade 4:3 12:7,25
  13:1,7 19:18,19
  20:15
paragraph 26:25
  27:25 28:1 29:8
  30:10,17,24 31:2,3
  32:8,22 42:11,14
pardon 19:8
Park 3:5 4:18 5:4
part 13:11 16:22
  23:20 35:21 40:7
  45:6
particular 35:21
  38:7 42:20
parties 8:9 9:1 14:23
  24:11 25:22 42:8
  42:21 44:1,15
party 8:15,20 9:14
  10:8 26:5 44:21
pay 12:10,17,18,21
  13:6,7,25 14:19

15:7 16:7,21 17:7
  17:25 20:4,5,12
  23:10 25:8
paying 18:15
payment 15:10
  17:11
payments 24:23
  25:22
payoff 23:23 24:4
pendens 30:8
pending 8:11 21:7
  22:4
people 25:16 35:3,4
  45:19 46:4
percent 37:11,12
PEREIRA 7:16,20
Pereria's 36:6
perfectly 23:13
performing 10:7
permitted 35:18
personal 40:13
pertains 9:15,24
  14:7
phone 12:7
pick 32:8
piece 13:13 17:16
  33:3
place 4:3 12:8,25
  13:1,8 19:18,20,21
  23:18 37:18,24
  41:8
placed 9:22
plaintiff's 46:11
Pleasant 6:3
plus 18:11
PM 47:14
point 13:9,19 22:1
  24:5,18 26:10 38:8
  38:11 39:25
POPPE 5:16,21
portion 13:12 14:20
  17:24 18:1,2,6
  23:14 25:21 42:15
position 10:25 17:9
  24:18 25:25

posttrial 41:20
post-settlement 17:9
potentially 10:12
practical 43:2
practice 43:2
prejudice 9:2 13:2
    33:24
prejudicial 8:19
preliminary 41:18
prepared 26:16
prepares 24:4
present 22:19 26:14
Presently 14:15
preservation 8:18
    11:24
preserve 9:11 10:2
    11:8,20 23:9 35:22
preserved 9:13
    10:14,24 11:10
    23:11
preside 22:14
presumably 23:1
pretrial 43:13 44:25
    46:19 47:5,6
pretrials 43:14,21
pretty 24:4
previously 43:16
pre-closing 21:4
price 37:9
primarily 14:7
principal 12:11,17
    12:19 13:11 17:15
    18:23 20:20 24:6,7
    24:22,23
printed 49:13
prior 39:8
probably 40:14 43:5
problem 9:4 15:17
    21:12,14 27:8,23
    27:24 28:12 29:18
    30:22 34:20 42:24
procedural 39:10
proceed 35:18 37:8
    43:18
proceeding 14:5

38:3 39:14 46:7,8
    46:16
proceedings 2:8,12
    8:11 46:7 49:6
proceeds 13:6
process 37:6 40:25
    40:25
proffer 36:5,5
promise 13:9
promulgate 28:13
properly 42:17,17
properties 9:17,17
    28:3 29:7 34:24
    35:7,20 37:9 42:22
property 2:5 8:6
    9:20,22,23 14:16
    14:25 20:1 29:10
    32:23 33:12 35:13
    40:24 46:11
proposal 37:7
proposed 10:11
    26:20,25 27:25
    30:5,9 33:16 42:2
provide 43:23
provides 14:13
    32:20
provision 27:21
    28:14 30:4,12
    32:17,22 33:5
provisions 26:19
PRYOR 4:16
PUBLIC 6:16
purchase 19:10
    46:11
purchased 19:5
purchaser 37:19
Pursuant 2:9,12
put 16:18 22:8,11
    31:18 32:22 33:5
putting 20:22,24
P.C 6:8

_____

**Q**

Quentin 3:12
question 16:22

18:25 38:25 39:2
    44:19
quite 28:17,19

_____

**R**

R 1:21 3:2 8:1 49:2
RACHEL 7:9,14
raise 29:6 36:14
    40:5
raised 31:4 33:20
raises 18:24
rare 41:17
reached 44:2
read 34:25
ready 16:20
real 2:5 8:6 15:12
    32:23 33:12
really 9:3 22:7 28:22
    29:23
Realty 4:10
reason 15:2 16:3
    17:5
reasonable 11:20
    41:24
recall 36:21 37:5
received 8:12,13
    12:6,6 18:20
recognize 29:12
    43:20
record 10:18 13:5,8
    17:12 23:21 28:9
    35:16 37:15 42:3,9
    43:10 45:6
recorded 9:20
recorders 28:6
recording 29:24
    49:6
records 40:17
record's 35:6
references 31:6
referred 8:10
referring 29:20,23
reflected 42:4,6
register 28:9
regulatory 34:9

reinstated 24:24
rejected 18:24
relate 32:14 37:3
related 42:15
relates 11:16 25:20
    36:23,24,25
release 15:3 17:10
    26:5,9,12 28:9
    34:16 35:7
released 15:13
releases 25:15 33:22
relief 37:1 42:12,15
remain 26:22 37:18
    39:2
remains 23:18
replacement 23:12
report 31:15,19,21
    32:4 33:9
represent 11:14
representations
    34:9
representing 17:3
Represents 12:25
request 37:18 42:18
requested 25:13
required 24:23 28:8
requirements 40:7
requiring 15:14
    27:3
reservation 25:4,12
reserve 20:13
resolution 21:7
resolve 13:11,17
    21:3
resolved 21:4 25:2
    34:3 36:2,2 40:11
    42:2
resolves 8:5,8 14:17
resolving 44:12
respect 9:23 14:2
    15:22 19:24 20:1
    21:24 23:9,14
    24:12,13,14 27:2
    27:13,14 34:1
    42:13,16,18

respective 41:25
responsibility 17:6
responsible 12:18
  12:21 15:25 17:4
  18:14 25:8
rest 26:21
result 37:5
results 13:12
return 43:25 46:25
  47:1
revamped 26:21
revise 32:7
revised 43:3
Richard 4:21 36:16
ridiculous 16:15
right 2:5 9:11,23
  11:18 12:1,2,4
  14:17,23 15:11
  17:2 19:14 20:13
  21:14,17,25 22:10
  22:22 24:9,21 26:2
  27:6,17,20 29:19
  31:8 32:7,16 33:9
  35:5,20,21,23,23
  35:24 37:10 38:21
  39:16 40:9,14,19
  40:22,24 41:15
  44:3,23 47:4
rightful 9:21
rightfully 16:21
rights 10:7 11:8,21
  14:18 17:2 23:3,16
  25:5,13 26:1 33:24
  34:10,13 41:23
  42:13
rising 37:21
Road 5:11 6:9
ROBERT 1:22
Roosevelt 3:12
ROSEMAN 3:15
ROSENBLOOM
  7:2
roughly 14:24
RUD 4:17 36:17,19
  36:21 37:8,16 39:9

39:12 46:10
Rule 2:9,13
RULINGS 48:4

      S
S 1:14 2:24 3:2 7:9
  7:14,20 8:1 49:4
  49:12
SAFETY 6:16
sale 2:4 28:23 37:8
  37:25
sales 47:12
SAM 6:6
satisfy 21:18
saying 9:4,5,8,13,21
  14:18 16:25
says 16:13 29:8
  32:22 39:25
schedule 44:6,9,12
scheduling 44:20
Schmidt 5:7 11:3,4
Schnitzer 4:14
  10:19,19
SCHOTZ 3:17
scope 8:14
second 13:13 18:6
  27:21
secondarily 17:6
Section 42:14
secured 18:2,2
securing 28:11
Securities 33:21,25
  34:6
Security 29:21
see 20:8 46:11
seeing 31:14
seeking 2:4 10:15
  35:22
seen 34:19 46:13,16
send 23:22
sense 39:19,20 41:22
sent 26:16 30:6
separate 33:3 37:1
served 28:16
set 23:21 30:6,21

39:18 42:18 43:25
  45:2
setting 42:23
settled 44:6
settlement 2:8,12
  8:5,17 10:11,12
  12:10,10 14:13,20
  15:4,8,22 16:4,6,7
  16:23 17:1,21,24
  18:14 23:1,19
  26:15 27:8,19
  28:11 29:9,17 32:6
  32:20 33:23 34:11
  34:13 35:8 36:24
  36:25 37:3,7,13,19
  37:23,25 38:8
  39:21 41:24 42:2,5
  42:10,21
seventy 18:10
Shapiro 13:1 46:9
shown 31:15
shows 46:18
side 45:13,14
sides 14:6 45:4
Signature 49:10
significant 14:13
  26:7 31:13
similar 11:5 21:22
Similarly 12:15
simply 27:1,18
SINSI 7:16
sir 35:23
situation 40:19
slightly 27:25
small 36:13
SODONO 6:2
sold 11:6
solution 14:17
SOMER 6:8,12
sophisticated 42:8,8
sorry 14:1 31:2
  36:18
sort 30:11
sought 18:8 37:2
  42:16

sound 49:6
SOUTHERN 1:3
speak 18:18 20:18
  36:12
speaking 44:10
specific 30:7,23 31:6
specifically 9:16
  26:19 30:21,22
  32:20 42:11
spells 17:21
spoken 39:7
squeeze 16:19
stages 41:19
stalking 39:5
stand 40:10
standard 19:3
standby 37:19
standing 40:12
stands 42:5
state 5:17 6:15 10:25
  17:12 28:7
stated 34:6,10,12
statement 38:24
statements 30:9 42:3
STATES 1:2
status 8:20 43:24
stay 37:24
staying 39:2
stays 47:4
stipulation 45:3
stipulations 32:21
  32:25 33:6 44:20
stop 8:24
Street 6:17 7:11,17
strong 16:18
sub 8:8
subject 12:13 23:11
  31:14,19,20 32:3
submissions 41:21
submit 33:16 43:7
  45:7,8
submitted 42:4,10
subparagraphs
  30:18 31:6
subsequent 14:5

| | | | |
|---|---|---|---|
| **successor** 27:2,10,11 | 32:19 35:15 36:1,4 | 15:15,19,25 16:1 | **U.S** 1:23 |
| **sufficient** 13:5 | 36:10 39:19 40:12 | 17:2,4,10 21:23 | |
| **suggesting** 9:11 | 44:14 | 23:6,9,14,23 25:1 | **V** |
| 27:10 38:20 | **third** 3:19 26:4 | 26:15 31:9 38:18 | |
| **suggestion** 23:2,4,7 | **third-party** 25:15 | 38:20 39:3,9,22 | **V** 3:22 |
| **supplanted** 37:7 | 26:8,12 33:22 | 40:9 42:9,20 46:9 | **valid** 11:9 |
| **Supplemental** 2:11 | 34:15 35:6 42:13 | **trustees** 16:19 | **verification** 32:3 |
| **supplementary** 37:2 | **thought** 38:3 | **trustee's** 2:4,5,8,11 | **versus** 24:15 |
| **sure** 8:25 12:18 21:5 | **thousand** 12:14 | 8:4 15:21 17:3,24 | **vicinity** 12:14 |
| 24:3,3 27:24 38:1 | 13:16,23 14:24 | 19:13 26:21 28:16 | **view** 29:7 40:12,13 |
| **surely** 38:2 | 17:17,18,19,20 | 33:15 34:16 37:7 | **violation** 46:10 |
| **suspect** 43:22 | 18:10 | 38:16 42:25 | **virtue** 28:11 |
| **suspenders** 30:11,12 | **three** 30:16 32:14 | **try** 16:18 47:2 | **vote** 14:24 |
| | 37:8 | **tune** 17:7 | |
| **T** | **thrown** 16:15 | **turn** 8:2 26:4 36:22 | **W** |
| | **thwart** 23:15 | **twelve** 8:11 | |
| **T** 49:2,2 | **time** 19:4 20:4 41:8 | **two** 14:6,12,23 | **W** 6:20 |
| **tail** 37:14 | 47:14 | 17:18,21 37:11,12 | **waiting** 31:13 43:17 |
| **take** 9:4 43:8 | **timely** 18:24 | 39:17,20 44:11 | **waived** 23:3 |
| **taken** 9:18 13:15 | **times** 23:18 | **tying** 16:3 | **waiving** 9:9 26:1 |
| **takes** 23:18 | **title** 2:5 9:17,18,21 | **typed** 49:13 | **walk** 38:14,15 |
| **talking** 29:20 44:8 | 20:19 27:3 28:3,10 | | **want** 14:23 17:8,11 |
| **technically** 28:23 | 30:22 31:14,19,20 | **U** | 20:17,18 21:5 23:1 |
| **TED** 7:7 | 32:3 35:20 | | 24:17 25:25 27:23 |
| **tell** 19:12 26:19 | **today** 38:2 44:25 | **U** 1:14 | 31:18,24 40:5,19 |
| 31:24 47:9 | 46:19 | **ultimately** 42:4,20 | 41:12 43:8 44:19 |
| **ten** 38:10 41:10 | **token** 10:10 | **unappealable** 38:10 | 45:22,23 46:1 |
| **tender** 18:24 | **told** 13:9 | 40:8 | **wanted** 8:17 20:13 |
| **tendered** 18:23 | **tomorrow** 11:1 | **understand** 15:21 | 35:16 |
| **terms** 12:9,20 13:11 | 33:17 | 20:9 25:9 29:22 | **wants** 36:12 38:18 |
| 16:22 42:24 43:1 | **top** 19:12 | 35:17,19 36:9 | 43:4 44:21 |
| **testimony** 36:6 | **transaction** 16:11 | **understanding** | **wasn't** 27:7 44:25 |
| **tethered** 19:3 | **Transcribed** 2:24 | 11:16 13:18 14:7 | **way** 20:19 21:23 |
| **thank** 12:25 35:14 | **transcriber** 49:4,10 | 18:17,21 20:19 | 28:1 |
| 41:11,14 43:11 | **transcript** 49:5 | 34:20 37:22 38:3 | **WEBSTER** 6:2 |
| 47:13 | **transfer** 28:24 29:11 | **understood** 17:23 | **weeks** 44:11 |
| **theoretically** 43:21 | 29:12 | **UNITED** 1:2 | **went** 33:21 |
| **thing** 16:11 21:6 | **transfers** 28:20 | **unofficial** 42:23 | **weren't** 21:15 |
| 23:17 24:18 28:14 | **transpiring** 16:17 | **unopposed** 42:5 | **West** 6:4 |
| **things** 16:12,12 | **TRENK** 6:2 | **unpaid** 12:11,15,17 | **Westbury** 6:10 |
| 39:17 | **trial** 36:8 41:19 | 12:22 13:21,22 | **we'll** 16:20 23:22 |
| **think** 9:15 10:18 | **tried** 8:7 | 14:2 24:6,8 | 25:14 32:18,21 |
| 11:19,20 14:12 | **truly** 31:7 | **updated** 43:24 | 33:6,16 43:19 47:5 |
| 15:19 17:1 20:5,6 | **trustee** 3:4 11:7 | **use** 44:4 | 47:5 |
| 20:11 23:17 24:22 | 12:10 14:4 15:3,3 | **Usually** 38:17 | **we're** 8:3 9:10,21 |
| 25:17 26:7,9 27:8 | | **usurp** 30:15 | 10:25 11:5 26:10 |
| | | | 26:10,13 29:20 |

| | | |
|---|---|---|
| 31:11,16 44:15 47:2 | **10118** 5:19 | **363(f)** 14:18 21:17 23:13 42:14 |
| **we've** 8:22 13:23 26:7 28:2 36:1,2,2 40:24 43:25 | **10155** 7:18 | |
| | **1025** 6:9 | **4** |
| | **11** 2:4 42:8 | **4** 29:8 30:25 35:7 |
| **whipsawed** 14:23 | **11:33** 1:19 | **4(c)** 35:7 42:11,14 |
| **who've** 29:15 34:6 43:4 | **11242** 7:12 | **400** 12:14 |
| | **11530** 3:13 | **410** 4:18 |
| **WILLIAM** 5:21 | **11590** 6:10 | **42** 48:6 |
| **willing** 21:15 | **12** 30:10,17 | **425** 12:14 |
| **WOLTHER** 6:13 | **12:24** 47:14 | **488** 4:4,11 |
| **wondering** 39:17 | **124** 6:17 | **499** 3:5 |
| **words** 10:3 | **125th** 46:9 | |
| **work** 23:1 | **13** 32:22 | **5** |
| **worried** 17:9 | **14** 1:18 | **500** 17:18 |
| **worth** 14:25 | **14th** 47:1,4 | **58th** 7:17 |
| **wouldn't** 40:21 41:12 | **140** 13:16 17:19 | |
| | **15** 14:14 16:2 | **7** |
| **wrong** 38:13 | **15th** 37:17,23 38:1 38:20 39:23 | **700** 14:24 |
| | **150** 7:17 | |
| **X** | **18th** 43:20,25,25 44:4 45:16 46:20 | **8** |
| **x** 1:5,12 48:2 | | **8** 31:3 |
| | **19** 45:1 | **8.8** 37:9 |
| **Y** | **190-01** 45:1 | |
| **yeah** 21:9,13 40:1 41:6 45:24 | | **9** |
| | **2** | **9** 26:25 |
| **yesterday** 10:25 12:7 30:7,11 | **2** 5:4 | **900** 3:19 |
| | **2.5** 14:25 | **9019** 2:9,13 8:4 |
| **York** 1:3,16,16 3:6 3:20 4:5,12,19 5:5 5:19 7:5,18 22:19 | **20** 48:6 | |
| | **200** 13:23 | |
| | **2004** 18:8 | |
| **0** | **2008** 1:18 49:9 | |
| **05-10987** 1:4 | **21st** 37:6,15,23 38:4 | |
| **07024** 5:12 | **2100** 5:11 | |
| **07052** 6:4 | **25** 49:9 | |
| **07101** 6:18 | **26** 7:4,11 | |
| | **28th** 40:4 41:5 | |
| **1** | | |
| **10** 27:25 28:1 45:1 45:16 | **3** | |
| | **30th** 37:18,24 38:23 38:23 39:2 | |
| **100** 3:12 | **347** 6:3 | |
| **10004** 7:5 | **350** 5:18 | |
| **10016** 5:5 | **360** 17:17,19 | |
| **10022** 3:6,20 4:5,12 4:19 | **363** 28:19,23 | |

**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
900 Third Avenue, 16th floor
New York, NY 10022-4728
(212) 752-8000
(212) 752-8393 Facsimile
Laurence May, Esq. (LM-9714)
Leo V. Leyva, Esq. (LL-9061)
Attorneys for Jay Irgang, Mark Irgang, Orli Irgang
and Irgang Entities

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MAYWOOD CAPITAL CORP., et. al.,<br><br>    Debtor. | Bankruptcy Appeal<br><br>Case No. 08 cv 00942 (DC) |

---

**BRIEF OF THE IRGANG GROUP IN OPPOSITION TO APPELLANT'S MOTION FOR**
**A STAY PENDING APPEAL AND OPPOSITION TO APPELLANT'S APPEAL OF**
**JUDGE DRAIN'S DECEMBER 20, 2007 ORDER**

---

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

PROCEDURAL HISTORY AND BACKGROUND FACTS ........................................ 4

LEGAL ARGUMENTS...................................................................................... 6

      POINT I

           SHAPIRO HAS FAILED TO SATISFY THE REQUISITE
           ELEMENTS TO ENJOIN THE CLOSING OF THE
           SETTLEMENT OF THE ADVERSARY PROCEEDINGS .................................. 6

          A.     Shapiro Will Not Suffer Any Irreparable Harm If The
               Requested Stay Relief Is Denied.................................................. 6

          B.     Shapiro Has Failed To Demonstrate A Likelihood Of
               Success On The Merits Of His Claims And Appeal.................................. 7

               1.     Shapiro Failed To Object To The Settlement
                     Motion................................................................................ 7

               2.     The Shapiro Contracts Expressly Required
                     Bankruptcy Court Approval And The Bankruptcy
                     Court Properly Denied The Approval Motion
                     Based On The Existence Of A Higher And Better
                     Offer.................................................................................. 8

               3.     Shapiro's Claim Of Implied Covenant Of Good
                     Faith And Fair Dealing Is Baseless And
                     Unsupportable. .................................................................... 12

          C.     There Are No Sufficiently Serious Questions On The
               Merits Of Shapiro's Appeal To Warrant The Issuance Of
                the Requested Injunctive Relief. ................................................. 14

CONCLUSION................................................................................................ 16

42232/0010-1512639v1

# TABLE OF AUTHORITIES

## CASES                                                   PAGES

In re Ashford Hotels, 235 B.R. 734 (S.D.N.Y. 1999)...................................................13

Blum v. Schlegel, 18 F.3d 1005 (2d Cir. 1994)........................................................6

In re Bonnanzio, 91 F.3d 296 (2d Cir. 1996)...........................................................13

In re Broadmoor Place Investments, L.P., 994 F.2d 744 (10th Cir. 1993) ....................................11

In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1993) .................................................8, 9

Chateaugay Corporation v. Thomson-SCF, S.A., 186 B.R. 561 (S.D.N.Y. 1995).......................12

In re Gucci, 126 F.3d 380 (2d Cir. 1997)..............................................................8

In re Integrated Resources, Inc., 147 B.R. 650 (S.D.N.Y. 1992) ....................................9

In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983)...................................................8, 10

Loveridge v. Pendleton Woolen Mills, Inc., 788 F.2d 914 (2nd Cir. 1986)..................................6

Lyons Transportation Lines, Inc., et al, v. C.B. Hannay Co. (In re Lyons Transp. Lines,
    Inc.), 163 B.R. 474 (Bankr. W.D. Pa., 1994).................................................14

In re M&M Transp. Co., 13 B.R. 861 (S.D.N.Y. 1981) ...........................................11

North American Graphics, Inc. v. North American Graphics of Us, Inc., 1997 WL
    316599 at 2 (S.D.N.Y 1997) ..............................................................6

In re Orion Pictures Corporation, 4 F.3d 1095 (2d Cir. 1992)......................................11

In re Pintlar Corp., Civ. No. 97-0263-N-BLW (D.Idaho 1998) ....................................13

Polymer Technology Corp. v. Mimram, 37 F.3d 74 (2nd Cir. 1994)..............................6

Roberts v. Atlantic Recording Corp., 892 F. Supp. 83 (S.D.N.Y. 1995)........................6

Western Publishing Co., Inc. v. Rose Art Industries, 910 F.2d 57 (2d Cir. 1990) ........................6

## STATUTES

11 U.S.C. § 363, 506(c) and 1146(c) ............................................................1

## PRELIMINARY STATEMENT

Mark Irgang, Orli Irgang, Jay Irgang (collectively, the "Irgangs"), 6 East 132nd St. LLC, 27 East 131st St. LLC, 65-67 East 125th LLC, 77-79 E. 125th LLC, 148 West 124th St. LLC, 917 Eagle Ave. LLC and 2093 Madison LLC (collectively, the "Irgang Entities," and with the Irgangs collectively referred to as the "Irgang Group"), submit this Brief in opposition to the motion for a stay pending appeal by 125th Street Owner, LLC ("Shapiro").  The Irgang Group also submits this Brief in opposition to Shapiro's appeal from the December 20, 2007 Order ("December 20th Order") of United States Bankruptcy Judge Robert D. Drain denying the motion of John S. Pereira, Chapter 11 Trustee of Maywood Capital Corp. ("Trustee") to approve the sale of whatever right, title and interest the Trustee had to certain real property and improvements located at 65-67 East 125th Street, New York, 77 East 125th Street, New York and 79 East 125th Street, New York (collectively, the "125th Street Properties"), free and clear of liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363, 506(c) and 1146(c) of the Bankruptcy Code (the "Approval Motion").  As demonstrated below, the Court should deny Shapiro's stay application and dismiss the appeal.

This appeal arises out of the Trustee's motion to sell whatever right, title and interest he had to the 125th Street Properties.  At the time the Approval Motions were filed, the 125th Street Properties were owned by the Irgang Group and the subject of various adversary proceedings ("the Adversary Proceedings").  The Trustee commenced the Adversary Proceedings in June 2005, claiming that the Debtors' pre-petition sale of the 125th Street Properties and five (5) other properties to the Irgang Group were for insufficient consideration and were fraudulent conveyances.  The Adversary Proceedings proceeded to trial on August 28, 29 and 31, 2007, before Judge Drain and from the Irgang Group's perspective, they considered the Trustee's chances of success to be remote.  Nevertheless, on November 12, 2007, <u>before</u> Judge Drain had

issued a decision in connection with the Adversary Proceedings, and contingent upon him finding for the Trustee in the Adversary Proceedings, the Trustee filed the Approval Motion to approve the sale of the 125th Street Properties to Shapiro.  At the outset of the hearing, and based upon an unsolicited offer more than $1 million greater than Shapiro's offer (and the possibility of other offers from other bidders), Judge Drain denied the Approval Motion and directed the Trustee to conduct an auction.  Consistent with the bankruptcy principle of maximizing the value of an estate, the Court directed the auction so that the 125th Street Properties would be sold to the highest bidder.

At the auction, the Irgang Group submitted a bid which resulted in them reaching a full settlement with the Trustee of twenty (20) separate adversary proceedings (the "Settlement").  On January 25, 2008, the Trustee filed a motion to approve the Settlement of the Adversary Proceedings (the "Settlement Motion").  On February 21, 2008, Judge Drain granted the Settlement Motion and issued an Order Approving Settlement dated February 15, 2008 ("Settlement Order").  The Settlement Order resolves all issues of ownership to the 125th Street Properties and five (5) other properties in favor of their current owners, the Irgang Group, free and clear of liens, mortgages, judgments, encumbrances and claims held by the Maywood Debtors and their creditors.  The Irgang Group has agreed to pay $15 million in connection with the Settlement.  The Settlement Order also requires the Irgang Group and Trustee to close the Settlement by April 15, 2008 (or as extended in accordance with the terms of the Settlement).

Shapiro failed to appeal the Settlement Order and, in fact, has consented to the entry of the Settlement Order.  Shapiro never filed and/or raised any opposition to the Trustee's motion to approve the Settlement.  Because the Settlement Order is final and non-appealable, this appeal, which is an indirect attack on the Settlement Order, should be dismissed.  In addition, as

2

demonstrated below, Shapiro has failed to demonstrate the requisite elements to stay and/or enjoin the closing of the Settlement.

Shapiro has failed to demonstrate a likelihood of success on the merits of his alleged claims against the Trustee. Shapiro claims that the Trustee breached the implied covenant of good faith and fair dealing with respect to the three (3) August 24, 2007 Contracts of Sale executed by the Trustee and Shapiro (the "Shapiro Contracts") for the sale of the 125th Street Properties by entering into new contracts to sell the Properties (the "Rudd Contracts") to Rudd Development Group LLC ("Rudd"). The Shapiro Contracts expressly required Bankruptcy Court approval. There is no dispute that the Rudd Contracts provided higher and better offers regarding the sale of the 125th Street Properties. Because the Bankruptcy Court properly considered the existence of higher and better offers in denying the sale of the 125th Street Properties to Shapiro, the Court should deny Shapiro's baseless stay application.

More importantly, the controlling law supports the Bankruptcy Court's denial of the Approval Motion based on the existence of a higher and better offer. The Shapiro Contracts were unquestionably subject to Bankruptcy Court approval and Judge Drain properly denied the Approval Motion to promote a fair and equitable sale process in an effort to maximize value to the Estate. Shapiro is a disgruntled bidder that has filed a baseless appeal and stay motion in a bad faith attempt to derail the Settlement that has been approved by the Bankruptcy Court. For these reasons, and those set forth below, the Court should deny Shapiro's stay application and dismiss the appeal.

## <u>PROCEDURAL HISTORY AND BACKGROUND FACTS[1]</u>

The Chapter 11 petitions for these Debtor were all filed on February 19, 2005, and are being jointly administered under the caption of "<u>In re Maywood Corp. et al</u>.", Case No. 05-10987, before the Honorable Robert D. Drain.  On March 24, 2005, the Bankruptcy Court entered orders appointing a Chapter 11 trustee for Maywood Capital Corp. and 46 of its affiliated entities (the "Maywood Debtors").

On June 6, 2005, the Trustee filed eight (8) adversary proceeding complaints against the Irgang Group claiming that the Debtors' pre-petition sale of the 125th Street Properties and five (5) other properties (collectively, the "Irgang Properties") to the Irgang Group were for insufficient consideration and were fraudulent conveyances.  On February 22, 2007, the Trustee filed twelve (12) adversary proceeding complaints against Bodden Funding Corporation ("Bodden") and the Irgangs seeking to set aside certain mortgages against the Irgang Properties on the grounds that they were constructive fraudulent transfers.  Specifically, the Trustee sought to set aside mortgages that the Debtors granted to BRT Realty Trust and Kennedy Funding Inc., which were subsequently acquired by Bodden.

The Trustee and Irgang Group proceeded to trial on the 2005 Adversary Proceedings on August 28, 29 and 31, 2007, before Judge Drain.  On November 12, 2007, <u>before</u> Judge Drain had issued a decision in connection with the Adversary Proceedings, the Trustee filed the Approval Motion to approve the sale of the 125th Street Properties to Shapiro.  The sale of the 125th Street Properties to Shapiro or another third-party was contingent on the Court finding in favor of the Trustee in connection with the Adversary Proceedings.

---

[1] A summary of the relevant facts and procedural history is set forth in the Affidavit of Lawrence May submitted in opposition to Shapiro's motion and appeal.

At the outset of the December 10, 2007 hearing, the Trustee advised the Bankruptcy Court that he had received an unsolicited offer that was more than $1 million greater than Shapiro's offer. Based on the existence of higher and better offers, Judge Drain denied the Approval Motion and directed the Trustee to conduct an auction.

At the auction, the Irgang Group submitted a bid which resulted in them reaching a full settlement with the Trustee of twenty (20) separate adversary proceedings. On January 25, 2008, the Trustee filed a motion to approve the Settlement of the Adversary Proceedings. On February 14, 2007, Judge Drain granted the Settlement Motion and issued the Settlement Order approving the Settlement. The Settlement Order resolved all issues of ownership to the Irgang Properties in favor of the Irgang Group, which will own the Properties free and clear of liens, mortgages, judgments, encumbrances and claims held by the Maywood Debtors and their creditors. The Irgang Group has agreed to pay $15 million in connection with the Settlement. The Settlement Order requires the Irgang Group and Trustee to close the Settlement by April 15, 2008 (or as extended in accordance with the terms of the Settlement).

Shapiro failed to appeal the Settlement Order. In fact, Shapiro consented to the entry of the Settlement Order. Shapiro never filed and/or raised any opposition to the Trustee's motion to approve the Settlement. Accordingly, the Court should deny Shapiro's stay application and dismiss the appeal.

## LEGAL ARGUMENTS

### POINT I

### SHAPIRO HAS FAILED TO SATISFY THE REQUISITE ELEMENTS TO ENJOIN THE CLOSING OF THE SETTLEMENT OF THE ADVERSARY PROCEEDINGS

None of the requisite factors for granting an application for injunctive relief are present. In granting a party's request for injunctive relief, a court generally considers two main factors: (1) a likelihood of irreparably injury; and (2) either: (a) a likelihood of success on the merits, or (b) a sufficiently serious questions on the merits and a balance of the hardships tipping decidedly in the plaintiff's favor. See Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994); see also Western Publishing Co., Inc. v. Rose Art Industries, 910 F.2d 57, 59 (2d Cir. 1990); North American Graphics, Inc. v. North American Graphics of Us, Inc., 1997 WL 316599 at *2 (S.D.N.Y 1997); Roberts v. Atlantic Recording Corp., 892 F.Supp. 83, 86 (S.D.N.Y. 1995). Application of these factors here confirms that the Court should deny the requested injunctive relief.

### A.    Shapiro Will Not Suffer Any Irreparable Harm If The Requested Stay Relief Is Denied.

Shapiro has failed to articulate any specific irreparable injury that he will suffer if the Bankruptcy Court's Order deny the Approval Motion is not stayed. Shapiro claims that the 125th Street Properties are "unique" and that he has lost the "opportunity" to develop those properties. This purported irreparable injury is speculative and in any event capable of being addressed by money . See Polymer Technology Corp. v. Mimram, 37 F.3d 74, 82 (2nd Cir. 1994) (holding that where plaintiff could be adequately compensated with money damages if it were to prevail at trial, there is no irreparable injury); Loveridge v. Pendleton Woolen Mills, Inc., 788 F.2d 914, 918 (2nd Cir. 1986) ("It is well established that "irreparable injury means injury for which a monetary award cannot be adequate compensation"). Because Shapiro has failed to demonstrate

any immediate and irreparable ham resulting from the denial of the requested injunctive relief, the Court must deny Shapiro's stay application.

### B.    Shapiro Has Failed To Demonstrate A Likelihood Of Success On The Merits Of His Claims And Appeal.

Shapiro has also failed to demonstrate that he will be successful on the merits of his appeal.  To be successful, Shapiro would have to not only have Judge Drain's Order vacated, he would need an Order directing the Trustee to specifically perform his agreement with Shapiro.  However, that is not possible because pursuant to the Settlement Order, the Trustee transferred all of his interests to the 125th Street Properties to the Irgang Group.  Not only has Shapiro not timely appealed from that Order, he consented to the entry of the Settlement Order.  As a consequence, this appeal is now moot.  The evidence is also clear that the Shapiro Contracts were subject to Bankruptcy Court approval.  The Bankruptcy Court properly denied the Approval Motion based on the existence of a higher and better offer for the 125th Street Properties.  In fact, Shapiro declined to become the stalking horse bidder for the 125th Street Properties, despite the opportunity to do so.  Because Shapiro has failed to satisfy any of the requisite elements for a preliminary injunction, the Court must deny Shapiro's stay application.

### 1.    Shapiro Failed To Object To The Settlement Motion.

While Shapiro has filed an appeal of the December 20th Order, Shapiro failed to raise any objections to the Trustee's Settlement Motion and the Bankruptcy Court's entry of the Settlement Order.  The Settlement Order is final and non-appealable.  If Shapiro had any claims and/or arguments against the approval of the Settlement of the Adversary Proceedings, they should have been raised in opposition to the Settlement Motion.  Shapiro, therefore, should be barred from seeking any relief with respect to the closing of the Settlement between the Trustee and Irgang Group.

In addition, the specific relief Shapiro seeks in the proposed Order to Show Cause is unclear and confusing.  Specifically, Shapiro seeks to enjoin the Trustee from releasing his claims to the 125th Street Properties as part of Trustee's settlement of the Adversary Proceedings, or taking any steps to sell his claims to/interest in the 125th Street Properties.  It is important to note that the Trustee is <u>not</u> selling his claims and/or interest in the 125th Street Properties in connection with the Settlement.  The Trustee never held title to the 125th Street Properties. Rather, the Trustee sued the Irgang Group to recover title to the 125th Street Properties under alleged fraudulent transfer claims.

In addition, Shapiro has no standing to seek an injunction prohibiting the Trustee from releasing his claims against the Irgang Group and/or the 125th Street Properties.  Shapiro failed to raise any objection to the Trustee's motion to approve the Settlement.  In fact, at the February 14, 2008 hearing to address the Settlement Motion, Shapiro's counsel was present but remained silent as to the Court's approval of the Settlement.  As a result, the Court should deny Shapiro's stay application in its entirety.

**2.    <u>The Shapiro Contracts Expressly Required Bankruptcy Court Approval And The Bankruptcy Court Properly Denied The Approval Motion Based On The Existence Of A Higher And Better Offer.</u>**

It is well established in this Circuit and other Circuits that asset sales outside the ordinary course of business are appropriate when they are based upon the sound business judgment of the debtor or trustee.  <u>See</u> <u>In re Gucci</u>, 126 F.3d 380, 387 (2d Cir. 1997) (holding a sale of substantial part of a chapter 11 estate may be conducted if a good business reason exists to support the sale); <u>In re Lionel Corp.</u>, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding the standard of bankruptcy court approval of a sale of assets under section 363 of the Bankruptcy Code is whether there is a good business reason for the sale); <u>In re Chateaugay Corp.</u>, 973 F.2d 141 (2d Cir. 1993) (recognizing

8

that the sale of the debtor's assets pursuant to section 363 was appropriate where the debtors advanced good business reasons for the sale and it was a reasonable exercise of the debtor's business judgment to consummate the sale).

Courts recognize that the debtor's exercise of sound business judgment requires the consideration of higher and better offers for sale of the debtor's assets.  See In re Chateaugay Corp., 973 F.2d at 143 (holding the debtor exercised sound business judgment in proceeding with sale to the highest and best offer and maximized the value to the estate).  The goal of any proposed sale of property of the estate is to maximize the proceeds received by the estate.  See In re Integrated Resources, Inc., 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (recognizing the well-established principle of bankruptcy law that the debtor's duty with respect to such sales is to obtain the highest price or greatest overall benefit to the estate).

Here, the Shapiro Contracts expressly required Bankruptcy Court approval.  Section 3(i) of the Shapiro Contracts provided, in pertinent part, as follows:

> The obligations of Trustee and Purchaser under this Agreement are expressly conditioned upon entry of an order (and its becoming final and unappealable or, in the event of an appeal, no stay pending appeal being granted) by the Bankruptcy Court approving of authorizing this Agreement or approving or authorizing the Trustee to execute, deliver and perform this Agreement and containing the terms described below (the "Order").

(See Shapiro Contracts, Exhibits B, C and D to Shapiro's Brief.)

Shapiro, therefore, knew or should have known that the Bankruptcy Court could reject the proposed contacts based on the existence of higher and better offers or for any other appropriate reason.  Because the Trustee exercised his business judgment in accepting a stalking horse bidder (Rudd) that presented a higher and better offer than Shapiro, the Court properly denied the motion to approve the sale of the 125th Street Properties to Shapiro.  The Bankruptcy Court held, in pertinent part, as follows:

At the hearing, the Trustee's counsel reported, as I believe he was under an obligation to me to do so, that there were two other bids for the property that were considerably higher than the bid covered by the [Approval Motion.]  Indeed, one was a million dollars higher than the bid covered by the [Approval Motion.]  Exercising my business judgment, I directed the Trustee to consider those proposals and to explore their bona fides, including ability to close and ability to post their deposit, which the Trustee did, and then confirm to me, as part of the record of the hearing that indeed, one of the bidders had the financial wherewithal to proceed, was prepared to put up a deposit, and was prepared to follow the contract previously agreed to by [Shapiro], with one exception.  This bidder wanted a modest breakup fee recognizing, as frankly any bidder in a bankruptcy sale should know, given the nature of section 363(b), that there would be a possibility of being overbid.  I approved the Trustee's entry into that stalking horse contract, including the breakup fee, and at the same time, determined as a corollary matter, that the Trustee's continued performance under the [Shapiro Contracts], would not be approved, because it would not be a proper exercise of business judgment.

(See Dec. 21, 2007 Tr. p. 38, lines 5-25; p. 39, lines 1-2.)  The record clearly demonstrates that the Bankruptcy Court considered the Trustee's business judgment in accepting the higher and better bidder as the stalking horse bidder and, therefore, denied the sale of the 125th Street Properties to Shapiro.

In a desperate attempt to reverse the Bankruptcy Court's December 20th Order, Shapiro incredulously claims that the Bankruptcy Court improperly "substituted" its own business judgment for the Trustee's business judgment in denying the Approval Motion.  Shapiro's position on this issue is frivolous and intellectually dishonest.  The Bankruptcy Court made no such "substitution" of business judgment.  The Bankruptcy Court concluded, in pertinent part, as follows:

The standard for approving such a sale was first articulated by the Second Circuit in Lionel Industries (722 F.2d 1063, 2d Cir. 1983), in which the Court – Bankruptcy Court has to find that the debtor in possession or the trustee, in this instance, has exercised good business judgment in connection with the decision to proceed with the sale, and that the trustee has not been coerced

10

> or blindly followed one particular constituency. It's important to note that is the Court that makes the determination of whether the Trustee has exercised good business judgment. And that, or course, is implicit in the whole structure of Section 363(b) which requires notice and approval. The role of the Court in connection with an action out of the ordinary course was reiterated by the Second Circuit in In re Orion Pictures Corporation (4 F.3d 1095, 2d Cir. 1993), which the Court went to great length in explaining the nature of the Bankruptcy Court's decision in respect of business judgment, and said that it is just that, a decision on a business basis, where the Court would not be ruling on whether the decision was right or wrong, ultimately as a matter of law, but making a reasoned decision in the exercise of its business judgment.

(See Dec. 21, 2007 Tr. p. 39, lines 8-25; p. 40, lines 1-4.)

In Orion Pictures Corporation, the Second Circuit held the "bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property in being managed by the trustee". Orion, 4 F.2d 1095, 1099 (2d Cir. 1992). In regard to whether to approve a sale of a debtor's assets other than in the ordinary course of business, it is well settled that a bankruptcy court has broad discretion. See In re M&M Transp. Co., 13 B.R. 861 (S.D.N.Y. 1981) (a decision to set aside judicial sale lies within the sound discretion of a bankruptcy judge); see also In re Broadmoor Place Investments, L.P. 994 F.2d 744 (10th Cir. 1993) (bankruptcy court can disapprove proposed sale recommended by trustee if it is aware that there is another proposal in hand which, from the estate's perspective, is better or more acceptable).

There is no question that the Bankruptcy Court applied the proper standard in denying the sale of the 125th Street Properties to Shapiro. The Bankruptcy Court properly considered the existence of a higher and better offer in connection with its decision to deny the Approval Motion. Shapiro has failed to demonstrate that the Bankruptcy Court committed any reversible error with respect to the denial of the Approval Motion. The Court, therefore, should deny Shapiro's stay application and dismiss the baseless appeal.

3.    **Shapiro's Claim Of Implied Covenant Of Good Faith And Fair Dealing Is Baseless And Unsupportable.**

Shapiro has failed to state a viable claim for breach of the implied covenant of good faith and fair dealing against the Trustee. The covenant of good faith and fair dealing, which is implicit in commercial contracts, requires that neither party will do anything that will injure the right of the other party to receive the benefits of the agreement. See Chateaugay Corporation v. Thomson-SCF, S.A., 186 B.R. 561, 594 (S.D.N.Y. 1995).

Shapiro simply cannot demonstrate that the Trustee violated the covenant of good faith and fair dealing. Shapiro has failed to demonstrate that the Trustee engaged in any wrongful conduct that deprived Shapiro of the benefits of the agreement. The documentary evidence confirms that the Shapiro Contracts were subject to Bankruptcy Court approval. The Bankruptcy Court denied the motion to approve the Shapiro Contracts based on the existence of a higher and better transaction.

In addition, there is no evidence in the record to support Shapiro's claim that the Trustee "shopped" the properties after entering into the proposed contracts with Shapiro. Rather, the evidence confirms that Rudd and other parties contacted the Trustee and presented higher and better offers. Even after the Trustee learned of the possibility of higher and better offers, the Trustee filed the motion to approve the Shapiro Contracts, which were subject to Bankruptcy Court approval pursuant to the terms of the agreements. During the December 10, 2007 hearing before the Bankruptcy Court, the Trustee's counsel stated as follows:

> Now, [the Trustee] did not shop the properties, Your Honor. It was our agreement with Mr. Shapiro, given the fact that he entered into these contracts back in August before Your Honor tried this case with respect to the Irgangs and the fraudulent transfer claims, that we would not shop. We didn't shop it, but the bidders have sought us out, Your Honor. Mr. Pereira, as a fiduciary, obviously advised Mr. Shapiro of his fiduciary duty. He advised Mr. Shapiro

12

that he could not turn his head to an extra million dollars, just for these properties also and that he would have to entertain that offer if it turned out to be real. Mr. Shapiro was given the opportunity to become the stalking horse, if he so chose. He declined.

(See Dec. 10, 2007 Tr. p. 7, lines 13 to 25.)

Shapiro has no evidence to support his claim that the Trustee breached the implied covenant. More importantly, there is no evidence of such in its record. The Trustee advised the Bankruptcy Court of the higher and better offers and the Bankruptcy Court carefully considered them in connection with its decision to deny the motion to approve the sale of the 125th Street Property to Shapiro. The Trustee's representations by, its counsel, that he did not "shop the transaction" was not refuted and the Bankruptcy Court's findings on this issue can only be disturbed if they are clearly erroneous. A Bankruptcy Court's findings of fact are reviewed under "a clearly erroneous standard." See In re Ashford Hotels, 235 B.R. 734, 739 (S.D.N.Y. 1999), citing In re Bonnanzio, 91 F.3d 296, 300 (2d Cir. 1996). The Trustee also exercised sound business judgment in accepting a stalking horse bidder that provided a higher and better offer than Shapiro. Moreover, there is no dispute that Shapiro declined to be the stalking horse bidder despite the opportunity to do so. The Court should not condone a disgruntled bidder's attempts to sabotage the Bankruptcy Court's approval of the Settlement of the Adversary Proceedings, which will generate $15 million of cash to the Debtors' estates. Accordingly, the Court should deny Shapiro's stay application and dismiss the appeal.

In a desperate attempt to support his baseless implied covenant claim, Shapiro cites to an unreported Idaho decision, In re Pintlar Corp., Civ. No. 97-0263-N-BLW (D. Idaho 1998). In Pintlar, unlike here, the trustee actively negotiated a new bid and formed a litigation alliance against the original contracting party in an effort to approve the new bid. Here, the Trustee did not solicit higher and better bids as part of this sale process. The evidence demonstrates that the

Trustee "did not shop the properties…but the bidders have sought [him] out." (<u>See</u> Dec. 10, 2007 Tr. p. 7, lines. 13, 17-18.).

Shapiro also relies on <u>Lyons Transportation Lines, Inc., et al, v. C.B. Hannay Co. (In re Lyons Transp. Lines, Inc</u>.), 163 B.R. 474 (Bankr. W.D. Pa., 1994), for the proposition that the Shapiro Contracts should have been approved because they were "appropriate at the time" they were negotiated. In <u>Lyons</u>, a settlement between the Trustee and defendant was approved by the Court. The <u>Lyons</u> Court concluded that the settlement was appropriate considering the range of probabilities, degree of uncertainty and the substantial costs of continued litigation. The <u>Lyons</u> case does not support Shapiro's alleged claim of breach of the implied covenant of good faith and fair dealing. Rather, it supports the Bankruptcy Court's approval of the Settlement and entry of the Settlement Order.

The controlling law and facts demonstrate that the Trustee did <u>not</u> violate the covenant of good faith and fair dealing. Accordingly, the Court should deny Shapiro's motion and dismiss the appeal.

**C.    There Are No Sufficiently Serious Questions On The Merits Of Shapiro's Appeal To Warrant The Issuance Of the Requested Injunctive Relief.**

Shapiro has failed to demonstrate a likelihood of success on the merits of his claims and/or appeal. Similarly, Shapiro has failed to demonstrate that there are sufficiently serious questions on the merits of his appeal to warrant the issuance of any injunction enjoining the Trustee and Irgang Group from closing the Settlement of the Adversary Proceedings. The facts and circumstances of this appeal are very simple. The Bankruptcy Court properly denied the Trustee's motion to approve the sale of the 125th Street Properties to Shapiro based on the existence of a higher and better transaction. The Trustee did not do anything to deprive Shapiro of the benefits of the Shapiro Contracts, which were subject to Bankruptcy Court approval.

14

The Trustee also exercised sound business judgment in considering higher and better offers and advising the Bankruptcy Court of such offers.

Shapiro filed this baseless appeal and stay application in a bad faith attempt to derail the closing of the Settlement that has been approved by the Bankruptcy Court. Because there are no sufficiently serious questions on the merits of Shapiro's appeal and/or claims against the Trustee, the Court should deny the stay application.

42232/0010-1512639v1

## <u>CONCLUSION</u>

The Bankruptcy Court properly denied the Approval Motion.  Shapiro has failed to demonstrate the requisite elements to stay and/or enjoin the closing of the Settlement, which was approved by the Bankruptcy Court.  In addition, Shapiro failed to appeal the Settlement Order and, therefore, his appeal is moot.  For all of the foregoing reasons, the Irgang Group respectfully requests that the Court deny Shapiro's stay application and dismiss the appeal of the December 20th Order.

DATED:      New York, New York
            March 6, 2008

                        COLE, SCHOTZ, MEISEL,
                        FORMAN & LEONARD, P.A.
                        A Professional Corporation
                        Attorneys for the Irgang Group


                        By: /s/ <u>Laurence May</u>
                            Laurence May, Esq. (LM-9714)
                            900 Third Avenue, 16th floor
                            New York, NY 10022-4728
                            (212) 752-8000

16